IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

RICHARD H. LIVINGSTON,

                           Plaintiff,                  Civil Action No.
                                                9:17-CV-1158 (MAD/DEP)

     v.

WILLIAM HOFFNAGLE, *et. al.*

                          Defendants.

_____

APPEARANCES:                              OF COUNSEL:

FOR PLAINTIFF:

RICHARD H. LIVINGSTON, *Pro Se*
14-B-3634
Great Meadow Correctional Facility
Box 51
Comstock, NY 12821

FOR DEFENDANTS:

HON. BARBARA UNDERWOOD         ERIK BOULE PINSONNAULT, ESQ.
New York State Attorney General      Assistant Attorney General
The Capitol
Albany, NY 12224

DAVID E. PEEBLES
CHIEF U.S. MAGISTRATE JUDGE

<u>REPORT AND RECOMMENDATION</u>

This is an action brought by *pro se* plaintiff Richard H. Livingston, a New York State prison inmate, against three individuals employed at the correctional facility in which he was confined at the relevant times. In his complaint, plaintiff asserts federal civil rights claims under 42 U.S.C. § 1983, in addition to several state law causes of action. In response to plaintiff's complaint, defendants have moved for dismissal of his federal claims based upon his alleged failure to exhaust available administrative remedies prior to commencing suit. In addition, defendants ask the court to find that plaintiff's state law claims are barred by New York Correction Law § 24 or, alternatively, to decline to exercise supplemental jurisdiction over those claims. For the reasons set forth below, I recommend that defendants' motion be granted.

I.    <u>BACKGROUND</u>[1]

---

[1]    In light of the procedural posture of the case, the following recitation of facts has been drawn principally from plaintiff's complaint, Dkt. No. 1, as well as the materials submitted by plaintiff in opposition to the defendants' motion, Dkt. No. 16, to the extent they are consistent with the allegations set forth in his complaint. *Donhauser v. Goord*, 314 F. Supp. 2d 119, 121 (N.D.N.Y. 2004) (Hurd, J.). Portions of the background have also been derived from the exhibits attached to plaintiff's complaint, which may also properly be considered in connection with a dismissal motion. *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991) ("[T]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference."); *accord*, *Samuels v. Air Transp. Local 504*, 992 F.2d 12, 15 (2d Cir. 1993).

Plaintiff is a prison inmate currently being held in the custody of the New York State Department of Community Supervision ("DOCCS"). *See generally* Dkt. No. 1. At the times relevant to his claims, plaintiff was confined to the Upstate Correctional Facility ("Upstate") located in Malone, New York.[2] *See id.*

Plaintiff was transferred into Upstate on August 1, 2017, where he was to be housed in disciplinary confinement for six months as a result of his participation in an altercation at another prison facility. Dkt. No. 1 at 10. *See generally* Dkt. No. 1. Upon his arrival at Upstate, plaintiff twice notified defendant William Hoffnagle, who was an area supervisor, of his desire to be placed in protective custody, because "he was in fear for his life and his safety." *Id.* at 11, 22; *see also* Dkt. 1-1 at 3, 4. Hoffangle assigned his two subordinates, defendants Dustin Hollenbeck, and Chris King, to try to dissuade plaintiff from requesting protective custody. Despite their efforts, plaintiff persisted in his request. Dkt. No. 1 at 22; *see also id.* at 11.

Plaintiff alleges that defendants proceeded to punish him "by locking him in a holding cell, handcuffed and chained tight," and depriving him of

---

[2]     Upstate is a maximum security prison comprised exclusively of special housing unit ("SHU") cells in which inmates are confined for twenty-three hours each day, primarily for disciplinary reasons. *Samuels v. Selsky*, No. 01-CV-8235, 2002 WL 31040370, at *4 n.11 (S.D.N.Y. Sept. 12, 2002).

food, water, and the use of a bathroom from 1:00 p.m. to 6:00 p.m. on the day of his arrival. Dkt. No. 1 at 11; *see also* Dkt. 1-1 at 3, 4. Although plaintiff pleaded with defendants to loosen the handcuffs and chains, and also to allow him to use the bathroom, his pleas were ignored. Dkt. No. 1 at 12.

Between 5:30 p.m. and 6:00 p.m. on that same day, plaintiff threatened defendants with "grievances and holding them liable for violating [his] rights." Dkt. No. 1 at 12. In response, defendant King threatened to issue plaintiff a false misbehavior report, charging plaintiff with the refusal to return to his cell. *Id.* Plaintiff and defendant King then proceeded to argue regarding the issue for the next five to ten minutes. *Id.* at 13.

At 6:00 p.m., plaintiff was finally given food, although defendants continued to refuse his request for protective custody; instead, plaintiff was also placed in a cell with "a violent gang banger," purportedly in contravention of DOCCS Directive No. 4003B. Dkt. No. 1 at 13. Plaintiff alleges that defendants' refusal to place him in protective custody was motivated both out of retaliation for plaintiff threatening to file "grievances and lawsuits" and by his race. *Id*. at 13, 16, 17; *see also* Dkt. 1-1 at 3, 4. Plaintiff alleges that as a result of his placement with a gang member, he

4

suffered "misery, anguish, psychological pain[,]" and loss of sleep for multiple nights. Dkt. No. 1 at 20-21.

On August 3 and August 7, 2017, plaintiff filed two separate grievances regarding the events that transpired on August 1, 2017.[3] Dkt. No. 1 at 13; *see also* Dkt. 1-1 at 3, 4. Officials with the Inmate Grievance Program ("IGP") at Upstate acknowledged receipt of those two grievances in a memorandum dated August 8, 2017.[4] Dkt. No. 1-1 at 2. On September 25, 2017, plaintiff received a response from Upstate Superintendent Donald Uhler, who is not a party to this action, denying his grievance. *Id.* at 14.

Plaintiff appealed the Superintendent's response to the Central Office Review Committee ("CORC") on September 26, 2017. Dkt. No. 1 at 14; Dkt. No. 1-1 at 9-10. According to plaintiff, this act of appealing "exhaust[ed] his administrative remedies." Dkt. No. 1 at 14. While plaintiff's

---

[3]     The court notes that plaintiff repeatedly, and apparently unsuccessfully, attempted to secure relevant audio and video recording from August 1, 2017, through grievances, requests made pursuant to Article 6 of New York's Public Officers Law, as well as through the court. Dkt. No 1-1 at 3-8, 10; Dkt Nos. 14, 17. According to defendants, however, although such recordings are typically preserved for one year, "due to equipment failure and loss of data in the hard drive," the requested recordings are no longer available. Dkt. No. 18.

[4]     It appears that the grievance may have been permitted to bypass the inmate grievance resolution committee because the grievance was classified as involving "harassment." Dkt. No. 1-1 at 9; *see also* 7 N.Y.C.R.R. § 701.8(b), (c).

appeal was acknowledged in a memorandum dated October 11, 2017,

Dkt. No. 1-1 at 11, as of at least January 2, 2018, plaintiff's CORC appeal

remained pending. Dkt. No. 16 at 9.

II.   PROCEDURAL HISTORY

Plaintiff's complaint in this action is dated October 13, 2017 and

postmarked on October 16, 2017. Dkt. No. 1. Submitted together with that

complaint was a motion for leave to proceed *in forma pauperis* ("IFP"),

accompanied by an inmate authorization form. Dkt. Nos. 2, 3.

On January 8, 2018, District Judge Mae A. D'Agostino issued a

decision and order in which she granted plaintiff's request for IFP status

and reviewed the complaint pursuant to 28 U.S.C. §§ 1915(e), 1915A. Dkt.

No. 7. In that decision, Judge D'Agostino identified the following causes of

action as being asserted in plaintiff's complaint: (1) an Eighth Amendment

excessive force claim; (2) an Eighth Amendment failure-to-protect claim;

(3) an Eighth Amendment conditions-of-confinement claim; (4) a First

Amendment retaliation claim; (5) a section 1983 conspiracy claim; and (6)

pendent state law claims of gross negligence, negligent infliction of

emotional distress, and intentional infliction of emotional distress. *See

generally id*.

In lieu of answering, defendants have filed a motion to dismiss

plaintiff's complaint on the grounds that plaintiff's federal claims are barred by virtue of his failure to exhaust the administrative remedies available to him before commencing suit, and that any state law claims deemed to have been asserted in his complaint are subject to dismissal based either upon the court's decision to decline to exercise supplemental jurisdiction or, alternatively, as barred under New York Correction Law § 24. Dkt. No. 14. Plaintiff has submitted a memorandum in opposition to defendants' motion, to which defendants have not replied. Dkt. No. 14. Defendants' motion, which is now fully briefed, has been referred to me for the issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See* Fed. R. Civ. P. 72(b).

III.   DISCUSSION

    A.   Legal Standard Governing Motions to Dismiss Pursuant to Rule 12(b)(6)

A motion to dismiss a complaint, brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, calls upon a court to gauge the facial sufficiency of that pleading using a standard that, though unexacting, "demands more than an unadorned, the-defendant-unlawfully-harmed me accusation" in order to withstand scrutiny. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007)).

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, "a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.' " *Iqbal*, 556 U.S. 677-78 (quoting Fed. R. Civ. P. 8(a)(2)). While modest in its requirements, that rule commands that a complaint contain more than mere legal conclusions. *See Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

In deciding a Rule 12(b)(6) dismissal motion, the court must accept the material facts alleged in the complaint as true and draw all inferences in favor of the non-moving party. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Twombly*, 550 U.S. at 555-56); *see also Cooper v. Pate*, 378 U.S. 546, 546 (1964); *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003); *Burke v. Gregory*, 356 F. Supp. 2d 179, 182 (N.D.N.Y. 2005) (Kahn, J.). The tenet that a court must accept as true all of the allegations contained in a complaint does not apply, however, to legal conclusions. *Iqbal*, 556 U.S. at 678.

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570); *see also Ruotolo v. City of N.Y.*, 514 F.3d 184, 188 (2d Cir. 2008).

8

As the Second Circuit has observed, "[w]hile *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge plaintiffs' claims across the line from conceivable to plausible.' " *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 570) (alterations omitted).

When assessing the sufficiency of a complaint against this backdrop, particular deference should be afforded to a *pro se* litigant, whose complaint merits a generous construction by the court when determining whether it states a cognizable cause of action. *Erickson*, 551 U.S. at 94 (" '[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.' " (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (citation omitted)); *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) ("[W]hen a plaintiff proceeds *pro se*, a court is obliged to construe his pleadings liberally." (quotation marks and alterations omitted)); *Kaminski v. Comm'r of Oneida Cnty. Dep't of Soc. Servs.*, 804 F. Supp. 2d 100, 104 (N.D.N.Y. 2011) (Hurd, J.) ("A pro se complaint must be read liberally.").

B.    Exhaustion of Administrative Remedies

Plaintiff's appeal of the Superintendent's grievance denial was acknowledged by the CORC on October 11, 2017. Dkt. No. 1-1 at 11. His

9

complaint in this action was mailed to the court only five days later, on

October 16, 2017. Dkt. No. 1-3. Defendants argue that based upon this

chronology, his federal causes of action are subject to dismissal for failure

to satisfy the applicable exhaustion requirement. Dkt. No. 14-1 at 8-9. In

opposition, plaintiff asserts that the CORC failed to render a timely

decision, in contravention of DOCCS Directive No. 4040. Dkt. No. 16 at 3-

4.

### 1.   Legal Standard

The Prison Litigation Reform Act of 1996 ("PLRA"), Pub. L. No. 104-

134, 110 Stat. 1321 (1996), which imposes several restrictions on the

ability of prisoners to maintain federal civil rights actions, expressly

provides that "[n]o action shall be brought with respect to prison conditions

under section 1983 of this title, or any other Federal law, by a prisoner

confined in any jail, prison, or other correctional facility until such

administrative remedies as are available are exhausted." 42 U.S.C. §

1997e(a); *see also Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016). Section

1997e(a)'s exhaustion provision is mandatory and applies to all inmate

lawsuits regarding the conditions of their confinement. *Ross*, 136 S. Ct. at

1856; *Woodford v. Ngo*, 548 U.S. 81, 84 (2006); *Porter v. Nussle*, 534

U.S. 516, 524, 532 (2002); *Williams v. Corr. Officer Priatno*, 829 F.3d 118,

122 (2d Cir. 2016). In the event a defendant establishes that the inmate-plaintiff failed to fully comply with the administrative process prior to commencing an action in federal court, the plaintiff's complaint is subject to dismissal. *See Woodford*, 548 U.S. at 93 ("[W]e are persuaded that the PLRA exhaustion requirement requires proper exhaustion."); *see also Wilson v. McKenna*, 661 F. App'x 750, 752 (2d Cir. 2016). "Proper exhaustion" requires a plaintiff to procedurally exhaust his claims by "compl[ying] with the system's critical procedural rules." *Woodford*, 548 U.S. at 95; *accord, Macias v. Zenk*, 495 F.3d 37, 43 (2d Cir. 2007).[5]

In New York, the DOCCS has instituted a grievance procedure, designated as the Inmate Grievance Program ("IGP"), for use by prison inmates to lodge complaints regarding the conditions of their confinement. *Williams*, 829 F.3d at 119. The IGP is comprised of three steps that inmates must satisfy when they have a grievance regarding prison conditions. 7 N.Y.C.R.R. §§ 701.1, 701.5; *Williams*, 829 F.3d at 119. The IGP requires that an inmate first file a grievance with "the clerk" within

---

[5]    While placing prison officials on notice of a grievance through less formal channels may constitute claim exhaustion "'in a substantive sense,'" an inmate plaintiff nonetheless must meet the procedural requirement of exhausting his available administrative remedies within the appropriate grievance construct in order to satisfy the PLRA. *Macias*, 495 F.3d at 43 (quoting *Johnson v. Testman*, 380 F.3d 691, 697-98 (2d Cir. 2004) (emphasis omitted)).

twenty-one days of the alleged occurrence giving rise to his complaint. 7 N.Y.C.R.R. § 701.5(a)(1). "The complaint may only be filed at the facility where the inmate is housed even if it pertains to another facility." *Id.* Representatives of the inmate grievance resolution committee ("IGRC")[6] have up to sixteen days after the grievance is filed to informally resolve the issue. 7 N.Y.C.R.R. § 701.5(b)(1). If there is no such informal resolution, then the full IGRC conducts a hearing within sixteen days after receipt of the grievance. 7 N.Y.C.R.R. § 701.5(b)(2).

A grievant may then appeal the IGRC's decision to the facility's superintendent within seven days after receipt of the committee's written decision. 7 N.Y.C.R.R. § 701.5(c). The superintendent must issue a written decision within a certain number of days after receipt of the grievant's appeal.[7]  7 N.Y.C.R.R. § 701.5(c)(3)(i), (ii).

The third and final step of the IGP involves an appeal to the DOCCS Central Office Review Committee ("CORC"), which must be taken within seven days after an inmate receives the superintendent's written decision. 7 N.Y.C.R.R. § 701.5(d)(1)(i). The CORC is required to render a written

---

6    The IGRC is comprised of "two voting inmates, two voting staff members, and a non- voting chairperson." 7 N.Y.C.R.R. § 701.4(a).

7    Depending on the type of matter complained of by the inmate, the superintendent has either seven or twenty days after receipt of the appeal to issue a decision. 7 N.Y.C.R.R. § 701.5(c)(3)(i), (ii).

decision within thirty days of receipt of the appeal. 7 N.Y.C.R.R. § 701.5(d)(2)(i), (ii).

Where an inmate's grievance complains of employee harassment, the grievance is forwarded directly to the superintendent, bypassing the IGRC review. 7 N.Y.C.R.R. § 701.8(b), (c). The superintendent then has twenty-five days from the date of its receipt to render a decision. 7 N.Y.C.R.R. § 701.8(g). An inmate may appeal the superintendent's decision to the CORC within seven days of its receipt. 7 N.Y.C.R.R. § 701.8(h).

As can be seen, at each step of the IGP process, a decision must be rendered within a specified time period. 7 N.Y.C.R.R. § 701.5. Where the IGRC and/or superintendent do not timely respond, an inmate is permitted to appeal "to the next step." 7 N.Y.C.R.R. § 701.6(g)(2). Generally, if a plaintiff fails to follow each of the required three steps of the above-described IGP prior to commencing litigation, he has failed to exhaust his administrative remedies as required under the PLRA. *See Ruggerio v. Cnty. of Orange*, 467 F.3d 170, 176 (2d Cir. 2006) ("[T]he PLRA requires proper exhaustion, which means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." (quotation marks omitted)).

13

While the PLRA mandates exhaustion of available administrative remedies, it also "contains its own, textual exception to mandatory exhaustion." *Ross*, 136 S. Ct. at 1858. More specifically, section 1997e(a) provides that only those administrative remedies that "are available" must first be exhausted. 42 U.S.C. § 1997e(a); *see also Ross*, 136 S. Ct. at 1858 ("[T]he exhaustion requirement hinges on the availability of administrative remedies." (quotation marks omitted)). In the PLRA context, the Supreme Court has determined that "availability" means that "an inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Ross*, 136 S. Ct. at 1859 (quotation marks omitted).

In *Ross*, the Supreme Court identified three circumstances in which a court could find that internal administrative remedies are not available to prisoners under the PLRA.[8] *Ross*, 136 S. Ct. at 1859-60. Under the first, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 1859. In addition, "an administrative

---

[8]    According to the Second Circuit, "the three circumstances discussed in *Ross* do not appear to be exhaustive[.]" *Williams*, 829 F.3d at 123 n.2.

scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id*. The Court explained that, "[i]n this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* The third scenario in which administrative remedies are deemed unavailable to prisoners is when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860.

Because failure to exhaust is an affirmative defense to a prisoner's civil rights claim, an inmate plaintiff is under no obligation to plead facts demonstrating that he has complied with the PLRA's exhaustion requirement. *Jones v. Bock*, 549 U.S. 199, 211-17 (2007). If, however, such an inmate-plaintiff pleads sufficient facts revealing his failure to exhaust available administrative remedies before commencing suit, his complaint may be dismissed for failure to state a cognizable claim. *Jones*, 549 U.S. at 215-16; *see e.g.*, *Weidman v. Wilcox*, No. 12-CV-6524, 2014 WL 1056416, at *3 (W.D.N.Y. Mar. 17, 2014) (dismissing the plaintiff's complaint because it clearly alleged that the plaintiff failed to avail himself of the prison grievance procedure).[9]

---

[9]     Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff.

2.   Analysis

Defendants' untimeliness argument focuses on plaintiff's actions at the third and final step of the IGP. Dkt. No. 14-1 at 8-9. On September 26, 2017, plaintiff appealed to the CORC, and that appeal was acknowledged as having been "received and processed" by that office on October 11, 2017. Dkt. No. 1-1 at 10-11. Pursuant to the prison mailbox rule, plaintiff's complaint in this action is deemed to have been filed on October 16, 2017, the date that it was given over to prison officials. *Houston v. Lack*, 487 U.S. 266, 276 (1988); *see also Taylor v. Racette*, 709 F. App'x. 105, 106 n.1 (2018). Plaintiff's complaint was, therefore, submitted a mere five days after his appeal was acknowledged by CORC. *See generally* Dkt. No. 1.

Plaintiff seemingly acknowledges that he rushed to file this action, apparently in an attempt to ensure that the relevant audio and video recordings were preserved by the DOCCS. Dkt. No. 16 at 4-5, 9-10. Plaintiff's haste, while perhaps understandable given the emphasis he has placed on the importance of those recordings, nonetheless effectively truncated the IGP and deprived the CORC of its opportunity to review the matter. Because only five days elapsed between the CORC's receipt of plaintiff's appeal on October 11, 2018 and the commencement of this action on October 16, 2018—rather than the thirty days afforded by the

16

regulatory scheme, for the CORC, to act *see* 7 N.Y.C.R.R. § 701.5(d)(2)(i),

(ii)—I conclude that plaintiff failed to fully exhaust his administrative

remedies.[10]  *See, e.g.*, *Burgos v. Craig*, 307 F. App'x 469, 471 (2d Cir.

2008) (observing that subsequent exhaustion "is not enough to save his

suit, because [the inmate] is required to have properly exhausted before

he sues."); *Rodriguez v. Rosner*, No. 12-CV-958, 2012 WL 7160117, *8

(N.D.N.Y. Dec. 5, 2012). From the face of plaintiff's complaint, it is clear

that plaintiff's grievance was pending, and therefore unexhausted, at the

time of commencement of this action. *See, e.g.*, *Shepherd v. Lempke*, No.

9:10-CV-1524, 2017 WL 1187859, at *3 (N.D.N.Y. Mar. 30, 2017)

(collecting cases); *see also Guillory v. Haywood*, No. 9:13-CV-1564, 2015

WL 268933, *11 (N.D.N.Y. Jan. 21, 2015) ("[A] post-exhaustion

amendment of the complaint cannot cure an exhaustion defect existing at

the time the action was commenced."); *Casey v. Brockley*, No. 9:13-CV-

---

[10]     In December 2017, two months following the commencement of this action, plaintiff attempted to secure a written decision from the CORC. Dkt. No. 16 at 9; *see also* Dkt. No. 24. On January 2, 2018—well beyond the timeframe that the CORC has been allotted under the IGP to render a written decision, *see* 7 N.Y.C.R.R. § 701.5(d)(2)(i), (ii)—the CORC responded that plaintiff's grievance continued to be "pending a CORC disposition." *Id.* According to plaintiff, as of at least June 12, 2018, the CORC had yet to render a decision. Dkt. No. 24. Plaintiff's frustration with the CORC's failure to comply with its thirty-day obligation under the regulatory scheme, while understandable, does not compel a different result given the chronology of the relevant events.

1271, 2015 WL 8008728, *5 (N.D.N.Y. Nov. 9, 2015) ("Receiving a decision from CORC *after* commencing litigation does not satisfy PLRA's requirement that administrative remedies be exhausted *before* filing suit, and any claim not exhausted prior to commencement of the suit must be dismissed without prejudice."), *report and recommendation adopted by* 2015 WL 7864161 (N.D.N.Y. Dec. 3, 2015).

The finding that plaintiff did not complete the IGP process before commencing this action leaves only one question—whether the IGP was "unavailable" to plaintiff. *Williams*, 829 F.3d at 123 (quoting *Ross*, 136 S. Ct. at 1858). Plaintiff invites the court to deem his administrative remedies unavailable, a finding that would excuse his failure to fully exhaust the administrative remedies, by virtue of the CORC's failure to render a decision at the third and final step. Dkt. No. 16 at 3-4. Under these circumstances, however, because plaintiff did not allow the time period prescribed by the regulatory scheme to elapse prior to commencement, I am unable to conclude that administrative remedies were unavailable to him.[11]

---

[11]    I note that the outcome could very well have been different if plaintiff had, in fact, permitted the thirty-day period to elapse prior to commencing this suit. "[W]hile the regulations at the preliminary stages contemplate a next step for a grievant to take in the event he does not receive a response, there is no direction on any action a grievant may take if he does not receive a response from CORC." *High v. Switz*, 9:17-CV-1067, 2018 WL 3736794 (N.D.N.Y. Jul. 9, 2018), *report and recommendation adopted by*

Based upon my finding that plaintiff did not fully comply with the IGP and that the procedures set forth in the IGP remained available to plaintiff at all relevant times, I recommend that his federal civil rights claims be dismissed.

C.     Plaintiff's Pendent State Law Claims

In addition to his federal causes of action, plaintiff also asserts claims under New York State law for gross negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress. *See generally* Dkt. No. 1. In addition to arguing that the court should not exercise supplemental jurisdiction over the state law claims, defendants seek dismissal of those claims based upon the immunity conferred by New York Correction Law § 24. Dkt. No. 14-1 at 9-10.

Section 24 of New York Correction Law precludes civil actions from being filed against "any officer or employee of [the Department of Corrections and Community Supervision] . . . in his . . . personal capacity,

---

2018 WL 3730175 (N.D.N.Y. Aug. 6, 2018); *see also* 7 N.Y.C.R.R. § 701.6(g)(1)(b)(ii). The regulations simply "do not describe a mechanism" for advancing a grievance when there is no response from the CORC, as there is no next step to which a grievant may appeal. *Williams*, 829 F.3d at 124. Indeed, "the regulations give no guidance whatsoever" to address that situation. *Id.*; *see also Rodriguez v. Reppert*, No. 14-CV-671, 2016 WL 6993383, at *1 (W.D.N.Y. Nov. 30, 2016) ("[A]fter the CORC neglected to decide [the appeal] within thirty days, administrative remedies were no longer available to [the plaintiff]").

for damages arising out of any act done or failure to perform any act within the scope of the employment and in the discharge of the duties by such officer or employee[,]" except for civil actions brought by the New York State Attorney General. N.Y. Corr. L. § 24(1). Because defendants are employed by the DOCCS, and their actions at issue were performed in the course of their employment, New York Correction Law § 24 is triggered, precluding plaintiff from maintaining common law causes of action against them. *See Dallio v. Hebert*, 678 F. Supp. 2d 35, 57 (N.D.N.Y. 2009) (Suddaby, J., *adopting report and recommendation by* Lowe, J.) (dismissing the plaintiff's state-law claims of assault, battery, and negligence against a defendant corrections officer because, "[a]lthough New York Correction Law section 24 explicitly bars only cases filed in state court, it is equally applicable to state law claims filed in federal court"). Accordingly, I recommend that the plaintiff's claims for gross negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress asserted against defendants be dismissed with prejudice.[12]

---

[12]    In light of this recommendation, I find it unnecessary to reach defendants' alternative argument that the court should decline to exercise supplemental jurisdiction over plaintiff's state law claims.

D.    Whether to Permit Amendment

Ordinarily, a court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir.1991); *see also* Fed. R. Civ. P. 15(a) ("The court should freely give leave when justice so requires."); *see also Mathon v. Marine Midland Bank, N.A.,* 875 F. Supp. 986, 1003 (E.D.N.Y.1995) (permitting leave to replead where court could "not determine that the plaintiffs would not, under any circumstances, be able to allege a civil RICO conspiracy"). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, No. 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept.

21

22, 1997) (Pooler, J.).

In this instance, the deficiencies identified in this report are substantive in nature, and extend beyond the mere sufficiency of plaintiff's complaint. Accordingly, because I find that any amendment that might be offered by plaintiff would be futile, I recommend against granting him leave to amend.

IV.   SUMMARY AND RECOMMENDATION

Although plaintiff was under no obligation to plead facts demonstrating that he complied with the PLRA's exhaustion requirement before filing this action, the face of his complaint reveals that he failed to exhaust his administrative remedies prior to commencement. His federal civil rights claims are therefore subject to dismissal on this procedural ground. In addition, plaintiff's common law causes of action are barred by the immunity conferred by New York Correction Law § 24, and should also be dismissed. Accordingly, it is respectfully

RECOMMENDED that defendants' motion to dismiss plaintiff's federal claims in this action based on his failure to exhaust the available administrative remedies (Dkt. No. 14) be GRANTED; and that plaintiff's federal civil rights claims be DISMISSED WITHOUT PREJUDICE; and it is further

RECOMMENDED, that plaintiff's remaining state law causes of action be DISMISSED WITH PREJUDICE.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report.[13] FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

David E. Peebles
U.S. Magistrate Judge

Dated:    November 2, 2018
          Syracuse, New York

---

[13]    If you are proceeding *pro se* and are served with this report and recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the report and recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

Case 9:17-cv-01158-MAD-DEP    Document 28    Filed 11/02/18    Page 24 of 101
Brown v. Peters, Not Reported in F.Supp. (1997)
1997 WL 599355

1997 WL 599355
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Kenneth BROWN, Plaintiff,

v.

Andrew PETERS, Warden, Watertown Correctional
Facility; Joseph Williams, Warden, Lincoln Work–
Release Center; Francis J. Herman, Senior Parole
Officer Interstate Bureau; T. Stanford, Senior Parole
Officer; Deborah Stewart, Parole Officer; John
Doe # 1, Parole Agent, Watertown Correctional
Facility; John Doe # 2, Parole Agent, Lincoln
Work Release Center; Susan Bishop, Director of
Interstate Compact, South Carolina; Cecil Magee,
Parole Officer, South Carolina; Frank Barton,
Parole Officer, South Carolina; John McMahan,
Parole Officer, South Carolina, Defendants.

No. Civ.A. 95CV1641RSPDS.
|
Sept. 22, 1997.

### Attorneys and Law Firms

Kenneth Brown, State Court Institute–Greene,
Waynesburg, PA, plaintiff, pro se.

Dennis C. Vacco, New York State Attorney General,
The Capitol Albany, NY, for defendants Peters, Herman
Stewart, Doe # 1, Doe # 2, and Williams, Jeffrey M.
Dvorin, Assistant Attorney General, Carl N. Lundberg,
Chief Legal Counsel, South Carolina Department of
Probation, Columbia, SC, for defendants Bishop, Magee,
Barton, McMahan, and Stanford, Carl N. Lundberg, of
Counsel.

### DECISION AND ORDER

POOLER, J.

**\*1** The above matter comes to me following a Report–
Recommendation by Magistrate Judge Daniel Scanlon,
Jr., duly filed on April 17, 1997. Following ten days from
the service thereof, the Clerk has sent me the entire file,
including any and all objections filed by the parties herein.

Plaintiff Kenneth Brown commenced this Section 1983
civil rights action on November 17, 1995. On February
12, 1996, Magistrate Judge Scanlon ordered Brown to
submit an amended complaint alleging the specific acts
committed by the individuals named as defendants which
Brown claimed violated his constitutional rights. Brown
filed an amended complaint on March 21, 1996. In
his amended complaint, Brown alleged that defendants
violated his rights under the Eighth and Fourteenth
Amendments by failing to process properly his interstate
compact paperwork, resulting in Brown being imprisoned
pursuant to a parole hold when in fact he had never
violated the conditions of his parole. For a more complete
statement of Brown's claims, see his amended complaint.
Dkt. No. 5.

On August 5, 1996, defendants Peters and Williams made
a motion to dismiss for failure to state a claim pursuant
to Fed.R.Civ.P. 12(b)(6). Dkt. No. 13; Dkt. No. 14, at 2.
On August 19, 1996, defendants Bishop, Magee, Barton,
and McMahan made a motion to dismiss the complaint
against them or, in the alternative, for summary judgment.
Dkt. No. 20. On October 17, 1996, defendants Herman,
Stewart, and Stanford made a motion to dismiss for failure
to state a claim. Dkt. No 34. On April 17, 1996, Magistrate
Judge Scanlon recommended that all defendants' motions
to dismiss be granted and that the complaint be dismissed.
Dkt. No. 50.

On June 9, 1997, Brown filed objections to the magistrate
judge's report-recommendation, having been granted
additional time in which to do so. Dkt. No. 52. In addition,
Brown filed on June 9, 1997, a motion for leave to file a
second amended complaint and a copy of his proposed
amended complaint. Dkt. No. 53. I turn first to the last
motion filed, Brown's motion for leave to amend his
complaint a second time.

Brown seeks to file a second amended complaint "setting
forth in detail the personal involvement of each defendant
and how their acts of commission and omission served to
deprive plaintiff of Constitutionally secured rights." Dkt.
No. 53. The district court has discretion whether to grant
leave to amend. *Ruffolo v. Oppenheimer & Co.,* 987 F.2d
129, 131 (2d Cir.1993). In exercising that discretion, the
court should freely grant leave to amend when justice so
requires. Fed.R.Civ.P. 15(a). However, the court need not
grant leave to amend where it appears that amendment

Case 9:17-cv-01158-MAD-DEP   Document 28   Filed 11/02/18   Page 25 of 101
Brown v. Peters, Not Reported in F.Supp. (1997)
1997 WL 599355

would prove to be unproductive or futile. *Ruffolo,* 987 F.2d at 131.

Here, Brown moved to amend his complaint to add additional allegations against the named defendants. However, the additional allegations fail to cure the deficiency which forms the basis of defendants' motion to dismiss—the absence of defendants' personal involvement in a constitutional deprivation. Section 1983 imposes liability upon an individual only when personal involvement of that individual subjects a person to deprivation of a federal right. *See Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A complaint is fatally defective if it fails to allege personal involvement sufficient to establish that a supervisor was "directly and personally responsible for the purported unlawful conduct." *Alfaro Motors, Inc. v. Ward,* 814 F.2d 883, 886 (2d Cir.1987).

**\*2** Brown's proposed amended complaint alleges in conclusory fashion that defendants acted "in a grossly negligent and concerted manner which breached their duties owed to Plaintiff and is the proximate cause of [the violation of plaintiff's constitutional rights]." Proposed Am. Compl., at 3. Brown continues in the same vein, stating that defendants owed duties to plaintiff to carry out their jobs in a professional manner and they failed to carry out those duties appropriately. The complaint states that defendants held specific responsibilities, such as checking for outstanding warrants, which if performed properly should have alerted them to a problem. However, nowhere does the complaint set forth allegations that these defendants either participated directly in any constitutional infraction or that they were even aware of such an infraction. The proposed amended complaint merely alleges that these defendants failed in performing their supervisory and ministerial functions. "These bare assertions do not state a claim under 42 U.S.C. § 1983." *Smiley v. Davis,* 1988 WL 78306, \*2 (S.D.N.Y.).

This plaintiff previously has had the opportunity to amend his complaint for the same reason asserted here, to allege personal involvement on the part of defendants. Brown's first amended complaint failed to accomplish that task, and it appears that even if allowed to amend again Brown would be unable to make the requisite allegations with sufficient specificity to sustain his complaint. Consequently, I find that amendment

would be futile, and I deny Brown's motion for leave to amend his complaint.

I turn now to the magistrate judge's report-recommendation and defendants' motions. The magistrate judge recommends that I grant defendants' motions and dismiss the complaint as to all defendants. The report-recommendation clearly describes the grounds on which the magistrate judge recommends dismissal as to each defendant. Fed.R.Civ.P. 72(b) requires the district judge to make a *de novo* determination on "any portion of the magistrate's disposition to which specific, written objection has been made." Brown's objections fail to address directly any of the analysis. Brown's objections state (1) that he has been deprived of his constitutional rights; (2) that he has stated a cause of action; (3) that the court wrongly refused to appoint an attorney for him and wrongly stayed discovery pending the outcome of these motions; (4) that he seeks to file an amended complaint; (5) the standard of review for a Fed.R.Civ.P. 12(b)(6) motion; (6) that he disagrees with the magistrate judge's recommendation to grant defendants' motions because the allegations in his complaint, which he repeats, show that his rights were violated; and (7) the text of the Fourteenth and Eighth Amendments.

Even affording the objections the liberal reading required for *pro se* pleadings, I find that these objections fail to state any basis whatsoever, much less a specific one, for the court not to adopt the magistrate judge's rulings. They simply re-state the relief sought and the facts on which Brown grounds his complaint and conclude that the magistrate judge's conclusions are wrong. When the parties make only frivolous, conclusive, or general objections, the court reviews the report-recommendation for clear error. *See Camardo v. General Motors Hourly–Rate Employees Pension Plan,* 806 F.Supp. 380, 382 (W.D.N.Y.1992) (court need not consider objections which are frivolous, conclusive, or general and constitute a rehashing of the same arguments and positions taken in original pleadings); *Chambrier v. Leonardo,* 1991 WL 44838, \*1 (S.D.N.Y.) (restatement of allegations already before the court and assertion that valid constitutional claim exists insufficient to form specific objections); *Schoolfield v. Dep't of Correction,* 1994 WL 119740, \*2 (S.D.N.Y.) (objections stating that magistrate judge's decisions are wrong and unjust, and restating relief sought and facts upon which complaint grounded, are conclusory and do not form specific basis for not adopting report-

Case 9:17-cv-01158-MAD-DEP    Document 28    Filed 11/02/18    Page 26 of 101

Brown v. Peters, Not Reported in F.Supp. (1997)
1997 WL 599355

recommendation); *Vargas v. Keane,* 1994 WL 693885, *1 (S.D.N.Y.)* (general objection that report does not address violation of petitioner's constitutional rights is a general plea that report not be adopted and cannot be treated as objection within the meaning of 28 U.S.C. § 636), *aff'd,* 86 F.3d 1273 (2d Cir.), *cert. denied,* 519 U.S. 895, 117 S.Ct. 240, 136 L.Ed.2d 169 (U.S.1996). *See also Scipio v. Keane,* 1997 WL 375601, *1 (1997)* (when objections fail to address analysis directly, court reviews report-recommendation for clear error); Fed.R.Civ.P. 72(b), Advisory Comm. Note (when no specific, written objections filed, "court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation").

**\*3** Because Brown fails to make specific objections or provide any basis for his general objections, I review the report-recommendation for clear error. After careful review, I conclude that the magistrate judge's report-recommendation is well-reasoned and is not clearly erroneous. [1] The magistrate judge employed the proper standard, accurately recited the facts, and reasonably applied the law to those facts. Consequently, I adopt the report-recommendation.

CONCLUSION

Because plaintiff's proposed amendment demonstrates that amendment would be futile, I deny plaintiff's motion for leave to amend his complaint. I approve the magistrate judge's recommendation and grant defendants' motions to dismiss. Plaintiff's complaint is dismissed in its entirety.

IT IS SO ORDERED.

**ORDER and REPORT–RECOMMENDATION**

This matter was referred to the undersigned for report and recommendation by the Hon. Rosemary S. Pooler, United States District Judge, by Standing Order dated November 12, 1986. Currently before this Court are a number of motions. Defendants Peters and Williams have filed a motion to dismiss (dkt.13); defendants Bishop, Magee, Barton and McMahan have filed a motion for summary judgment, or in the alternative to dismiss (dkt.20); and defendants Herman, Stewart and Stanford also have filed a motion to dismiss (dkt.34). Plaintiff opposes these three

motions (dkts.27, 29, 33, 38). Defendants Bishop, Magee and McMahan have filed a motion to stay discovery (dkt.41) and plaintiff has filed a motion to extend time (dkt.44) in which to file opposition to the latter motion for a stay of discovery.

The Court addresses these issues *seriatim.*

BACKGROUND

Plaintiff's amended complaint, which he has brought pursuant to 42 U.S.C. § 1983, alleges the following facts. In October, 1991, plaintiff was incarcerated in the Watertown Correctional Facility in Watertown, New York. He applied for an interstate compact because he wanted to return to South Carolina to live with his common law wife, Pamela Reid. During the application process, he was interviewed by the facility's parole officer, identified only as defendant John Doe # 1. After signing the necessary papers, his application was forwarded to defendant Andrew Peters, the facility's superintendent, who reviewed, signed and forwarded the papers to the Interstate Bureau. Amend. Compl. at ¶¶ 1–2; Exs. A, B.

On or about January 15, 1992, while his compact was waiting for review at the Interstate Bureau, plaintiff was approved for work release and sent to the Lincoln Work Release Center in New York City. While at the center, plaintiff spoke to a parole officer, defendant John Doe # 2, and told him that he was seeking a compact that would return him to South Carolina upon his conditional release. Plaintiff claims the parole officer told him that he would handle the necessary paperwork, although the officer had had no experience with an interstate compact. Amend. Compl. at ¶¶ 3, 4.

**\*4** Plaintiff, meanwhile, asked Reid whether any officials had contacted her in South Carolina regarding his prospective residence in that state. Upon discovering no one had contacted her, plaintiff asked a lawyer he knew, Navron Ponds, to inquire as to his compact status. In March, 1992, the lawyer spoke with defendant Susan Bishop, who is the director of the interstate compact program in South Carolina. Bishop allegedly told Ponds that plaintiff "was disapproved because there was a discrepancy about approving plaintiff['s] compact." The "discrepancy" was the fact that plaintiff owed the state of South Carolina eighty-six days of confinement from

1997 WL 599355

a previous sentence. Plaintiff claims Bishop told Ponds to contact defendants Cecil Magee and Frank Barton, who worked for the South Carolina Parole Department. Sometime in March, 1992, Ponds made some calls to Barton and Magee. A verbal agreement was reached, and plaintiff, upon speaking with Barton and Magee was told that his compact had been approved. He also was told that he should report to the South Carolina Department of Parole upon being released. Amend. Compl. at ¶¶ 5–7.

Prior to leaving the Lincoln Work Release Center, plaintiff processed paperwork related to his interstate compact. His paperwork was sent by Doe # 2 to defendant Joseph Williams, the superintendent of the center. Williams reviewed, signed and returned the paperwork to plaintiff. On May 1, 1992, upon his release from the center, plaintiff traveled to South Carolina. Three days later, he entered a South Carolina parole office and promptly was arrested because of the eighty-six days of confinement that he owed the state. Plaintiff's paperwork was given to defendant John McMahan, a parole officer. Plaintiff claims that McMahan never returned this paperwork to him. On May 20, 1992, the state of South Carolina revoked plaintiff's parole and plaintiff was returned to prison to serve the eighty-six days that he owed. When he asked McMahan what would happen to his one year of parole from New York, the officer allegedly told him that his New York parole would run concurrently with his South Carolina parole, and that when he finished his South Carolina parole, he would not owe any parole whatsoever. Plaintiff served the eighty-six days he owed and was released on July 31, 1992. Amend. Compl. at ¶¶ 8–10.

In February, 1993, plaintiff was arrested on robbery charges in South Carolina. The charges ultimately were dropped, but he apparently encountered some difficulties regarding this arrest as a result of a parole hold that New York state had placed upon him. Bishop's office told him that it had nothing to do with his parole hold and that any problem that he had was between him and the state of New York. He talked to authorities in Albany, New York regarding the parole hold, but was not successful in his efforts to have the hold removed. On September 30, 1993, after had been extradited to New York as a fugitive from justice, plaintiff was given a preliminary hearing at Riker's Island, New York. The hearing officer found no probable cause that plaintiff had violated any condition of parole. He was released. Amend. Compl. at ¶¶ 11–14; Exs. C–J.

**\*5** Plaintiff claims that he would not have suffered hardships if his interstate compact had been handled correctly. He alleges that defendant Deborah Stewart failed to follow up and see whether plaintiff had arrived in South Carolina. If she had, he argues, she would have discovered that he had been arrested upon his arrival. He alleges that defendant Francis Herman, a parole officer at the Interstate Bureau failed to do his job by not investigating plaintiff's violation reports. Amend. Compl. at ¶¶ 15–17; Exs. F–I.

Plaintiff asserts that the foregoing amounts violations of his Eighth and Fourteenth Amendment rights, wherefore he both compensatory and declaratory relief.

## DISCUSSION

A. Motion to Dismiss by Williams and Peters.

Williams and Peters have filed a motion to dismiss plaintiff's complaint pursuant to FED.R.CIV.P. 12(b)(6) on the grounds that it fails to state a claim upon which relief may be granted. In a Rule 12(b)(6) motion, all factual allegations in the complaint must be taken and construed in plaintiff's favor. *See LaBounty v. Adler,* 933 F.2d 121, 122 (2d Cir.1991) (citing *Ortiz v. Cornette,* 867 F.2d 146, 149 (1989)). The Court's role is not to assess whether plaintiffs have raised questions of fact or demonstrated an entitlement to a judgment as a matter of law, as in a motion made pursuant to FED.R.CIV.P. 56 for summary judgment, but rather to determine whether plaintiff's complaint sufficiently alleges all of the necessary legal elements to state a claim under the law. *See Christopher v. Laidlaw Transit, Inc.* 899 F.Supp. 1224, 1226 (S.D.N.Y.1995), (citing *Ricciuti v. New York City Transit Authority,* 941 F.2d 119, 124 (2d Cir.1991)). Factual allegations in brief or memoranda may not be considered. *Fonte v. Board of Managers of Continental Towers Condominium,* 848 F.2d 24, 25 (2d Cir.1988). The Court now turns to the issues presented.

Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994). As superintendents at New York State Correctional facilities, Williams and Peter may be found personally involved in the alleged deprivation of plaintiff's constitutionally protected rights by a showing

Case 9:17-cv-01158-MAD-DEP   Document 28   Filed 11/02/18   Page 28 of 101

Brown v. Peters, Not Reported in F.Supp. (1997)

1997 WL 599355

that they: (1) directly participated in the infraction; (2) knew of the infraction, but failed to remedy the wrong; (3) created or continued a policy or custom under which unconstitutional practices occurred; or (4) were grossly negligent in managing subordinates who caused unlawful conditions or events. *Id.,* (quoting *Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986)). Supervisory liability also may be imposed against Williams or Peters with a showing of gross negligence or deliberate indifference to plaintiff's constitutional rights. *Id.* Absent some personal involvement by Williams or Peters in the allegedly constitutionally infirm conduct of their subordinates, neither can be held liable under § 1983. *Gill v. Mooney,* 824 F.2d 192, 196 (2d Cir.1987).

**\*6** Plaintiff has not provided any evidence linking either Williams or Peters to his alleged constitutional deprivations. All that plaintiff has alleged is that Williams and Peters, as superintendents, have reviewed and signed paperwork relating to plaintiff's compact. Though it has long been held that *pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers" for the purpose of a motion to dismiss under Rule 12(b)(6), *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972), plaintiff has not explained how the ministerial conduct of these two defendants was violative of the Constitution. Their motion to dimiss should be granted.

B. Motion for Summary Judgment or to Dismiss by Bishop, Magee, Barton and McMahan.
Bishop, Magee, Barton and McMahan have filed a motion for summary judgment, or in the alternative a motion to dismiss. The Court will treat their motion as a motion to dismiss. "[C]omplaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." *Barr v. Adams,* 810 F.2d 358, 363 (2d Cir.1987). Plaintiff has not alleged specifically how the conduct of these four defendants infringed upon his constitutional rights. In his amended complaint, he contends that defendants violated the Constitution by "continuously breaching [[[their] duty" to him. This language underscores the defect with the complaint: if it alleges anything at all, it alleges that defendants were negligent in handling plaintiff's interstate compact and parole. To state a cognizable § 1983 claim, the prisoner must allege actions or omissions sufficient to demonstrate

deliberate indifference; mere negligence will not suffice. *Hayes v. New York City Dept. of Corrections,* 84 F.3d 614, 620 (2d Cir.1996); *Morales v. New York State Dep't of Corrections,* 842 F.2d 27, 30 (2d Cir.1988) (section 1983 does not encompass a cause of action sounding in negligence).

The Court finds that the claims against Bishop, Magee, Barton and McMahan should be dismissed.

C. Motion to Dismiss by Herman, Stewart and Stanford. Plaintiff's claim against Stewart is that she failed to follow up and see whether plaintiff had arrived in South Carolina. Herman, he likewise asserts, failed to do his job because he did not investigate plaintiff's violation reports. Plaintiff has not alleged how these actions run afoul of the Constitution; and again, these claims seem to be grounded in negligence, which is not actionable under § 1983. *Hayes,* 84 F.3d at 620.

Plaintiff's claim against Stanford must fail because his complaint literally fails to state a claim against that defendant. Aside from naming Stanford as a defendant, and alleging that he was the appointed Senior Parole Officer at plaintiff's September 30, 1993 revocation hearing at Riker's Island, plaintiff does not detail how Stanford violated his constitutional rights. Absent some personal involvement by Stanford in the allegedly constitutionally infirm conduct of his subordinates, he cannot be held liable under § 1983. *Gill,* 824 F.2d at 196.

**\*7** Accordingly, the Court finds that Stanford, Stewart and Herman's motion to dismiss should be granted.

D. Plaintiff's "John Doe" Claims.
In so far as neither John Doe # 1 nor John Doe # 2 have been identified and served in this matter, the Court does not have jurisdiction over these parties and does not reach the merits of plaintiff's claims against them.

E. Discovery Motions.
Defendants Bishop, Magee and McMahan have filed a motion to stay discovery until the Court has made a ruling on their motion to dismiss. Plaintiff has filed a motion to extend the time in which he may file opposition to defendants' motion. Plaintiff, however, has filed his opposing response (dkt.47), therefore his instant discovery

1997 WL 599355

motion is denied as moot. In that the Court recommends granting defendants' motion to dismiss, discovery in this matter would be fruitless. Accordingly, defendants' motion for a stay of discovery pending the resolution of their motion to dismiss is granted.

## CONCLUSION

WHEREFORE, based upon the foregoing analysis, it is hereby

ORDERED, that plaintiff's motion to extend the time to file an opposing reply (dkt.44) is denied as moot; and it is further

ORDERED, that defendants Bishop, Magee and McMahan's motion to stay discovery until their motion to dismiss is decided (dkt.41) is granted; and it is further

RECOMMENDED, that defendants Peters and Williams' motion to dismiss (dkt.13) be granted; and it is further

RECOMMENDED, that defendants Bishop, Magee, Barton and McMahan's motion to dismiss (dkt.20) be granted; and it is further

RECOMMENDED, that defendants Herman, Stewart and Stanford's motion to dismiss (dkt.34) be granted.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. *FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.* *Roldan v. Racette, 984 F.2d 85, 89 (2d Cir.1993)* (citing *Small v. Secretary of Health and Human Services, 892 F.2d 15 (2d Cir.1989)*); 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 6(a), 6(e) and 72.

## All Citations

Not Reported in F.Supp., 1997 WL 599355

Footnotes

1    I note, however, that the report-recommendation would survive even *de novo* review.

End of Document    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2015 WL 8008728
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Eric Casey, Plaintiff,

v.

M. Brockley, Correctional Officer, Great Meadow
Correctional Facility; H. Colvin, Correctional
Officer, Great Meadow Correctional Facility;
A. Mayo, Correctional Officer, Great Meadow
Correctional Facility; C. Goodrich, Correctional
Officer, Great Meadow Correctional Facility;
Wanninger, Correctional Officer, Great
Meadow Correctional Facility; H. Clapper,
Registered Nurse, Great Meadow Correctional
Facility; T. Hermance, Registered Nurse,
Great Meadow Correctional Facility; Boyce,
Registered Nurse, Great Meadow Correctional
Facility; and S. Racette, Superintendent, Great
Meadow Correctional Facility, Defendants.

9:13-CV-01271 (DNH/TWD)
|
Signed 11/09/2015

**Attorneys and Law Firms**

Eric Casey, 1881 Pitkin Avenue, Apt. 1C, Brooklyn, NY
11212, pro se.

Hon. Eric T. Schneiderman, Attorney General for the
State of New York, The Capitol, Ryan E. Manley, Esq.,
of Counsel, Albany, NY 12224, for Defendants.

*ORDER AND REPORT-RECOMMENDATION*

THÉRÈSE WILEY DANCKS, United States Magistrate
Judge

## I. INTRODUCTION

**\*1** This pro se prisoner civil rights action, commenced
pursuant to 42 U.S.C. § 1983, has been referred to
me for Report and Recommendation on the issue of
exhaustion of administrative remedies by the Honorable
David N. Hurd, United States District Judge, pursuant to
28 U.S.C. § 636(b) and Local Rule 72.3(c). (Dkt. No. 49.)

Plaintiff Eric Casey asserts the following claims: (1) Eighth
Amendment claim resulting from excessive force used
against him in violation of his right to be free from cruel
and unusual punishment; and (2) Eighth Amendment
violation resulting from the failure to provide adequate
medical care. (Dkt. No. 1 at 10–13. [1] )

Currently pending before the Court is Defendants' motion
to dismiss for failure to exhaust administrative remedies,
pursuant to Federal Rule of Civil Procedure 12(b)(6).
(Dkt. No. 37.) For the reasons that follow, the Court
recommends that Defendants' motion to dismiss be
granted without prejudice as to all defendants.

## II. BACKGROUND

At the time this action was commenced Plaintiff was
a prison inmate in Department of Corrections and
Community Supervision ("DOCCS") custody being held
at Great Meadow Correctional Facility ("GMCF"). (Dkt.
No. 1 at 5.) On May 22, 2013, at approximately 5:00 p.m.,
Plaintiff claims that he was returning to his cell and was
"hit from behind in the back of [his] head with a hard
object" as he entered the stairwell area. (Dkt. No. 1 at 7.)
Plaintiff claims that he "fell to the floor and was brutally
beaten" by Defendant correctional officers M. Brockley
("Brockley"), H. Colvin ("Colvin"), A. Mayo ("Mayo"),
C. Goodrich ("Goodrich"), and Wanninger. (Dkt. No.
1 at 7.) Plaintiff claims that he was "kicked, stomped,
sexually humiliated, and beat[en] with sticks all over [his]
body...." (Dkt. No. 1 at 7.) Plaintiff claims that he was
referred to as " 'Rodney King' and other racial and sexual
slurs" while the beating took place. (Dkt. No. 1 at 7.)
Specifically, Plaintiff makes the following claims: Colvin
and Goodrich held Plaintiff's legs open so Brockley could
kick him the groin; Wanninger struck Plaintiff multiple
times with her baton; and Mayo beat Plaintiff's knees,
shins, and ribs with a cudgel. (Dkt. No. 1 at 8.) Plaintiff
claims that the beating lasted approximately five minutes.
(Dkt. No. 1 at 8.)

Plaintiff was taken to a facility hospital and was
treated by Defendant Registered Nurses Boyce ("Boyce")
and Clapper ("Clapper"). (Dkt. No. 1 at 8.) Clapper
prepared an injury report that indicated Plaintiff had
only "superficial abrasions." (Dkt. No. 1 at 30.) Plaintiff
claims that Clapper and Boyce "intentionally downplayed
the severity of [his] injuries while disregarding the more
serious ones ..." since they were not mentioned in the

injury report. (Dkt. No. 1 at 8.) Plaintiff claims that Clapper only "questioned [him] from afar" and that Boyce only "electronically check[ed][his] vital signs." (Dkt. No. 1 at 9.) Plaintiff claims that Defendant Registered Nurse Hermance "utilized her time falsifying business records ..." to indicate that Colvin, Mayo, and Brockley suffered injuries rather than providing medical care. (Dkt. No. 1 at 8.) Photographs of Plaintiff were taken prior to leaving the hospital. (Dkt. No. 1 at 33–39.)

**\*2** Plaintiff claims that, in addition to what was indicated on the injury report, he suffered the following injuries: (1) swelling above his left eye; (2) three linear-shaped abrasions above left eye swelling; (3) bruise on the left side of his face; (4) swelling to the left side of his face; (5) swelling above his right eye; (6) swelling to his upper right forehead; (7) swelling near the center of his back; (8) linear-shaped laceration on his left shin; (9) left shin bone injury; (10) right knee injury; (11) left pinky bone injury; and (12) left rib injury. (Dkt. No. 1 at 10.)

On June 3, 2013, Plaintiff filed Inmate Grievance Complaint GM–55615–13, alleging "cruel and unusual punishment, excessive force, and inadequate medical care." (Dkt. No. 1 at 18–19.) After receiving no response from then GMCF superintendent Defendant S. Racette ("Racette"), within the allotted twenty-five day time period, Plaintiff appealed to the Central Office Review Committee ("CORC"). (Dkt. No. 1 at 4.) On July 22, 2013, S. Pelo ("Pelo"), the grievance supervisor, asked Plaintiff for an extension to the investigation period "to allow for a proper investigation." (Dkt. No. 1 at 22.) Pelo also informed Plaintiff that "CORC will still have to wait for the investigation [to be completed] before they can render a decision." (Dkt. No. 1 at 22.) Plaintiff denied Pelo's extension request citing his "statutory right to appeal." (Dkt. No. 1 at 4.) On August 7, 2013, Pelo confirmed that the appeal had been submitted to CORC and notified Plaintiff that a decision was forthcoming. (Dkt. No. 1 at 23.) On October 15, 2013, after not receiving a response from CORC within the allotted thirty day time period, Plaintiff commenced this action.[2] (Dkt. No. 1 at 4.)

## III. APPLICABLE LEGAL STANDARDS

### A. Rule 12(b)(6) motion

A defendant may move to dismiss a complaint "for failure to state a claim upon which relief can be granted"

under Rule 12(b)(6). The motion tests the formal legal sufficiency of the complaint by determining whether it conforms to Federal Rule of Civil Procedure 8(a)(2), which requires that a complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief." *Bush v. Masiello*, 55 F.R.D. 72, 74 (S.D.N.Y.1972). Satisfaction of the requirement that a plaintiff "show" that he or she is entitled to relief requires that the complaint "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief ... requires the ... court to draw on its judicial experience and common sense.... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citation and punctuation omitted).

A complaint may be dismissed, pursuant to Rule 12(b)(6), only where it appears that there are not "enough facts to state a claim that is plausible on its face." *Twombley*. 550 U.S. at 570. While Rule 8(a)(2) "does not require detailed factual allegations, ... it demands more than an unadorned, the-defendant-harmed-me-accusation." *Iqbal*, 556 U.S. at 678 (citation and internal quotation marks omitted). A complaint which "tenders 'naked assertion [s]' devoid of 'further factual enhancement' " does not suffice. *Id.* (citation omitted).

**\*3** "In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir.1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Where a party is proceeding pro se, the court is obliged to "read [the pro se party's] supporting papers liberally, and ... interpret them to raise the strongest arguments that they suggest." *See Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994) (citations omitted); *see also Harris v. Mills*,

2015 WL 8008728

572 F.3d 66, 72 (2d Cir.2009) (courts remain obligated to construe pro se complaints liberally even after *Twombly* ).

Where a pro se complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) (citation and internal quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Id.* (citation omitted).

### B. The Prison Litigation Reform Act of 1996

As succinctly outlined by my colleague, Magistrate Judge David E. Peebles:

> The Prison Litigation Reform Act of 1996 ("PLRA"), Pub.L. No. 104–134, 110 Stat. 1321 (1996), which imposes several restrictions on the ability of prisoners to maintain federal civil rights actions, expressly requires that no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted. The PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. An inmate plaintiff's complaint is subject to dismissal if the evidence establishes that he or she failed to properly exhaust available remedies prior to commencing the action.... Proper exhaustion requires a plaintiff to procedurally exhaust his or her claims by complying with the system's critical procedural rules. Complete exhaustion has not occurred, for purposes of the PLRA,

> until all of the steps of that available process have been taken.

*Bailey v. Fortier,* 09–CV–0742 (GLS/DEP), 2012 WL 6935254, at \*4, 2012 U.S. Dist. LEXIS 185178, at \*11–13 (N.D.N.Y. Oct. 4, 2012) (citations and punctuation omitted). [3] "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532 (2002). In order to properly exhaust administrative remedies under the PLRA, inmates are required to complete the administrative review process in accordance with the rules applicable to the particular institution in which they are confined. *Jones v. Bock,* 549 U.S. 199, 218 (2007) (citing *Woodford v. Ngo,* 548 U.S. 81, 88 (2006)). If a prisoner has failed to properly follow each of the applicable steps prior to commencing litigation, he has failed to exhaust his administrative remedies. [4] *Woodford,* 548 U.S. at 93.

### C. Inmate Grievance Program

**\*4** Exhaustion for a prison inmate in DOCCS custody is normally achieved through the Inmate Grievance Program ("IGP"). 7 N.Y. COMP. CODES. R. & REGS. tit. 7, § 701.1 (2012). The IGP involves a three-step process. *Id.* at § 701.5. First, the prison inmate must submit a grievance to the clerk within twenty-one days of the alleged action. *Id.* at § 701.5(a)(1). The Inmate Grievance Program Committee ("IGPC") must hold a hearing within sixteen days and issue a written decision within two days of the hearing. *Id.* at §§ 701.5(b)(2)(i), (ii). Second, the prison inmate may appeal the IGPC's decision, within seven days of receipt, to the facility superintendent. *Id.* at § 701.5(c)(1). Third and finally, the prison inmate may appeal the facility superintendent's decision to CORC, within seven days of receipt. *Id.* at §§ 701.5(d)(i), (ii). CORC has thirty days to review the appeal and issue a decision. *Id.* at § 701.5(d)(2)(ii).

### D. *Hemphill v. State of New York*

Because failure to exhaust is an affirmative defense, defendants bear the burden of showing by a preponderance of the evidence that a plaintiff has failed to exhaust his available administrative remedies. *See Murray v. Palmer,* No. 9:03–CV–1010 (GTS/GHL), 2010 WL 1235591, at \*4, 2010 U.S. Dist. LEXIS 32014, at \*16 (N.D.N.Y. Mar. 31, 2010); *Bailey,* 2012 WL 6935254,

at *6 (the party asserting failure to exhaust bears the burden of proving its elements by a preponderance of the evidence); *see also Andrews v. Whitman*, No. 06–2447–LAB (NLS), 2009 WL 857604, at *6, 2009 U.S. Dist. LEXIS 30017, at *16 (S.D.Cal. Mar. 27, 2009) (defendant must prove non-exhaustion of administrative remedies by a preponderance of the evidence).

If a defendant meets that burden, however, a plaintiff's failure to exhaust does not end the review. "[O]nce a defendant has adduced reliable evidence that administrative remedies were available to Plaintiff and that Plaintiff nevertheless failed to exhaust those administrative remedies, Plaintiff must then 'counter' Defendants' assertion by showing exhaustion unavailability, estoppel, or 'special circumstances' [under *Hemphill v. State of New York*, 380 F.3d 680, 686 (2d Cir.2004) ]." *Murray*, 2010 WL 1235591, at *4. *Hemphill* sets forth a three-part inquiry for district courts. First, courts must determine if administrative remedies were in fact available to plaintiff. In *Hemphill*, the Second Circuit stated that "[t]he test for deciding whether the ordinary grievance procedures were available must be an objective one: that is, would 'a similarly situated individual of ordinary firmness' have deemed them available." *Hemphill*, 380 F.3d at 688. Courts have found administrative grievance procedures unavailable where an inmate was prevented from filing a grievance. *See, e.g.*, *Sandlin v. Poole*, 575 F.Supp.2d 484, 488 (W.D.N.Y.2008) (The facility's "failure to provide grievance deposit boxes, denial of forms and writing materials, and a refusal to accept or forward plaintiff's appeals ... effectively rendered the grievance appeal process unavailable to him.").

Second, courts must determine if the defendants are estopped from presenting non-exhaustion as an affirmative defense because they prevented the plaintiff inmate from exhausting his administrative remedies by " 'beating him, threatening him, denying him grievance forms and writing implements, and transferring him to another correctional facility.' " *Hemphill*, 380 F.3d at 688 (citing *Ziemba v. Wezner*, 366 F.3d 161, 162 (2d Cir.2004)). Generally, defendants cannot be estopped from asserting a non-exhaustion affirmative defense based upon the actions or inaction of other individuals. *Murray*, 2010 WL 1235591, at *5 & n.26 (collecting cases); *McCloud v. Tureglio*, No. 07–CV–0650, 2008 WL 1772305, at *12, 2008 U.S. Dist. LEXIS 124388, at *44 (N.D.N.Y. Apr. 15, 2008) (Lowe, M.J.) ("None of those documents allege

facts plausibly suggesting that Defendant's own actions inhibited Plaintiff's exhaustion of remedies during the time in question.").

**\*5** Third, the Second Circuit explained in *Hemphill* that there are certain "special circumstances" in which even though administrative remedies may have been available and the defendants may not be estopped from asserting a non-exhaustion defense, the inmate's failure to exhaust may be justified. [5] *Hemphill*, 380 F.3d at 686. "Special circumstances" have been found to include an incorrect but reasonable interpretation of the applicable grievance process or failing to file a grievance in the precise manner prescribed by the process as a result of threats. *See, e.g.*, *Giano v. Goord*, 380 F.3d 670, 675–76 (2d Cir.2004) (failure to exhaust was justified where plaintiff inmate's interpretation of regulations was reasonable and prison official threatened inmate).

## IV. ANALYSIS

### A. Plaintiff Failed to Properly Exhaust Administrative Remedies

If a prison inmate fails to follow each of the applicable steps prior to commencing litigation, he has failed to properly exhaust his administrative remedies. *Woodford*, 548 U.S. at 90 (the PLRA requires "proper exhaustion"—"using all steps that the agency holds out, and doing so properly so that the agency addressed the issues on the merits"). Receiving a decision from CORC *after* commencing litigation does not satisfy PLRA's requirement that administrative remedies be exhausted *before* filing suit, and any claim not exhausted prior to commencement of the suit must be dismissed without prejudice. *Neal v. Goord*, 267 F.3d 116, 122–23 (2d Cir.2001), *overruled on other grounds*, *Porter v. Nussle*, 534 U.S. 516 (2002). Because Plaintiff commenced this action before CORC issued a decision on his appeal, the Court finds that he failed to exhaust his administrative remedies.

### B. *Hemphill* Analysis

As noted above, an exhaustion review does not end when, as in this case, defendants are found to have met the burden of establishing a plaintiff's failure to exhaust because the Court must still undertake an analysis of the *Hemphill* factors. *See Hemphill*, 380 F.3d at 686

Here, there is no dispute that at all relevant times, DOCCS had the IGP available for Plaintiff and other prison inmates. *See* 7 N.Y. COMP. CODES. R. & REGSS. tit. 7, § 701.1 (2012); *Taylor v. Chalom*, No. 9:10–CV–1494 (NAM/DEP), 2011 WL 6942891, at *4, 2011 U.S. Dist. LEXIS 150512, at *12 (N.D.N.Y. Dec. 13, 2011) (The IGP is "recognized as an 'available' remedy for purposes of the PLRA."). Plaintiff undoubtedly had administrative remedies available to him since, on June 3, 2013, he filed Inmate Grievance Complaint GM–55615–13 alleging "cruel and unusual punishment, excessive force, and inadequate medical care." (Dkt. No. 1 at 18–19.) Plaintiff does not allege that his failure to properly exhaust available administrative remedies was due to administrative remedies being unavailable to him. (Dkt. No. 39.) Plaintiff also does not allege that the named Defendants prevented him from properly exhausting available administrative remedies and should thus be estopped from asserting the defense. (Dkt. No. 39.)

*6 Finally, there are no special circumstances that would justify Plaintiff's failure to properly exhaust available administrative remedies. (Dkt. No. 39.) Plaintiff argued that his administrative remedies were sufficiently exhausted because his CORC appeal was not decided in a timely manner. Justification "must be determined by looking at the circumstances which might understandably lead ... uncounseled prisoners to fail to grieve in the normally required way." *Giano*, 380 F.3d at 678. As noted above, generally, the "special circumstances" doctrine is applied where a prisoner has been threatened with physical retaliation for exhausting administrative remedies or where the prisoner reasonably misinterprets the statutory requirements of the appeals process. *Id.* at 676. CORC's failure to act within the time frame set out in the regulations does not constitute a special circumstance justifying the failure to exhaust. *See Ford v. Smith*, No. 9:12–CV–1109 (TJM/TWD), 2014 WL 652933, at *3, 2014 U.S. Dist. LEXIS 20581, at *8–9 (N.D.N.Y. Jan. 16, 2014) (citations omitted). *Rodriguez v. Rosner*, No. 9:12–CV–958, 2012 WL 7160117, 2012 U.S. Dist. LEXIS 186228 (N.D.N.Y. Dec. 5, 2012) (dismissing complaint for failure to exhaust where prisoner filed appeal with CORC on May 4, filed federal civil rights complaint on June 10, and received CORC response dated September 26).

**V. CONCLUSION**
The Second Circuit "has recognized that failure to exhaust administrative remedies is usually a 'curable procedural flaw' that can be fixed by exhausting those remedies and then reinstituting suit." *Neal*, 267 F.3d at 123 (citing *Snider v. Melindez*, 199 F.3d 108, 11–12 (2d Cir.1999)). The Court finds dismissal without prejudice for failure to exhaust to be proper in this case.

The parties have not provided information to the Court regarding if and when CORC issued a decision on Plaintiff's appeal. If CORC issued a response to Plaintiff's grievance subsequent to the commencement of this action on October 15, 2013, the Court recommends that the complaint be dismissed without prejudice for failure to exhaust and that Plaintiff be granted leave to refile his complaint upon the filing of a Decision and Order by the District Court on this Court's Report and Recommendation. If CORC has not as yet issued a response, the Court recommends that the complaint be dismissed without prejudice, that CORC be directed to render a decision on Plaintiff's pending grievance appeal within thirty days of the filing of the District Court's Decision and Order on this Report–Recommendation, and that upon CORC's failure to do so, Plaintiff's administrative remedies be deemed unavailable to him and he be allowed to refile this suit indicating such.

**ACCORDINGLY**, it is hereby

**RECOMMENDED** that Defendants' motion to dismiss Plaintiff's complaint (Dkt. No. 37) in this action be **GRANTED**, and that the complaint (Dkt. No. 1) be **DISMISSED WITHOUT PREJUDICE**, based upon Plaintiff's failure to fully exhaust his administrative remedies; and it is further

**RECOMMENDED** that: (1) in the event CORC has rendered a decision on Plaintiff's appeal on Inmate Grievance Complaint GM–55615–13, Plaintiff be granted leave to refile this suit upon the filing of a Decision and Order by the District court on this Court's Report–Recommendation; and (2) in the event CORC has not rendered a decision on Plaintiff's appeal, that CORC be directed to render a decision on Plaintiff's pending grievance within thirty days of the filing of the District Court's Decision and Order on this Report–Recommendation; and (3) if Plaintiff does not receive a decision from CORC within that time, administrative remedies may be deemed unavailable to him and he may therefore be excused from exhausting his administrative remedies and may refile this suit indicating such; and it is

**ORDERED** that the Clerk provide Plaintiff with a copy of this Order and Report–Recommendation, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir.2009) (*per curiam* ).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with

the Clerk of the Court. ***FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW***. *Roldan v. Racette*, 984 F.2d 85 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72.

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 8008728

Footnotes

1    Page numbers in citations to the amended complaint refer to the page numbers assigned by the Court's electronic filing system rather than to page numbers in the original document.

2    The Court is unaware whether CORC has issued a response to Plaintiff's grievance.

3    The Court will provide Plaintiff with copies of all unpublished decisions cited in this Order in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir.2009) (*per curiam* ).

4    "[A]n inmate would be well advised to take advantage of internal prison procedures for resolving inmate grievances. When those procedures produce results, they will typically do so faster than judicial processes can. And even when they do not ..., the inmate's task in court will obviously be much easier." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994).

5    Subsequent to *Hemphill*, the Supreme Court decided *Woodford v. Ngo*, 548 U.S. 81 (2006). The question addressed in *Woodford* was whether "a prisoner can satisfy the [PLRA's] exhaustion requirement by filing an untimely or otherwise procedurally defective administrative grievance or appeal." *Id.* at 83–84. The Supreme Court resolved the question in the negative, explaining that the PLRA requires "proper exhaustion" – "using all steps that the agency holds out, and doing so properly (so that the agency addressed the issues on the merits)." *Id.* at 90 (citation omitted). Although the Second Circuit has acknowledged that there is some question as to whether the estoppel and special circumstances inquiries in *Hemphill* survived *Woodford*, the Court has as yet found it unnecessary to decide the issue and appears to still be considering all three *Hemphill* inquiries in exhaustion cases. *See, e.g.*, *Amador v. Andrews*, 655 F.3d 89, 102–03 (2d Cir.2011) (finding it unnecessary to decide whether *Hemphill* is still good law because plaintiff had failed to establish that defendants were estopped from raising non-exhaustion as an affirmative defense).

---

End of Document    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2015 WL 7864161
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Eric Casey, Plaintiff,
v.
M. Brockley, Correctional Officer, Great Meadow
Correctional Facility; H. Colvin, Correctional
Officer, Great Meadow Correctional Facility;
A. Mayo, Correctional Officer, Great Meadow
Correctional Facility; C. Goodrich, Correctional
Officer, Great Meadow Correctional Facility;
Wanninger, Correctional Officer, Great
Meadow Correctional Facility; H. Clapper,
Registered Nurse, Great Meadow Correctional
Facility; T. Hermance, Registered Nurse,
Great Meadow Correctional Facility; Boyce,
Registered Nurse, Great Meadow Correctional
Facility; and S. Racette, Superintendent, Great
Meadow Correctional Facility, Defendants.

9:13-CV-01271 (DNH/TWD)
|
Signed December 2, 2015
|
Filed 12/03/2015

**Attorneys and Law Firms**

Eric Casey, Plaintiff pro se, Brooklyn, NY.

Hon. Eric T. Schneiderman, Attorney General for the
State of New York, Attorneys for Defendants, The
Capitol, Ryan E. Manley, Esq., Ass't Attorney General,
Albany, NY.

## DECISION and ORDER

DAVID N. HURD, United States District Judge

**\*1** Pro se plaintiff Eric Casey brought this action
pursuant to 42 U.S.C. § 1983. On November 9, 2015,
the Honorable Thérèse Wiley Dancks, United States
Magistrate Judge, advised by Report-Recommendation

that defendants' motion pursuant to Federal Rule of
Civil Procedure 12(b)(6) be granted and that plaintiff's
complaint be dismissed without prejudice. The Report-
Recommendation was predicated upon the fact that
neither party provided information regarding if and when
Central Office Review Committee ("CORC") had issued a
decision on plaintiff's appeal. No objections to the Report-
Recommendation were filed.

Based upon a careful review of the entire file and the
recommendations of the Magistrate Judge, the Report-
Recommendation is accepted in whole. See 28 U.S.C. §
636(b)(1).

Therefore it is

ORDERED that

1. Defendants' motion is GRANTED;

2. Plaintiff's complaint is DISMISSED without prejudice
in its entirety;

3. In the event CORC has rendered a decision on plaintiff's
appeal, plaintiff is granted thirty (30) days from the filing
of this Decision and Order to refile this suit indicating the
outcome of the appeal;

4. However, if within thirty (30) days of the filing
of this Decision and Order CORC has not issued
a decision, plaintiff's administrative remedies will be
deemed unavailable to him and he will be allowed to refile
this suit. Plaintiff will have sixty (60) days from the filing
of this Decision and Order to file an amended complaint
indicating such; and

5. The Clerk of the Court is directed to serve a copy of
this Decision and Order on the parties in accordance with
the Local Rules. The Clerk is further directed to enter
judgment accordingly and close the file.

IT IS SO ORDERED.

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 7864161

WESTLAW    © 2018 Thomson Reuters. No claim to original U.S. Government Works.                    1

2015 WL 268933
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Patrick GUILLORY, Plaintiff,
v.
Nancy HAYWOOD; Maureen Boll; Timothy
Maher; Michael Graziano; J. Dobbs; Potter; Sgt.
Donovan; and Goppert, Captain, Defendants.

No. 9:13–cv–01564 (MAD/TWD).
|
Signed Jan. 21, 2015.

**Attorneys and Law Firms**

Patrick Guillory, Dannemora, NY, pro se.

Office of the New York, State Attorney General, Albany
Office, Laura A. Sprague, AAG, of Counsel, Albany, NY,
for Defendants.

Hon. Eric T. Schneiderman, Attorney General for the
State of New York, Kevin M. Hayden, Esq., of Counsel,
Albany NY, for Defendant.

**ORDER**

MAE A. D'AGOSTINO, District Judge.

*1  Plaintiff, an inmate in the custody of the New
York State Department of Corrections and Community
Supervision, commenced this action *pro se* under 42
U.S.C. § 1983. *See* Dkt. No. 24. Upon initial review,
Plaintiff's complaint was liberally construed to assert the
following causes of action: (1) denial of access to the courts
in violation of the First Amendment and in retaliation
for his litigation and complaints; (2) interference with
Plaintiff's outgoing legal mail in violation of the First
Amendment and in retaliation for his litigation and
complaints; (3) search of his cell and confiscation of his
property in retaliation for his litigation and complaints;
and (4) denial of equal protection in violation of the
Fourteenth Amendment. *See* Dkt. No. 11 at 6. The Court
dismissed Plaintiff's claims for money damages brought
against Defendants in their official capacities and also
dismissed Plaintiff's equal protection claim as conclusory.

*See id.* Thereafter, Plaintiff was granted leave to amend
his complaint to substitute Defendants Donovan and
Goppert for Defendants John Doe Number 1 and John
Doe Number 2. *See* Dkt. No. 23.

On April 30, 2014, Defendants filed a motion to dismiss.
*See* Dkt. No. 37. In a December 11, 2014 Order
and Report–Recommendation, Magistrate Judge Dancks
recommended that the Court grant in part and deny in
part Defendants' motion. *See* Dkt. No. 48. Specifically,
Magistrate Judge Dancks recommended that the Court
dismiss the following claims: (1) First Amendment denial
of access to courts, interference with legal mail, improper
opening of legal mail, and retaliation claims against
Defendants Maher, Dobbs, and Goppert for failure to
exhaust; (2) First Amendment denial of access to courts
claim against Defendants Potter and Graziano for failure
to state a claim; (3) First Amendment retaliation claim
against Defendant Potter arising out of the destruction
of the microwave oven in Plaintiff's housing unit; (4)
First Amendment claim for retaliation against Defendant
Graziano for failure to state a claim; (5) supervisory
liability claim against Defendant Graziano for failure
to state a claim; (6) supervisory liability claims against
Defendant Haywood for failure to state a claim; (7)
supervisory liability claims against Defendant Boll for
generally failing to remedy wrongs, creating and allowing
to continue customs and policies under which under which
constitutional practices occur, and failure to supervise
and monitor subordinates for failure to state a claim;
(8) supervisory liability claim against Defendant Boll in
connection with Plaintiff's denial of access to court claims
against Defendants Potter and Graziano relating to the
May 6, 2013, law library incident for failure to state a
claim; (9) supervisory liability claim against Defendant
Boll with regard to Plaintiff's denial of access to court,
interference with legal mail, and improper opening of
legal mail claims against Defendants Maher, Dobbs,
and Goppert in connection with the amended complaint
withheld from mailing to the court, for failure to state
a claim; and (10) retaliation claims against Defendants
Haywood and Boll for failure to state a claim. *See* Dkt.
No. 48 at 42–43. Further, the report recommended that
the Court deny Defendants' motion as to the following
claims: (1) Plaintiff's retaliation claim against Defendant
Potter arising out of the May 6, 2013, law library
incident; (2) Plaintiff's retaliation claim against Defendant
Donovan with regard to taking Plaintiff's legal papers
and kosher food; and (3) Plaintiff's supervisory liability

claim against Defendant Boll with regard to Plaintiff's retaliation claim against Defendant Potter regarding the May 6, 2013, law library incident. *See id.* Finally, Magistrate Judge Dancks recommended that the Court grant Plaintiff leave to amend with regard to all of the claims dismissed without prejudice for failure to exhaust his administrative remedies. *See id.* Neither party objected to the Order and Report–Recommendation. [1]

**\*2** When a party files specific objections to a magistrate judge's report-recommendation, the district court makes a *"de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). However, when a party files "[g]eneral or conclusory objections or objections which merely recite the same arguments [that he presented] to the magistrate judge," the court reviews those recommendations for clear error. *O'Diah v. Mawhir,* No. 9:08–CV–322, 2011 WL 933606, \*1 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted). After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b) (1).

A litigant's failure to file objections to a magistrate judge's report and recommendation, even when that litigant is proceeding *pro se,* waives any challenge to the report on appeal. *See Cephas v. Nash,* 328 F.3d 98, 107 (2d Cir.2003) (holding that, "[a]s a rule, a party's failure to object to any purported error or omission in a magistrate judge's report waives further judicial review of the point" (citation omitted)). A *pro se* litigant must be given notice of this rule; notice is sufficient if it informs the litigant that the failure to timely object will result in the waiver of further judicial review and cites pertinent statutory and civil rules authority. *See Frank v. Johnson,* 968 F.2d 298, 299 (2d Cir.1992); *Small v. Sec'y of Health and Human Servs.,* 892 F.2d 15, 16 (2d Cir.1989) (holding that a *pro se* party's failure to object to a report and recommendation does not waive his right to appellate review unless the report explicitly states that failure to object will preclude appellate review and specifically cites 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and former 6(e) of the Federal Rules of Civil Procedure). *See* Dkt. No. 42.

When considering a Rule 12(b)(6) motion, the court accepts the material facts alleged in the complaint as true, drawing all inferences in favor of the non-moving party. *See, e.g., Miller v. Wolpoff & Abramson, LLP,* 321 F.3d 292, 300 (2d Cir.2003) (citing *Patel v. Contemporary Classics of Beverley Hills,* 259 F.3d 123, 126 (2d Cir.2001)). The court is not bound, however, to accept as true legal conclusions with the appearance of factual statements. *See Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). The moving party has the heavy burden of showing that the plaintiff is not "entitled to offer evidence in support [his] claims." *Gant v. Wallingford Bd. of Educ.,* 69 F.3d 669, 673 (2d Cir.1995) (citations omitted). Thus, the court should only dismiss a 12(b) (6) motion where the plaintiff provides no "plausible" basis to support his claims. *See Twombly,* 550 U.S. at 556–57. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 556).

**\*3** When a party proceeds *pro se,* the court must liberally construe his pleadings, holding them to a standard less stringent than formal pleadings drafted by lawyers. *See Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007). If a *pro se* plaintiff's complaint alleges civil rights violations, the court must construe his pleadings with "particular generosity." *Davis v. Goord,* 320 F.3d 346, 350 (2d Cir.2003) (quoting *Morales v. Mackalm,* 278 F.3d 126, 131 (2d Cir.2002)). Further, when a *pro se* plaintiff faces a motion to dismiss, the court may consider "materials outside the complaint to the extent they are consistent with the allegations in the complaint." *Donhauser v. Goord,* 314 F.Supp.2d 119, 121 (N.D.N.Y.2004).

Having reviewed the thorough and well-reasoned Order and Report–Recommendation and the parties submissions, the Court finds that Magistrate Judge Dancks correctly determined that the Court should grant in part and deny in part Defendants' motion to dismiss the amended complaint. Accordingly, the Court hereby

**ORDERS** that Magistrate Judge Dancks' Order and Report–Recommendation is **ADOPTED** in its entirety for the reasons set forth therein; and the Court further

**ORDERS** that Defendants' motion to dismiss (Dkt. No. 37) is **GRANTED in part and DENIED in part** as set forth herein; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

### *ORDER AND REPORT–RECOMMENDATION*

THÉRÈSE WILEY DANCKS, United States Magistrate Judge.

Plaintiff, Patrick Guillory, an inmate presently confined in Clinton Correctional Facility ("Clinton"), has commenced this *pro se* action civil rights action under 42 U.S.C. § 1983 against Defendants Nancy Haywood (Haywood), an attorney in the Department of Corrections and Community Supervision ("DOCCS"); Maureen Boll ("Boll"), DOCCS Deputy Commissioner and Counsel; Timothy Maher ("Maher"), Deputy Superintendent of Programs at Greene Correctional Facility ("Greene"); Michael Graziano ("Graziano"), Deputy Superintendent of Administration at Greene; J. Dobbs ("Dobbs"), a corrections counselor at Greene; Rowland Potter ("Potter"), incorrectly sued as "Roland Potter," a corrections officer at Greene; Sergeant Donovan ("Donovan"), a corrections sergeant at Greene; and Captain Goppert ("Goppert"), a corrections captain at Greene. (Dkt. No. 24.)

Defendants have moved pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss Plaintiff's Amended Complaint (Dkt. No. 24) for failure to state a claim, failure to exhaust, and on the grounds that two of Plaintiff's retaliation claims are duplicative of a claim pending in a separate action. (Dkt.Nos.37, 37–5.) Plaintiff has opposed Defendants' motion (Dkt. No. 41), and Defendants have filed a reply (Dkt. No. 42.) For reasons explained below, the Court recommends that Defendants' motion be granted in part and denied in part.

## I. BACKGROUND [1]

### A. May 6, 2013, Library Call–Out
**\*4** On May 6, 2013, Plaintiff's name was on the law library call-out list for 1:00 p.m. (Dkt. No. 24 at ¶¶ 6–7.) Plaintiff had signed up for copying and notary service so that he could comply with the mailbox rule with

regard to a May 7, 2013, court imposed deadline for filing a supplemental brief in an Article 78 proceeding entitled *Guillory v. Fischer,* Case No. 516282, that had been transferred to the New York State Supreme Court, Appellate Division Third Department ("Third Department"). [2] *Id.* at ¶¶ 6, 9, 21 and p. 39.

At approximately 12:05 pm on May 6th, Defendant Potter sent Plaintiff to the package room to pick up kosher food from his parents, and Plaintiff reported back to his housing unit at 12:35 pm. *Id.* at ¶ 8. At approximately 1:03 pm, the phone in Plaintiff's housing unit rang and Plaintiff heard Potter tell Kim Ann Johnson ("Johnson"), the law library officer, "Guillory is in the package room." *Id.* at ¶ 9. At the time, Plaintiff was standing twenty feet away from Potter and walked up to him and asked if the call was from the law library. *Id.* Potter denied Plaintiff's request for a pass to the law library despite his name being was on the library call-out list. *Id.* Potter denied the request even after Plaintiff showed him the filing deadline for the supplemental brief. *Id.*

Defendant Graziano arrived to conduct an inspection of the housing unit to ensure compliance with DOCCS regulations at around 1:20 pm. *Id.* at ¶ 10. When Graziano and Potter passed near Plaintiff's cube, Plaintiff told Graziano that he was on the law library call-out list; that Johnson had called for him to report to the library; that he had a court imposed deadline; and that Potter had refused to permit him to report to the library. *Id.* Potter stood behind Graziano shaking his fist at Plaintiff while Plaintiff spoke with Graziano. *Id.* at ¶ 11. When Graziano asked Potter if what Plaintiff had told him was true, Potter responded that Plaintiff could go to the law library the next day. *Id.* at ¶ 12. Graziano told Plaintiff he would look into the matter but according to Plaintiff "did nothing but brush [him] off." *Id.* at ¶¶ 12, 17.

Plaintiff claims he missed the court imposed deadline because he was not allowed to go to the law library on May 6, 2013. *Id.* at ¶ 17. He alleges in his Amended Complaint that Potter did not want him to the go to the law library because Plaintiff had a lawsuit pending against him. *Id.*

### B. Refusal to Send Out Plaintiff's Amended Complaint
Pursuant to an April 17, 2013, Order issued by the Hon. Randolph F. Treece, M.J., in *Guillory v. Weber,* No. 9:12–CV–00280 (LEK/RFT) (N.D.N.Y.) ("*Weber*"), Plaintiff

was given a deadline of April 30, 2013, to file an amended complaint. (Dkt. No. 24 at ¶ 3 and p. 35.) Plaintiff gave his very large amended complaint to the law library officer on April 25, 2013, so that the officer could type a letter memorandum to the mail room indicating that the amended complaint had to be sent out forthwith. *Id.* at ¶ 4. The letter memorandum was taped to the top of the bulk legal mail and sent to the mail room by the law library officer. *Id.* at ¶ 4.

 **\*5** On May 7, 2013, Plaintiff's corrections counselor, Defendant Dobbs, called Plaintiff to his office regarding Defendant Maher's refusal to send out the amended complaint in *Weber* that was supposed to be mailed on April 25, 2013. *Id.* at ¶ 22. Plaintiff learned that the amended complaint had sat in the Greene administrative office from April 25, 2013, to May 7, 2013, despite the court imposed deadline, and that it had been opened and read by the security staff. *Id.* at ¶ 23. Maher gave the opened amended complaint to Dobbs to be returned to Plaintiff when they met on May 7, 2013. *Id.* at ¶¶ 23–24. The amended complaint was never received by the court. *Id.* at ¶ 33.

Plaintiff sent a letter to Maher on May 7, 2013, demanding to know why his legal mail had not been sent out. *Id.* at ¶ 24. Maher responded by letter memorandum of May 8, 2013, informing Plaintiff his legal mail had been under investigation by security staff. *Id.* at ¶ 25 and p. 41. According to Maher, the Business Office had received seven envelopes that were taped shut with "Legal" stamped on them and an authorized advance request form for $168.40 dated April 25, 2013, with Plaintiff's name and din number. *Id.* at p. 43. There was a second advance request for postage. *Id.* The format of the letter from the law library accompanying the envelopes and authorized advance request forms was different than those previously seen by Maher. *Id.* In addition, the letter was dated Sunday, April 25, 2013, although April 25th was a Thursday, the signature was not legible, and it did not match law library officer Johnson's signature. *Id.*

Maher consulted with Superintendent Brandon Smith who recommended a security investigation. *Id.* The envelopes were forwarded to Defendant Goppert for investigation, and Maher contacted Library Services Central Office and was referred to Counsels Office. *Id.* Goppert returned the envelopes the following day, and they were given to Dobbs to return to Plaintiff. *Id.*

Plaintiff filed a grievance against Maher, Dobbs, and the security staff regarding the opening and destruction of his legal mail. *Id.* at ¶ 41 and pp. 53–59.

### C. Retaliation by Donovan and Potter for Plaintiff's Parent's Complaint Call to Defendant Boll, and Plaintiff's Filing of Grievances Against Potter

The late afternoon of May 9, 2013, Plaintiff's parents called Defendant Boll to report that Plaintiff was being harassed by Potter and that the facility had sat on his legal mail for two weeks, knowing that he had a court imposed deadline. (Dkt. No. 24 at ¶ 28.) The next day, Plaintiff's cell was searched by Corrections Officer J. Manchester on the direct order of Defendant Donovan. *Id.* at ¶ 29. Donovan took half of Plaintiff's kosher food and half of his legal mail.[3] *Id.* Plaintiff later received a contraband slip that said "no contraband found no property damaged." *Id.* Donovan told Plaintiff if he received any complaints about the search and had to come back to Plaintiff's unit, "we will take a trip to the Special Housing Unit ("SHU")." *Id.* Plaintiff has alleged that Donovan took his legal mail and kosher food in retaliation for his parents contacting DOCCS and previous grievances filed against Potter. *Id.*

 **\*6** On May 18, 2013, Potter intentionally destroyed the microwave in Plaintiff's housing unit. *Id.* at ¶ 35. While looking directly at Plaintiff and another inmate whose family had contacted Defendants Boll and Haywood, Potter said: "This is what inmates get when they call DOCCS on me!! Make another phone call and I will destroy the T.V. and Hot–Pot!" *Id.* A few minutes later, Potter called his supervisor and told him that the microwave had slipped out of his hands while he was doing a search. *Id.* at ¶ 36. Shortly thereafter, when he let Plaintiff out to report to the law library, Potter allegedly said "I have not forgot about what you did, you will be out of this jail soon when my buddies set your ass up, you bitch!" *Id.* at ¶ 37.

### D. Boll and Haywood

According to Plaintiff, after his parents called the DOCCS Office of Counsel and spoke to Boll, (Dkt. No. 24 at ¶ 28), Boll "apparently ordered more retaliation which is the custom, policy and procedure of [Boll and Defendant Haywood], resulting in Donovan's theft of his legal papers and kosher food and Potter's destruction of the microwave

and threats to destroy the T.V. and hot-pot on May 18, 2013." *Id.* at ¶¶ 29, 35.

Plaintiff filed an Article 78 proceeding against Boll and Acting DOCCS Commissioner Anthony Annucci on or about May 18, 2013, in New York State Supreme Court, Greene County, regarding their refusal to address and investigate the withholding and confiscation and destruction of Plaintiff's legal mail and kosher food simply because his parents had contacted Boll. *Id.* at ¶ 38 and pp. 47–49. In his May 19, 2013, letter memorandum to Boll and Annucci regarding the Article 78 proceeding, Plaintiff accused Boll and Annucci of advising facilities to retaliate against inmates whose parents call DOCCS Office of Counsel to complain. *Id.* at p. 49.

In a July 2, 2013, letter from Boll to Plaintiff in response to his June 11, 2013, correspondence concerning his legal mail being destroyed, Boll informed Plaintiff that a letter written to Office of Counsel does not replace the formal or informal channels of problem resolution at Greene and recommended that Plaintiff use the grievance procedure set forth in DOCCS Directive 4040 for his complaints. *Id.* at pp. 68–69. Boll also informed Plaintiff that the Office of Counsel had investigated his complaints and found no evidence that his mail was being destroyed or that he had been denied access to the law library. Boll elaborated on the findings of the investigation. *Id.*

Plaintiff contends that DOCCS counsel Defendant Haywood conducted an investigation into the actions of Defendants Dobbs, Maher, and Goppert with regard to Plaintiff missing his court deadline. *Id.* at ¶ 42. According to Plaintiff, Haywood admitted to conducting an investigation regarding his letters to her office and responded in a May 22, 2013, letter memorandum asserting that she would not comment on his concerns. *Id.* at ¶ 56. It is unclear whether Haywood's investigation is the investigation referenced in Boll's July 2, 2013, letter.

*\*7* Plaintiff claims that Boll and Haywood are in the habit of using threats and retaliation to frighten inmates whose parents call the Office of Counsel to report prison staff misconduct. *Id.* at ¶ 67. Plaintiff likens Boll and Haywood to "high ranking gang-bangers who put out hits upon prisoners who piss them off," and claims "these reckless defendants have a 100 man 'hit squad' who can retaliated (sic) in a matter of hours." *Id.*

## II. PROCEDURAL HISTORY

Plaintiff commenced this lawsuit in the United States District Court, Western District of New York on June 6, 2013. (Dkt. No. 1.) The action was transferred to the Northern District of New York by order of the Hon. William M. Skretny, Chief District Court Judge in the Western District of New York, on December 13, 2013. (Dkt. No. 8 .)

Plaintiff's application to proceed *in forma pauperis* was granted on February 10, 2014, by the Hon. Mae A. D'Agostino, D.J. (Dkt. No. 11 at 2.) Upon initial review under 28 U.S.C. §§ 1915(e) and 1915A, Plaintiff's Complaint, liberally construed, was found to have asserted claims for: (1) denial of access to the courts in violation of his First Amendment rights and in retaliation for his litigation and complaints; (2) interference with Plaintiff's outgoing legal mail in violation of his First Amendment rights and in retaliation for his litigation and complaints; (3) search of his cell and confiscation of his property in retaliation for his litigation and complaints; and (4) denial of equal protection in violation of his Fourteenth Amendment rights. *Id.* at 6.

Plaintiff's claims for money damages against the Defendants in their official capacities were dismissed with prejudice on initial review by Judge D'Agostino. *Id.* at 8. Plaintiff's equal protection claim was dismissed without prejudice because the claim was entirely conclusory. *Id.* The remainder of Plaintiff's claims against Defendants in their individual capacities survived initial review and were found to require a response. *Id.* at 9.

Plaintiff thereafter moved for leave to file an amended complaint substituting Defendants Donovan and Goppert for Defendants John Doe Number 1 and John Doe Number 2. (Dkt. Nos. 17; 17–1 at 1.) Plaintiff's motion to amend was granted, and Donovan and Goppert were added as party defendants. (Dkt. No. 23 at 3.) Defendants thereafter filed the motion to dismiss now before the Court for review and recommendation. (Dkt. No. 37.)

## III. LEGAL STANDARD GOVERNING RULE 12(b) (6) MOTIONS TO DISMISS

A defendant may move to dismiss a complaint "for failure to state a claim upon which relief can be granted" under Rule 12(b) (6). The motion tests the formal legal

sufficiency of the complaint by determining whether it conforms to Federal Rule of Civil Procedure 8(a)(2), which requires that a complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief." *Bush v. Masiello,* 55 F.R.D. 72, 74 (S.D.N.Y.1972). Satisfaction of the requirement that a plaintiff "show" that he or she is entitled to relief requires that the complaint "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "Determining whether a complaint states a plausible claim for relief ... requires the ... court to draw on its judicial experience and common sense .... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged but it has not shown that the pleader is entitled to relief." *Id.* at 679 (internal citation and punctuation omitted).

**\*8** A complaint may be dismissed pursuant to Rule 12(b)(6) only where it appears that there are not "enough facts to state a claim that is plausible on its face." *Id.* at 570. While Rule 8(a) (2) "does not require detailed factual allegations, ... it demands more than an unadorned, the-defendant-harmed-me-accusation." *Iqbal,* 556 U.S. at 678 (citation and internal quotation marks omitted). A complaint which "tenders 'naked assertion[s]' devoid of 'further factual enhancement' " does not suffice. *Id.* (citation omitted)

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor ." *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678.

In considering a Rule 12(b)(6) motion, "the court considers the complaint, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case." *L–7 Designs, Inc. v. Old Navy, LLC,* 647 F.3d 419, 422 (2d Cir.2011) (citation and internal quotation

marks omitted); *see also Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir.1991) (A court may consider "any written instrument attached [to the complaint] as an exhibit or documents incorporated in it by reference."). "The mandate to read the papers of *pro se* litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual allegations are consistent with the allegations of the Plaintiff's complaint." *Robles v. Bleau,* No. 07–CV–0464, 2008 WL 4693153, at *6 and n. 41, 2008 U.S. Dist. LEXIS 110029, at *26–27 and n. 41 (N.D.N.Y. Oct. 22, 2008)[4] (collecting cases); *Donhauser v. Goord,* 314 F.Supp.2d 119, 121 (N.D.N.Y.2004) (where a *pro se* is faced with a motion to dismiss, a court may consider materials outside of the complaint "to the extent they are consistent with the allegations in the complaint."), *vacated in part on other grounds,* 317 F.Supp.2d 160 (N.D.N.Y.2004); *see also Gil v. Mooney,* 824 F.2d 192, 195 (2d Cir.1987) (in reviewing district court's dismissal of *pro se* plaintiff's claim, Second Circuit considered plaintiff's affidavit submitted in opposition to motion to dismiss). The Court has taken judicial notice of papers filed in other litigation involving Plaintiff and has considered documents in Plaintiff's submissions in opposition to the extent they are consistent with the allegations in Plaintiff's Amended Complaint.

**\*9** Where a party is proceeding *pro se,* the court is obliged to "read [the *pro se* party's] supporting papers liberally, and ... interpret them to raise the strongest arguments that they suggest." *See Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994); *see also Harris v. Mills,* 572 F.3d 66, 72 (2d Cir.2009) (courts remain obligated to construe *pro se* complaints liberally even after *Twombly* ). Where a *pro se* complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) (citation and internal quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco,* 222 F.3d at 112 (citation omitted).

## IV. ANALYSIS

Case 9:17-cv-01158-MAD-DEP    Document 28    Filed 11/02/18    Page 43 of 101
Guillory v. Haywood, Not Reported in F.Supp.3d (2015)
2015 WL 268933

## A. Failure to Exhaust with Regard to Claims Against Defendants Maher, Dobbs, and Goppert

Plaintiff claims that Defendants Maher, Dobbs, and Goppert violated his First, Fifth, Sixth, and Fourteenth Amendment rights by: (1) refusing to send out his amended complaint in *Guillory v. Weber,* thereby denying him access to court; (2) interference with his outgoing legal mail; (3) improperly reading his legal mail; and (4) doing the foregoing in retaliation for grievances and lawsuits filed by him. (Dkt. No. 24 at ¶¶ 48–53, 62.) Defendants seek dismissal of the claims on the grounds that at the time this lawsuit was commenced, Plaintiff had not completed exhaustion of his administrative remedies. (Dkt. No. 37–5 at 9–10.) Plaintiff asserts that he had exhausted his administrative remedies before commencing the action because the Central Office Review Committee ("CORC") failed to decide his appeal in a timely manner. (Dkt. No. 41 at 12–15.) Plaintiff further asserts that because his grievance had been administratively exhausted by the time he filed his Amended Complaint, his commencement of the lawsuit prior to the exhaustion of his administrative remedies should be excused. *Id.* at 12.

Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 ... by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002).

A plaintiff's failure to exhaust administrative remedies is an affirmative defense. *Jones v. Bock,* 549 U.S. 199, 216, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007). Thus, a prisoner has no independent duty to plead facts plausibly suggesting that he exhausted his available administrative remedies in order to state an actionable civil rights claim. *Jones,* 549 U.S. at 211–17. "[T]his is not to say that failure to exhaust cannot be a basis for dismissal for failure to state a claim." *Id.* at 216. If a prisoner chooses to plead facts regarding exhaustion, and those facts show that he failed to exhaust his available administrative remedies, then his complaint may be dismissed for failure to state a claim. [5] *Id.* at 215–16.

**\*10** In order to properly exhaust administrative remedies under the PLRA, inmates are required to complete the administrative review process in accordance with the rules applicable to the particular institution to which they are confined. *Jones,* 549 U.S. at 218 (citing *Woodford v. Ngo,* 548 U.S. 81, 88, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006)). In New York state prisons, DOCCS has a well-established three-step inmate grievance program. N.Y. Comp.Codes R. & Regs. tit. 7, § 701.5 (2013).

Generally, the DOCCS Inmate Grievance Program ("IGP") involves the following procedure for the filing of grievances. First, an inmate must file a complaint with the facility's IGP clerk within twenty-one calendar days of the alleged occurrence. *Id.* at § 701.5(a) (2010). A representative of the facility's inmate grievance resolution committee ("IGRC") has sixteen calendar days from receipt of the grievance to informally resolve the issue. *Id* . at 701.5(b)(1). If there is no such informal resolution, the full IGRC conducts a hearing within sixteen calendar days of receipt of the grievance (*Id.* at § 701.5(b)(2)), and issues a written decision within two working days of the conclusion of the hearing. *Id.* at § 701.5(b)(3).

Second, a grievant may appeal the IGRC decision to the facility's superintendent within seven calendar days of receipt of the IGRC's written decision. *Id.* at 701.5(c)(1). If the grievance involves an institutional issue (as opposed to a DOCCS-wide policy issue), the superintendent must issue a written decision within twenty calendar days of receipt of the grievant's appeal. *Id.* at § 701.5(c)(3) (ii). Grievances regarding DOCCS-wide policy issues are forwarded directly to the central office review committee ("CORC") for a decision under the process applicable to the third step. *Id.* at 701.5(c)(3)(i).

Third, a grievant may appeal to CORC within seven working days of receipt of the superintendent's written decision. *Id.* at 701.5(d)(1)(i). CORC is to render a written decision within thirty calendar days of receipt of the appeal. *Id.* at 701.5(d)(3) (ii).

If a prisoner has failed to properly follow each of the applicable steps prior to commencing litigation, he has failed to exhaust his administrative remedies. *Woodford,* 548 U.S. at 93. Receiving a decision from CORC *after* filing a federal lawsuit does not satisfy the PLRA's requirement that administrative remedies be exhausted

*before* filing suit, and any claim not exhausted prior to commencement of the suit must be dismissed without prejudice. *Neal v. Goord,* 267 F.3d 116, 122–23 (2d Cir.2001), overruled on other grounds by *Porter v. Nussle,* 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002).

Here, Plaintiff filed his original Complaint on June 6, 2013. (Dkt. No. 1.) Plaintiff filed his Amended Complaint on March 27, 2014. (Dkt. No. 24.) Papers related to Plaintiff's grievance against Maher, Dobbs, and unnamed security personnel, are annexed as an exhibit to Plaintiff's Amended Complaint. (Dkt. No. 24, Exh. G. at 53–59.) Plaintiff's Grievance No. GNE–7816–13 naming Maher, Dobbs and security staff involved in holding his legal mail is dated May 20, 2013. *Id.* at 53. The IGRC denied Plaintiff's grievance on June 10, 2013. *Id.* at 55. Plaintiff appealed to the Superintendent on June 11, 2013, *id.,* and the appeal was denied on June 18, 2013. [6] *Id.* at 56. By the time Plaintiff appealed to CORC on June 19, 2013, he had already commenced this action. *Id.* In fact, according to the grievance papers annexed to Plaintiff's Amended Complaint, he commenced this action before the IGRC had denied the grievance. *Id.* at 55. Therefore, the fact that CORC did not decide the appeal until October 16, 2013, *id.* at 57, well beyond the thirty days provided for in § 701.5(d)(3)(ii), does not excuse Plaintiff's failure to exhaust prior to commencement of this action.

**\*11** As noted above, Plaintiff has argued in his opposition that since CORC has now rendered a disposition unfavorable to him, he has properly exhausted. (Dkt. No. 41 at 12.) However, the Second Circuit has held that "[s]ubsequent exhaustion after suit is filed ... is insufficient." *Neal v. Goord,* 267 F.3d 116, 122 (2d Cir.2001), overruled on other grounds, *Nussle* 534 U.S. at 523. While this may not be the most efficient outcome, as noted in *Mendez v. Artuz:*

> [T]he Court of Appeals has ruled that from the broader perspective of Congress and appellate judges, the greater good forbids allowing a case to proceed where administrative remedies have been exhausted while the complaint is pending, and requires in such a case dismissal of the complaint, to be re-filed, if the plaintiff wishes, with the addition of paragraphs explaining

how administrative remedies have been exhausted.

No. 01 CIV. 4157(GEL), 2002 WL 313796, at \*2, 2002 U.S. Dist. LEXIS 3263, at \*4–5 (S.D.N.Y. Feb 27, 2002) (holding that prisoner failed to exhaust administrative remedies when he commenced civil rights action before receiving decision from CORC) (citing *Neal,* 267 F.3d at 123). Furthermore, a post-exhaustion amendment of the complaint cannot cure an exhaustion defect existing at the time the action was commenced. *See Kasiem v. Switz,* 756 F.Supp.2d 570, 575 (S.D.N.Y.2010) (citing *Neal,* 267 F.3d at 122).

Plaintiff's failure to exhaust does not end the review. The Second Circuit has held that a three-part inquiry is appropriate where a prisoner has failed to exhaust his available administrative remedies. *Hemphill v. New York,* 380 F.3d 680, 686, 691 (2d Cir.2004). [7] First, "the court must ask whether [the] administrative remedies [not pursued by the prisoner] were in fact 'available' to the prisoner." *Hemphill,* 380 F.3d at 686 (citation omitted). Second, if those remedies were available, the court should "inquire as to whether [some or all of] the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it ... or whether the defendants' own actions inhibiting the [prisoner's] exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense." *Id.* (citations omitted). Third, if the remedies were available and some of the defendants did not forfeit, and were not estopped from raising, the non-exhaustion defense, "the court should consider whether 'special circumstances' have been plausibly alleged that justify the prisoner's failure to comply with the administrative procedural requirements." *Id.* (citations and internal quotations omitted).

As to the first question, New York's IGP is "recognized as an 'available' remedy for purposes of the PLRA." *Taylor v. Chalom,* No. 9:10 CV 1494 (NAM/DEP), 2011 WL 6942891, at \*4, 2011 U .S. Dist. LEXIS 150512, at \*12 (N.D.N.Y. Dec.13, 2011). The grievance system was also clearly available to Plaintiff, who was in the process of utilizing the IGP at the time he filed his original Complaint. (Dkt. No. 24 at 53–59.)

**\*12** Second, Defendants are not estopped from asserting this defense, inasmuch as Plaintiff has pleaded no facts

indicating Defendants interfered in any way with the grievance process that was ultimately completed. (Dkt. No. 24.)

Third, there are no 'special circumstances' here to excuse Plaintiff's failure to exhaust, because:

> Justification "must be determined by looking at the circumstances which might understandably lead ... uncounselled prisoners to fail to grieve in the normally required way." Generally, the 'special circumstances' doctrine is applied where a prisoner has been threatened with physical retaliation for exhausting administrative remedies or where the prisoner reasonably misinterprets the statutory requirements of the appeals process.

*Ford v. Smith,* No. 9:12 CV 1109 (TJM/TWD), 2014 WL 652933, at *3, 2014 U.S. Dist. LEXIS 20581, at *8–9 (N.D.N.Y. Jan.16, 2014) (citations omitted). While Plaintiff has argued that his administrative remedies were exhausted because his CORC appeal was not decided for four months, that argument does not support a finding of special circumstances, particularly when Plaintiff commenced the action before CORC even received the appeal. Furthermore, although regulations require CORC to respond within thirty days, its failure to do so is not a 'special circumstance' which might defeat an exhaustion defense. *Id.*

In sum, Plaintiff had not yet exhausted all administrative remedies with regard to his claims against Maher, Dobbs, and Goppert at the time he filed this suit, and the Second Circuit's three-part inquiry reveals no justification for his failure to exhaust. Therefore, the Court recommends that Plaintiff's claims against Defendants' Maher, Dobbs, and Goppert be dismissed without prejudice for failure to exhaust administrative remedies. [8]

### B. Plaintiff's First Amendment Claims for Denial of Access to Court Against Defendants Potter and Graziano

Plaintiff claims that Defendants Potter and Graziano, prevented him from mailing a supplemental brief in an Article 78 proceeding transferred to the Third Department in a timely manner by refusing to allow him to go to the law library for necessary copying and notary services. (Dkt. No. 24 at ¶¶ 6, 9, 21 and p. 39.)

The Supreme Court has long held that inmates are guaranteed a right of access to the courts under the First Amendment of the Constitution. *See Lewis v. Casey,* 518 U.S. 343, 350, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996); *Bounds v. Smith,* 430 U.S. 817, 828, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); *see also Washington v. James,* 782 F.2d 1134, 1138 (2d Cir.1986) ("A prisoner has a constitutional right of access to the courts for the purpose of presenting his claims, a right that prison officials cannot unreasonably obstruct and that states have affirmative obligations to assure."). In order to state a claim for denial of access to the courts, a plaintiff must assert non-conclusory allegations demonstrating that the defendant acted deliberately and maliciously. *Lewis,* 518 U.S. at 349, 351; *Gonzales v. Carpenter* No. 9:08–CV–629 (LEK/ATB), 2011 WL 768990, at *7, 2011 U.S. Dist. LEXIS 18806, at *26 (N.D.N.Y. Jan.3, 2011) (Baxter, M.J.). Plaintiff's Amended Complaint, liberally construed, satisfies that requirement.

**\*13** However, Plaintiff must also assert non-conclusory allegations showing that the interference with his right of access to court resulted in actual injury. *Lewis,* 518 U.S. at 348349. To do that, Plaintiff must describe the underlying claim allegedly frustrated by the interference well enough to establish that it is "nonfrivolous" and "arguable" in nature. *Christopher v. Harbury,* 536 U.S. 403, 415–16, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002) (underlying cause of action "is an element that must be described in the complaint."); *Rosario v. Fischer,* No. 11 Civ 4717, 2012 WL 4044901, at *7, 2012 U.S. Dist. LEXIS 133502, at *19–20 (S.D.N.Y. Aug.28, 2012) ("To satisfy the requirement that the underlying claim not be frivolous, a plaintiff must describe the claim well enough for the court to determine whether the claim had an arguable basis in either law or fact."). Plaintiff must set forth sufficient facts to suggest that success on the underlying claim is found on "more than hope." *Christopher,* 536 U.S. at 416.

The only "actual injury" alleged by Plaintiff as a result of Potter and Graziano's alleged refusal to allow him to go to the law library on May 6, 2013, is that he was unable to file his supplemental brief by the deadline imposed by the Third Department. (Dkt. No. 24 at ¶ 44.) Plaintiff's Amended Complaint includes no description of the claim(s) asserted in the Article 78 proceeding, and includes no facts suggesting that the claim(s) were found on "more than hope." *Christopher,* 536 U.S. at 416.

2015 WL 268933

Plaintiff has done nothing more than allege in conclusory fashion that his claim was non-frivolous and that it was frustrated by his inability to mail his supplemental brief in a timely manner. *Id.* A missed deadline, without showing the frustration of a non-frivolous claim as a result, is insufficient to demonstrate actual injury. *See Cisnevas–Garcia v. Shipman,* No. 9:10–CV–179 (FJS/RFT), 2010 WL 5094637, at *1, 2010 U.S. Dist. LEXIS 129657, at *4 (N.D.N.Y. Dec.8, 2010).

In light of the foregoing, the Court recommends that Plaintiff's claims for denial of access to court against Potter and Graziano be dismissed for failure to state a claim. The fact that Plaintiff had already submitted a lengthy legal brief to the Third Department in the Article 78 proceeding (Dkt. No. 39), and the Third Department's confirmation of the DOCCS administrative determination being challenged based upon the evidence in the Article 78 record, *see Guillory v. Fischer,* 111 A.D.3d 1005, 974 N.Y.S.2d 196, render it highly unlikely that given the opportunity to replead Plaintiff will be able to state a denial of access to court claim against Potter and Graziano. Nonetheless, in light of Plaintiff's *pro se* status, the Court recommends that the dismissal be without prejudice, and that Plaintiff be given the opportunity to amend.

### C. Argument for Dismissal of Plaintiff's Law Library Retaliation Claims Against Defendants Potter and Graziano as Duplicative

**\*14** Defendants Potter and Graziano seek dismissal of Plaintiff's retaliation claim arising out of their refusal to allow him to go to the law library on May 6, 2013, on the grounds that the claim is identical to one asserted against Potter in *Guillory v. Morris, et al.,* 13–CV–0378 (NAM/TWD) (*"Morris"* ), presently pending in the Northern District of New York. (Dkt. No. 37–5.)

On September 4, 2013, this Court issued a Text Order in *Morris* allowing Plaintiff to supplement his complaint with a document entitled "Supplemental Harassment by Correction Officer Potter," which asserted claims against Potter for denial of access to court and retaliation arising out of Potter's refusal to allow Plaintiff to go to the law library on May 6, 2013. (*Morris,* Dkt. No. 6.) Pursuant to the Text Order the supplement was added to Plaintiff's complaint and the supplemented pleading was docketed as an amended complaint." (*Morris,* Dkt. No. 15.)

Plaintiff's supplemental claim against Potter was identified as one for denial of access to court and dismissed without prejudice for failure to state a claim in the September 13, 2013, Decision and Order of the Hon. Norman A. Mordue on initial review pursuant to 28 U.S.C. §§ 1915(e) and 1915A. (Dkt. No. 16.) Plaintiff has not filed an amended complaint since the issuance of that Decision and Order. Defendant Potter's Rule 12(b)(6) motion to dismiss Plaintiff's retaliation claims against him was denied by Judge Mordue based upon the recommendation of this Court. (Dkt.Nos.68, 75.)

It is well-settled that a district court, as "part of its general power to administer its docket," has discretion to "stay or dismiss a suit that is duplicative of another federal court suit." *Curtis v. Citibank, N.A.,* 226 F.3d 133, 138 (2d Cir.2000) (citing *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976)). In *Colorado River,* the Supreme Court noted that since "[t]he complex problems that can arise from the multiple federal filings do not lend themselves to a rigid test," *id.,* "no precise rule has evolved" that governs the exercise of that discretion. *Colorado River,* 424 U.S. at 817. Rather, a district court must "consider the equities of the situation when exercising its discretion," *Curtis,* 226 F.3d at 138, "giving regard to conservation of judicial resources and comprehensive disposition of litigation ...." *Kerotest Mfg. Co. v. C–O–Two Fire Equipment Co.,* 342 U.S. 180, 183, 72 S.Ct. 219, 96 L.Ed. 200 (1952).

The Second Circuit has endorsed the principle "that [w]here there are two competing lawsuits, the first suit should have priority, absent the showing of balance of convenience ... or ... special circumstances ... giving priority to the second." *First City Nat'l Bank & Trust Co. v. Simmons,* 878 F.2d 76, 79 (2d Cir.1989). The Court finds that at this point in the litigation, there are special circumstances that militate against dismissing the law library retaliation claims against Potter and Graziano in this case on the grounds that there are competing lawsuits.

**\*15** The retaliation claim in *Morris* is asserted only against Potter. Graziano is not a defendant in *Morris* but is already before the Court as a party defendant in this action. Because the retaliation claims against Potter and Graziano arise out of the same facts and litigation of the claims would likely involve much of the same evidence, conservation of judicial resources and comprehensive

disposition of litigation favors retaining Plaintiff's law library related retaliation claims against both Potter and Graziano in this action. [9]

Conservation of judicial resources and comprehensive disposition of litigation also favor litigation of Plaintiff's law library retaliation claims and denial of access to court claims against Potter and Graziano in the same lawsuit, since both claims arise out of a common nucleus of facts. There is no denial of access to court claim pending against Potter in *Morris* in light of the dismissal of the claim without prejudice on initial review (*Morris,* Dkt. No. 16), and Plaintiff's failure to amend his complaint in an attempt to state a claim. Although the Court is recommending dismissal of Plaintiff's denial of access to court claim against Potter and Graziano for failure to state a claim in this case, the recommendation is that the dismissal be without prejudice. Therefore, the possibility that Plaintiff will be able to amend his denial of access to court claim cannot be ruled out by the Court at this point.

For the foregoing reasons, the Court recommends that Potter and Graziano's motion to dismiss Plaintiff's law library related retaliation claims on the grounds that a duplicative action is pending be denied without prejudice. [10]

### D. Plaintiff's Retaliation Claims Against Potter

Plaintiff claims that Potter refused to allow him to go to the law library on May 6, 2013, in retaliation for grievances and lawsuits filed by Plaintiff. (Dkt. No. 24 at ¶¶ 17, 60.) Plaintiff also claims that Potter destroyed the microwave in his housing unit in retaliation for his parents' call to Boll. *Id.* at ¶¶ 28, 35, 61. Claims of retaliation find their roots in the First Amendment. *See Gill v. Pidlypchak, 389 F.3d 379, 380–81 (2d Cir.2004).* Central to such claims is the notion that in a prison setting, corrections officials may not take actions that would have a chilling effect upon an inmate's exercise of First Amendment rights. *See Pidlypchak, 389 F.3d at 381–83.* Because of the relative ease with which claims of retaliation can be incanted, however, courts have scrutinized such claims with particular care. *See Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir.1983).*

As the Second Circuit has noted,

[t]his is true for several reasons. First, claims of retaliation are difficult to dispose of on the pleadings because they involve questions of intent and are therefore easily fabricated. Second, prisoners' claims of retaliation pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration. This is so because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act.

**\*16** *Dawes v. Walker,* 239 F.3d 489, 491 (2d Cir.2001) (citations omitted), *overruled on other grounds, Swierkiewicz v. Sorema, N.A.,* 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002).

To prevail on a retaliation claim under § 1983, a plaintiff must prove that: (1) the speech or conduct at issue was "protected;" (2) the defendants took "adverse action" against the plaintiff; and (3) there was a causal connection between the protected speech and the adverse action in other words, that the protected conduct was a "substantial or motivating factor" in the defendants' decision to take action against the plaintiff. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Pidlypchak,* 389 F.3d at 380 (citing *Dawes,* 239 F.3d at 492).

Adverse action, used in the prison context, is defined objectively as "retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising ... constitutional rights." *Pidlypchak,* 389 F.3d at 381, 383 (quoting *Davis v. Goord,* 320 F.3d 346, 353 (2d Cir.2003)). "Otherwise the retaliatory act is simply *de minimis* and therefore outside the ambit of constitutional protection." *Dawes,* 239 F.3d at 493. In evaluating what constitutes adverse action for purposes of a retaliation claim, a court should be mindful that "[p]risoners may be required to tolerate more than public employees, who may be required to tolerate more than average citizens, before a [retaliatory] action taken against them is considered adverse." *Id.*

Several factors may be considered in determining whether a causal connection exists between the plaintiff's protected activity and a prison official's actions. *Baskerville v. Blot,* 224 F.Supp.2d 723, 732 (S.D.N.Y.2002) (citing *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995)). Those factors include: (i) the temporal proximity between the protected activity and the alleged retaliatory act; (ii) the inmate's prior good disciplinary record; (iii) vindication at a hearing on the matter; and (iv) statements by the defendant concerning his or her motivation. *Id.* (citing *Colon,* 58 F.3d at 872–73). "The causal connection must be sufficient to support an inference that the protected conduct played a substantial part in the adverse action." *Id.*

### 1. *The Law Library Incident*
In paragraph 17 of his Amended Complaint, Plaintiff has alleged that "Defendant Potter does not enjoy me going to the law library at all since he found out about the litigation that is pending before this Court (which he is also a Defendant in *Guillory v. Cheryl Morris,* 9:13 cv 00378)." (Dkt. No. 24 at ¶ 17.) The original complaint in *Morris* was filed on April 4, 2013. (*Morris,* Dkt. No. 1.) Although Potter was named as a John Doe in Plaintiff's original complaint, it can be inferred from the allegations asserted against defendant Doe, *i.e.,* forcing Plaintiff to have his side locks cut off, *id.* at ¶ 13, that Potter may very well have been recognized as Doe and made aware that the suit had been commenced prior to May 15, 2013, when the complaint was supplemented to substitute his name for John Doe.[11] (*Morris,* Dkt. No. 6.) Plaintiff has also alleged that the retaliation was for his filing a grievance against Potter on April 10, 2013. *Id.* at ¶ 32.

**\*17** The filing of lawsuits is protected conduct for purposes of First Amendment claims. *See Colon,* 58 F.3d at 872 ("Prisoners, like non-prisoners have a constitutional right of access to the courts and to petition the government for redress of grievances.") Furthermore, refusing to allow Plaintiff to go to the law library knowing that it would prevent an inmate from filing papers in a pending lawsuit in a timely manner would arguably deter "a similarly situated individual of ordinary firmness from exercising ... constitutional rights." *Pidlypchak,* 389 F.3d at 381, 383. In addition, the temporal connection between Plaintiff's pending lawsuit against Potter and the April 10, 2013, grievance against Potter, and Potter's refusal to allow Plaintiff to go to the law library, is "sufficient to support an inference that the protected conduct played a substantial part in the adverse action," *see Baskerville,* 224 F.Supp.2d at 732, for purposes of surviving a Rule 12(b)(6) motion.

Therefore, the Court recommends that Potter's motion to dismiss Plaintiff's retaliation claim arising out of his refusal to allow Plaintiff to go to the law library be denied.

### 2. *The Microwave Incident*
In addition to the specific arguments made by Defendants for dismissal of Plaintiff's retaliation claims against Potter and Graziano for not allowing him to go to the law library and the allegedly retaliatory cell search by Donovan, *id.* at 8–10, the Defendants have made a general argument for dismissal of all other retaliation claims that might be asserted in Plaintiff's Amended Complaint. (Dkt. No. 37–5 at 13–15.) Defendants have not identified the specific retaliation claims the argument is intended to address, the defendants involved in each retaliation claim, or specific facts relating to the retaliation claims they seek to have dismissed. *Id.* They have simply argued in conclusory terms that Plaintiff's Amended Complaint fails to include any non-conclusory allegations supporting retaliation and does not allege facts establishing that the Defendants were aware of Plaintiff's grievances and lawsuits at the time of the claimed retaliation, thereby leaving the Court to guess as to particular retaliation claims on which dismissal is sought.[12] *Id.* at 14–15.

Presumably, one of the claims intended to fall within the retaliation argument is Plaintiff's retaliation claim involving Potter's alleged destruction of the microwave in Plaintiff's housing unit, which occurred nine days after Plaintiff's parents called Boll to complain that Plaintiff was being harassed by Potter. (Dkt. No. 24 at ¶¶ 28, 35, 61.) Plaintiff claims that Potter destroyed the microwave while staring at Plaintiff and another inmate whose parents had called DOCCS Office of Counsel, and saying "this is what inmates get when they call DOCCS on me!!" *Id.* at ¶¶ 35. Plaintiff contends that the microwave destruction was in retaliation for the call to Boll and Plaintiff's grievances against Potter, one of which was filed on April 10, 2013. *Id,* at ¶ 32.

**\*18** The filing of a grievance has been found to constitute protected First Amendment conduct for purposes of

a retaliation claim. *See Davis v. Goord,* 320 F.3d 346, 352–53 (2d Cir.2003) (the right to file grievances is a constitutionally protected activity for retaliation purposes). Inmate's verbal complaints to corrections officers and prison officials have also been found to constitute activity protected by the First Amendment. *See, e.g., Monko v. Cusak,* No. 9:11–CV–1218 (GTS/TWD), 2013 WL 5441724, *10, 2013 U.S. Dist. LEXIS 142053, at *23 (N.D.N.Y. Sept.27, 2013); *Brewer v. Kamas,* 533 F.Supp.2d 318, 329 (W.D.N.Y.2008); *Smith v. Woods,* No. 9:03–CV–480, 2006 WL 1133247, at *10, 2006 U.S. Dist. LEXIS at 29745 at *46 (N.D.N.Y. April 24, 2006), *aff'd,* 219 F. App'x 110 (2d Cir.2007).

Plaintiff's parents' call to Boll might arguably be construed as Plaintiff's own conduct for First Amendment protection purposes, since the call was made on Plaintiff's behalf, and it can be inferred at his direction. Defendants do not appear to have argued otherwise in seeking dismissal of Plaintiff's retaliation claims. Moreover, for purposes of this motion, the temporal proximity of the call to Boll and the destruction of the microwave, and Potter's alleged comment connecting the destruction to the call makes a plausible showing of causal connection for purposes of this motion. However, the Court finds that the destruction of the housing unit's microwave does not constitute adverse action "retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising ... constitutional rights" for purposes of stating a retaliation claim. *Pidlypchak,* 389 F.3d at 381, 383. Rather, as pleaded by Plaintiff, the destruction of the microwave was *de minimis.*

Plaintiff has alleged that corrections officers like to destroy microwaves because inmates use them to heat chicken purchased from the commissary. *Id.* at ¶ 38. However, Plaintiff's Amended Complaint contains no factual allegations regarding his personal use of the housing unit microwave or the impact of its destruction on him that would suggest the impact was more than *de minimis.* Furthermore, the Amended Complaint is devoid of allegations regarding the period of time the housing unit was without a microwave, although given Plaintiff's allegation that Potter contacted administration about the broken microwave and indicated he had dropped it, one could infer that it was likely replaced. *Id.* at ¶ 36.

Given Plaintiff's failure to make a plausible showing that the destruction of the microwave constituted adverse

action for purposes of his retaliation claim against Potter, the Court recommends that the claim be dismissed for failure to state a claim. The Court further recommends that Plaintiff be granted leave to amend his claim in the unlikely event he can plead facts showing the impact of the destruction of the microwave was sufficiently severe so as to deter a "similarly situated individual of ordinary firmness from exercising ... constitutional rights." *Pidlypchak,* 389 F.3d at 381, 383.

### E. Claims Against Graziano

#### 1. Retaliation

**\*19** According to Plaintiff, he made Graziano aware of his court imposed deadline and of Potter's refusal to allow him to go to the law library when he came to Plaintiff's housing unit in the early afternoon of May 6, 2013. (Dkt. No. 24 at ¶ 10.) Graziano did not intervene on Plaintiff's behalf but did tell him he would look into it. *Id.* at ¶ 11. Plaintiff claims that instead, Graziano brushed him off. *Id.* at ¶ 17.

Plaintiff has not identified any First Amendment protected conduct engaged in by him for which Graziano might retaliate. Nor are there any other allegations in the Amended Complaint that make a plausible showing that Graziano's failure to intervene on Plaintiff's behalf and alleged failure to look into the law library matter were in retaliation for Plaintiff's First Amendment protected conduct. Therefore, the Court recommends dismissal of Plaintiff's retaliation claim against Graziano for failure to state a claim and further recommends that in light of Plaintiff's *pro se* status he be granted leave to amend.

#### 2. Supervisory Liability

Plaintiff has alleged that Graziano knew Potter was violating his constitutional rights and did nothing about it. *Id.* at ¶ 64. Plaintiff describes Graziano's conduct as "the same type of liability that is addressed when a supervisor knew of the subordinate's past misconduct (prior grievances against Defendant Potter, beat ups by Defendant Potter, Set-ups by Defendant Potter), [and] failed to set up policies that help guide subordinate's conduct so that the violations of constitutional rights does (sic) not continue to occur, failed to inform and train staff (Defendants Potter, Goppert, Donovan, Defendant Dobbs and Maher) on policies designed to avoid the deprivations of constitutional rights; and failed

to supervise the said defendants to ensure that they follow policies that are created to protect the said constitutional rights." *Id.*

Those factual allegations suggest an attempt by Plaintiff to assert a claim against Graziano for supervisory liability. The law is clear that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977). "Because vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal,* 556 U.S. at 676. ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior.*" ). "Holding a position in a hierarchical chain of command, without more, is insufficient to support a showing of personal involvement." *Groves v. Davis,* No. 9:11–CV–1317 (GTS/RFT), 2012 WL 651919, at *6, 2012 U.S. Dist. LEXIS 25367, at *22–23 (N.D.N.Y. Feb.28, 2012) (citing *McKinnon,* 568 F.2d at 934); *see also Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir.2003) (a "mere 'linkage in the prison chain of command' is insufficient to implicate a state commissioner of corrections ... in a § 1983 claim") (quoting *Ayers v. Coughlin,* 780 F.2d 205, 210 (2d Cir.1985)). Therefore, "a plaintiff must ... allege a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir.1986).

*20 The Second Circuit has held that personal involvement by a supervisor necessary to state a claim under § 1983 may be found where: "(1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring." *Colon,* 58 F.3d at 873. [13]

The only factual allegations showing direct participation by Graziano in the violation of Plaintiff's constitutional rights are those related to Plaintiff's denial of access to court claim against him, which the Court has recommended be dismissed for failure to state a claim. Vague and conclusory claims that Graziano, as a supervisory official, has failed to provide proper training and supervision or created a policy, without facts showing personal involvement, are legally insufficient to state a claim under any of the categories identified in *Colon. See Bridgewater v. Taylor,* 832 F.Supp.2d 337, 348 (S.D.N.Y.2011); *White v. Fischer,* No. 9:09–CV–240 (DNH/DEP), 2010 WL 624081, at *6, 2010 U.S. Dist. LEXIS 15492, at *19 (N.D.N.Y. Feb.18, 2010) ("Vague and conclusory allegations that a supervisor has failed to train or properly monitor the actions of subordinate employees will not suffice to establish the requisite personal involvement and support a finding of liability."); *see also Pettus v. Morgenthau,* 554 F.3d 293, 300 (2d Cir.2009) (same).

Given the conclusory nature of Plaintiff's supervisory liability claim against Graziano, the Court recommends dismissal for failure to state a claim, with leave to amend granted in deference to Plaintiff's *pro se* status.

### F. Retaliation Claim Against Donovan

According to Plaintiff, the day after Plaintiffs' parents called Boll to complain about Potter and the holding of his legal mail, Defendant Donovan directed a corrections officer to conduct a search of Plaintiff's cell and took either half or all of Plaintiff's legal documents and food. (Dkt. No. 24 at ¶¶ 29, 32.) Plaintiff claims that the cell search and taking of his property were in retaliation for the call to Boll as well as Plaintiff's filing of grievances against Potter. *Id.* at ¶ 32. In his opposition to Defendants' motion to dismiss, Plaintiff has clarified that he is not asserting a property deprivation claim under the Fourth or Fourteenth Amendments, but rather is specifically asserting a retaliation claim, and the Court has taken Plaintiff at his word. [14] (Dkt. No. 41 at 17.)

As noted above, an inmate's verbal complaints to corrections officers and prison officials have been found to constitute activity protected by the First Amendment. Although Plaintiff has not alleged facts showing that Donovan was aware of his parents' call to Boll, given that the search and confiscation of Plaintiff's property took

2015 WL 268933

place only one day after his parents' telephone call to Boll, the Court finds that Plaintiff has made a sufficient showing that there may have been a causal connection for purposes of this motion to dismiss.

**\*21** As to the adverse action requirement, the Supreme Court has held that "prisoners have no legitimate expectation of privacy." *Hudson v. Palmer,* 468 U.S. 517, 530, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). As a result, many of the district courts in the Second Circuit have found that cell searches, even if conducted for retaliatory reasons, cannot constitute an adverse action for purposes of a retaliation claim. *See, e.g., Yofelfang v. Capra,* 889 F.Supp.2d 489, 509 (S.D.N.Y.2012) ("inmate has no right to be free from searches of any kind, including those alleged to be retaliatory.") (quoting *Rodriguez v. McClenning,* 399 F.Supp.2d 228, 239 (S.D.N.Y.2005)) (internal quotation marks omitted). Even though district courts have found that cell searches alone are not actionable under § 1983, even if retaliatory, allegations that a defendant confiscated personal property and/or legal papers during the course of a cell search have been found sufficient to deter an inmate of ordinary firmness from exercising his constitutional rights. *See, e.g., Amaker v. Fischer,* No. 10–CV–0977A, 2014 WL 4772202, at \*10, 2014 U.S. Dist. LEXIS 136117, at \*22 (W.D.N.Y. Sept.27, 2014); *Phelan v. Hersh,* No. 10–CV–0011 (GLS/RFT), 2011 WL 6031940, at \*6, 2011 U.S. Dist. LEXIS 4252 (N.D.N.Y. Sept.13, 2011).

Based upon the foregoing, the Court finds that Plaintiff's allegations that Donovan confiscated his legal documents and kosher food during a cell search in retaliation for Plaintiff's parents' complaints to Boll the day before states a plausible claim for retaliation and recommends denial of Donovan's motion to dismiss Plaintiff's retaliation claim against him.

### G. Supervisory Liability Claims Against Boll and Haywood

Defendants Boll and Haywood seek dismissal of Plaintiff's Amended Complaint on the grounds that he has failed to allege facts showing the personal involvement necessary for supervisory liability. (Dkt. 37–5 at 12–16.) Plaintiff has alleged that Boll and Haywood, "after learning of the violations of [his] constitutional rights failed to remedy the wrong (Supra at 28); created a custom and policy under which [his] constitutional rights were violated (Supra at 29–30, 35, 38, 42–43); and, was (sic) grossly negligent in

that they failed to adequately supervise the subordinates whom (sic) also violated my said rights." [15] (Dkt. No. 24 at ¶ 54.) According to Plaintiff, Boll and Haywood learned of the violation of his constitutional rights through several letters written to their office, Plaintiff's parents' telephone conversation with Boll, Plaintiff's pending lawsuit against Potter and other pending lawsuits, and several grievances filed by Plaintiff. *Id.* at ¶ 55.

"[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Smith v. Local 819 I.B.T. Pension Plan,* 291 F.3d 236, 240 (2d Cir.2002) (citation and internal quotation marks omitted). Conclusory allegations that a supervisory official was aware of alleged constitutional violations and failed to remedy them fail to state a claim for supervisory liability. [16] *See Carter v. Artuz,* No. 95CIV2362CSHKNF, 95CIV4785CSHKNF, 1999 WL 350868, at \*4, 1999 U.S. Dist. LEXIS 8338, at \*11 (S.D.N.Y. June 1, 1999). Furthermore, Plaintiff's wholly conclusory claims that Boll and Haywood, as a supervisory officials, created a custom and policy under which Plaintiff's constitutional rights were violated, are legally insufficient to state a claim under any of the categories identified in *Colon. See Koehl v. Bernstein,* No. 10 Civ. 3808(SHS)(GWG), 2011 WL 2436817, at \*19, 2011 U.S. Dist. LEXIS 64466, at \*56 (S.D.N.Y. June 17, 2011) ("While personal involvement of a supervisor may be established by showing that [she or] he created a policy or custom under which the violation occurred ..., conclusory allegations that a defendant was involved in the creation and enforcement of unconstitutional policies cannot sustain a claim of personal involvement.") (internal citations omitted). Likewise, conclusory allegations that a supervisory official has failed to train or properly monitor the actions of subordinate employees do not suffice to establish the requisite personal involvement for a supervisory liability claim. *See Pettus,* 554 F.3d at 300; *Bridgewater,* 832 F.Supp. at 348; *White,* 2010 WL 624081, at \*6.

#### 1. *Haywood*

**\*22** In addition to the conclusory assertions that fail to state a claim, Plaintiff has alleged that Haywood conducted an investigation into the actions of Dobbs, Maher, and Goppert in withholding his amended complaint from the mail and: (1) stated in a letter to Plaintiff (not included as an exhibit to the Amended

Case 9:17-cv-01158-MAD-DEP   Document 28   Filed 11/02/18   Page 52 of 101
Guillory v. Haywood, Not Reported in F.Supp.3d (2015)
2015 WL 268933

Complaint) that she would not comment on Plaintiff's concerns; (2) and when Plaintiff returned Haywood's letter with a demand that she amend it consistent with his demand that an additional investigation be conducted, she refused to accede to the demand. *Id.* at ¶¶ 42–43, 56. Plaintiff also claims that Haywood failed to act on Maher, Dobbs, and Goppert's retaliatory conduct in withholding his mail when she learned of it. *Id.* at ¶¶ 42–43.

Plaintiff has acknowledged that Haywood conducted an investigation of Maher, Dobbs, and Goppert's conduct with regard to the missed filing deadline. *Id.* at ¶ 42. However, his Amended Complaint does not include allegations showing the facts and circumstances surrounding the investigation by Haywood, i.e., whether it was undertaken in response to his direct complaints to her or as a part of her designated duties in the Office of Counsel. Although Plaintiff has included numerous exhibits as a part of his Amended Complaint, he has neither included the letter from Haywood in which she allegedly refused to comment on his complaint, nor has he alleged any specific detail as to its content.

Plaintiff has not alleged facts showing that there was any action Haywood could have taken to remedy the missed filing deadline for the amended complaint by the time she became aware of it. *See Bridgewater,* 832 F.Supp.2d at 348. Plaintiff has not alleged that he attempted to remedy his inability to file the amended complaint in a timely manner by seeking an extension with the district court on the grounds that his amended complaint had been held for a security review. *See Waters v. Sunshine,* No. 07 Civ. 4753(DLI)(LB), 2009 WL 750217, at *6, 2009 U.S. Dist. LEXIS 22445, at *16–19 (E.D.N.Y. Mar. 19, 2009) (plaintiff has not suffered a constitutional deprivation of access to court if he has other avenues available to bring his claims before the court).

Furthermore, a complaint that fails to state a claim for the underlying unlawful conduct also fails to state a claim against supervisory officials with respect thereto. *Delaney v. Zaki,* No. 9:13–CV–0648 (DNH/TWD), 2014 WL 4966914, at *8, 2014 U.S. Dist. LEXIS 137611, at *17 (N.D.N.Y. Sept.2, 2014) (citing *Alston v. Bendheim,* 672 F.Supp.2d 378, 388–89 (S.D.N.Y.2009); *Clarke v. Sweeney,* 312 F.Supp.2d 277, 298 (D.Conn.2004) ("As there was no underlying deprivation of constitutional rights, accordingly, there can be no supervisory liability ....").

Plaintiff has failed to state a claim for denial of access to court against Maher, Dobbs, and Goppert and, therefore, has failed to state a supervisory liability claim in connection therewith. Plaintiff has failed to alleged facts plausibly showing that his underlying claim for denial of access to court in the federal court action was non-frivolous in nature. His only claimed injury is his inability to file the amended complaint in a timely manner. *See Lewis,* 518 U.S. at 348–349. Furthermore, Plaintiff has failed to describe the underlying claims in his Amended Complaint well enough for the court to determine whether they have any arguable basis in fact or law. *See Christopher,* 536 U.S. at 415–16. In fact, he has not described the claims at all.

**\*23** Plaintiff has likewise failed to state a claim against Maher, Dobbs, and Goppert for interference with legal mail in that as with his claim for denial of access to court, he has failed to allege "actual injury" to a non-frivolous claim. *See Davis,* 320 F.3d at 351 (to state a claim for denial of access to court based upon interference with legal mail, a plaintiff must allege that the interference hindered efforts to pursue a legal claim, i.e., caused actual injury such as the dismissal of an otherwise meritorious claim). While Plaintiff contends that Maher, Dobbs, and Goppert violated his constitutional rights by opening his legal mail outside of his presence, an isolated instance of mail tampering is generally insufficient to establish a constitutional violation. *See Davis,* 320 F.3d at 351. Rather, an inmate must show that prison officials "regularly and unjustifiably interfered with incoming mail." *Id.* (citation and internal quotation marks omitted).

Nor has Plaintiff stated a claim for retaliation against Maher, Dobbs, and Goppert. Plaintiff has alleged in conclusory fashion that the failure to send out his amended complaint was in retaliation for unspecified grievances and lawsuits he had filed against the facility. *Id.* at ¶ 62. "[A] complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone." *Flaherty,* 713 F.2d at 13. Therefore, Plaintiff cannot be found to have stated a supervisory liability claim against Haywood for failure to take action with respect to Maher, Dobbs, and Goppert's alleged retaliation. *See Delaney,* 2014 WL 4966914, at *8.

Given the conclusory nature of Plaintiff's failure to remedy, custom and policy, and failure to properly

train and monitor subordinates claims against Haywood, the Court recommends that those supervisory claims be dismissed without prejudice. In addition, given Plaintiff's failure to state claims against Haywood for allegedly refusing to accede to his demand for an additional investigation of the withholding of his amended complaint, and failing to take action with respect to Maher, Dobbs, and Goppert's allegedly retaliatory conduct, the Court recommends that Plaintiff's those claims against Haywood be dismissed without prejudice.

### 2. *Boll*

Plaintiff has alleged generally that Boll learned of the violation of his constitutional rights through several letters written to the Office of Counsel, Plaintiff's parents' telephone conversation with Boll, Plaintiff's pending lawsuit against Potter and other pending lawsuits, and several grievances filed by Plaintiff. *Id.* at ¶ 55. However, the only communications specifically identified by Plaintiff are the phone call from Plaintiff's parents on May 9, 2013, and a June 11, 2013, letter from Plaintiff regarding the withholding of his amended complaint from the mail, to which Boll responded on July 2, 2013 (Dkt. No. 24 at 68). Furthermore, Plaintiff has failed to allege facts identifying the grievances, and lawsuits from which Boll allegedly learned of the violations of his constitutional rights and facts from which her awareness can be inferred. [17]

**\*24** Plaintiff has alleged that the subject matter of his parents' May 9, 2013, telephone call with Boll included harassment by Potter and the withholding of his amended complaint by Maher, Dobbs and Goppert. *Id.* at ¶ 28. Plaintiff has failed to describe the specific harassing conduct by Potter that was complained of by his parents in their call with Boll. [18] However, given the temporal proximity between Potter's refusal on May 6, 2013, to allow Plaintiff to go to the law library for copying and notary services necessary to mail out his brief in a timely manner, the Court can infer that incident was raised in the May 9, 2013, telephone conversation. *Id.* at ¶¶ 6–7, 28.

Even if complaints were made to Boll concerning the May 6, 2013, law library incident and the withholding of the amended complaint, Plaintiff has failed to state a supervisory liability claim against her with respect to his denial of access to court claim. As with his claim regarding the amended complaint withheld from mailing, [19] the

only injury alleged by Plaintiff with regard to the May 6, 2013, law library incident was his failure file his supplemental brief in a timely manner. Furthermore, as noted above, Plaintiff's Amended Complaint does not describe the underlying claims in his Article 78 proceeding as required to state a claim for denial of access to court and interference with legal mail. *See Christopher,* 536 U.S. at 415–16; *Davis,* 320 F.3d at 351. Therefore, the Court finds that Plaintiff has failed to state a supervisory liability claim against Boll with regard to his denial of access to court arising out of the May 6, 2013, law library incident and the withholding of his amended complaint from the mail.

The Court has concluded that Plaintiff has stated a claim for retaliation against Potter with regard to the May 6, 2013, law library incident. In addition, the Court has inferred that the May 6, 2013, incident was raised by Plaintiff's parents in their May 9, 2013, telephone conversation with Boll. It also appears, given Boll's reference in her July 2, 2013, to a claim by Plaintiff in his June 11, 2013, letter to Boll concerning denial of access to the law library, that Boll had been made aware of and investigated the incident and found Plaintiff had not been denied access to the law library. (Dkt. No. 254 at 68.) Reading the allegations in the Amended Complaint liberally, as it must do, and construing all reasonable inferences in Plaintiff's favor, the Court finds that Plaintiff has stated a supervisory liability claim against Boll with regard to Plaintiff's retaliation claim against Potter in connection with the May 6, 2013, law library incident.

In light of the foregoing, the Court recommends that Plaintiff's conclusory failure to remedy, custom and policy, and failure to properly train and monitor subordinates claims against Boll, as well as supervisory liability claims with regard to Plaintiff's denial of access to court, interference with mail, and improper opening of mail claims be dismissed without prejudice. The Court recommends that Boll's motion to dismiss be denied as to Plaintiff's supervisory liability claim against her with respect to Potter's alleged retaliation in connection with the May 6, 2013, law library incident.

### H. Retaliation Claims Against Boll and Haywood

**\*25** Plaintiff has alleged in wholly conclusory terms that Boll and Haywood had a custom, policy and practice of ordering retaliation against inmates whose parents called the DOCCS Office of Counsel on behalf

of their children. (Dkt. No. 24 at ¶ 29.) Wholly conclusory claims of retaliation "can be dismissed on the pleadings alone." *Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996). Therefore, the Court recommends that Plaintiff's retaliation claims against Boll and Haywood be dismissed without prejudice.

**ACCORDINGLY,** it is hereby

**RECOMMENDED,** that Defendants' motion to dismiss Plaintiff's Amended Complaint pursuant to Rule 12(b)(6) (Dkt. No. 37) be **GRANTED** in part and **DENIED** in part; and it is further

**RECOMMENDED,** that Defendant Potter and Graziano's motion to dismiss Plaintiff's retaliation claims against them arising out of the May 6, 2013, law library incident, on the grounds that the claim is duplicative of a claim being asserted against Potter in *Guillory v. Morris,* 9:13–CV–0378 (NAM/TWD) (N.D.N.Y.) be denied without prejudice; and it is further

**RECOMMENDED,** that Plaintiff's Amended Complaint **BE DISMISSED WITHOUT PREJUDICE** as to the following claims: (1) First Amendment denial of access to courts, interference with legal mail, improper opening of legal mail, and retaliation claims against Defendants Maher, Dobbs, and Goppert for failure to exhaust; (2) First Amendment denial of access to courts claim against Defendants Potter and Graziano for failure to state a claim; (3) First Amendment retaliation claim against Defendant Potter arising out of the destruction of the microwave oven in Plaintiff's housing unit; (4) First Amendment claim for retaliation against Defendant Graziano for failure to state a claim; (5) supervisory liability claim against Defendant Graziano for failure to state a claim; (6) supervisory liability claims against Defendant Haywood for failure to state a claim; (7) supervisory liability claims against Defendant Boll for generally failing to remedy wrongs, creating and allowing to continue customs and policies under which under which constitutional practices occur, and failure to supervise and monitor subordinates for failure to state a claim; (8) supervisory liability claim against Defendant Boll in connection with Plaintiff's denial of access to court claims against Defendants Potter and Graziano relating to the

May 6, 2013, law library incident for failure to state a claim; (9) supervisory liability claim against Defendant Boll with regard to Plaintiff's denial of access to court, interference with legal mail, and improper opening of legal mail claims against Defendants Maher, Dobbs, and Goppert in connection with the amended complaint withheld from mailing to the court, for failure to state a claim; and (10) retaliation claims against Haywood and Boll for failure to state a claim; and it is further

**RECOMMENDED,** that Plaintiff be granted leave to amend with regard to all of the claims dismissed without prejudice for failure to exhaust administrative remedies and/or for failure to state a claim; and it is further

**\*26 RECOMMENDED,** that Defendants' motion to dismiss for failure to state a claim be denied as to the following claims: (1) Plaintiff's retaliation claim against Defendant Potter arising out of the May 6, 2013, law library incident; (2) Plaintiff's retaliation claim against Defendant Donovan with regard to taking Plaintiff's legal papers and kosher food; and (3) Plaintiff's supervisory liability claim against Defendant Boll with regard to Plaintiff's retaliation claim against Potter with regard to the May 6, 2013, law library incident; and it is hereby

**ORDERED,** that the Clerk provide Plaintiff with copies of all unpublished decisions cited herein in accordance with *Lebron v. Sanders,* 557 F.3d 76 (2d Cir.2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993) (citing *Small v. Sec'y of Health and Human Servs.,* 892 F.2d 15 (2d Cir.1989) (per curiam)); 28 U.S.C. § 636(b)(1) (Supp.2013); Fed.R.Civ.P. 72, 6(a).

Filed Dec. 11, 2014.

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 268933

Footnotes

2015 WL 268933

1    On January 9, 2015, the Court received a submission entitled "Plaintiff's Letter Motion to Correct the Record and Response to Magistrate Judge Dancks' December 11, 2014 Report and Recommendation ." Dkt. No. 49. In the submission, Plaintiff states that he is "not filing any objections to [the Order and Report–Recommendation]," but then states that he finds it necessary to "clarify a few facts in the interest of justice." *Id.* at 2–3. The Court has reviewed this document and has taken into consideration the clarifications that Plaintiff has provided.

1    The Background is taken from the allegations in Plaintiff's Amended Complaint, along with documents the Court may properly consider on a Rule 12(b)(6) motion to dismiss.

2    The sole respondent in the Article 78 proceeding was former DOCCS Commissioner, Brian Fischer. *See Guillory v. Fischer,* 111 A.D.3d 1005, 974 N.Y.S.2d 196 (3d Dep't 2013); *see also* Dkt. No. 37–4.

3    In Paragraph 29 of his Amended Complaint, Plaintiff has alleged that Donovan took half of his legal mail and half of his kosher food on May 10, 2013. (Dkt. No. 24. at ¶ 29.) In Paragraph 32, Plaintiff has alleged that on May 10, 2013, Donovan took all of his legal mail and kosher food. *Id.* at ¶ 32.

4    The Court will provide Plaintiff with copies of all unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders,* 557 F.3d 76 (2d Cir.2009) (per curiam). [Editor's note: Copies of unpublished decisions deleted for Westlaw purposes.]

5    "If nonexhaustion is clear from the face of the complaint (and incorporated documents) a motion to dismiss pursuant to Rule 12(b) (6) for failure to exhaust should be granted." *Fuentes v. Furco,* No. 13–CV–6846, 2014 WL 4792110, at *1, 2014 U.S. Dist. LEXIS 136261, at *2 (S.D.N.Y. Sept.25, 2014) (Nathan, D.J.) (quoting *McCoy v. Goord,* 255 F.Supp.2d 233, 251 (S.D.N.Y.2003)).

6    The Superintendent's determination is erroneously dated June 18, 2014. (Dkt. No. 24 at 56.) It is clear given Plaintiff's June 19, 2013 appeal to CORC that the Superintendent's determination was made on June 18, 2013. *Id.*

7    The Second Circuit has not yet decided whether the *Hemphill* rule has survived the Supreme Court's decision in *Woodford,* 548 U.S. 81, 126 S.Ct. 2378, 165 L.Ed.2d 368. *See Amador v. Andrews,* 655 F.3d 89, 102 (2d Cir.2011).

8    In addition to seeking dismissal for failure to exhaust, Goppert asks that the Amended Complaint be dismissed as against him on the grounds that there are no factual allegations suggesting his involvement in the decision to hold or investigate Plaintiff's mail and no involvement by him in denying Plaintiff access to court. (Dkt. No. 37–5 at 20.) The same could be said of Dobbs, who is alleged to have done nothing more than meet with Plaintiff to return his legal mail after the investigation at Maher's direction. Because the Court is recommending dismissal for failure to exhaust, it makes no determination as to whether Plaintiff has stated a claim against Goppert or Dobbs but does note that in the event Plaintiff amends to reassert his claims against Goppert and Dobbs as they are alleged in the Amended Complaint, the Court will almost certainly recommend dismissal for failure to state a claim.

9    For reasons discussed below, the Court is recommending dismissal without prejudice of Plaintiff's retaliation claim against Graziano for failure to state a claim. If the recommendation is accepted by the District Court, the possibility that Plaintiff will be able successfully amend his claim against Graziano cannot be completely ruled out at present.

10   Presumably, Potter is free to move to dismiss Plaintiff's retaliation claim in *Morris* on the grounds that the same claim has been asserted in this action.

11   Plaintiff has also alleged that Potter refused to allow him to go to the law library in retaliation for informing Graziano about the refusal. *Id.* at 60. Since Plaintiff did not tell Graziano until after Potter had refused to allow him to go to the law library, the facts do not support a retaliation claim based upon Plaintiff's disclosure to Graziano. Furthermore, Plaintiff's conclusory assertion that Potter was retaliating against him for bringing lawsuits against the facility does not support a retaliation claim. *See Friedl v. City of New York,* 210 F.3d 79, 85 (2d Cir.2000) (Claims of retaliation must be "supported by specific and detailed factual allegations" and not stated "in wholly conclusory terms.") (quoting *Flaherty,* 713 F.2d at 13).

12   Defendants' reliance upon a general argument for dismissal of Plaintiff's unspecified retaliation claims is to some degree understandable given the random, disorganized, and largely conclusory nature of much of Plaintiff's Amended Complaint.

13   The Second Circuit has expressly declined to determine whether *Iqbal* eliminated any of the *Colon* bases for liability. *See Grullon v. City of New Haven,* 720 F.3d 133, 139 (2d Cir.2013).

14   The Second Circuit has, in any event, held that "confiscation ... [does] not constitute a Fourteenth Amendment violation for loss of property because of the availability of post-deprivation remedies" in the New York Court of Claims." *Koehl v. Dalsheim,* 85 F.3d 86, 88 (2d Cir.1996).

15   Paragraph 8 of Plaintiff's Amended Complaint, cited in Plaintiff's supervisory liability claim, references his parents' telephone call to Boll on May 9, 2013. *Id.* at ¶ 28. Paragraph 29 (Paragraph 30 is void) deals with the cell search and Donovan taking Plaintiff's legal mail and kosher food. *Id.* at ¶¶ 29–30. Paragraph 35 contains allegations regarding the destruction of the microwave by Potter. *Id.* at ¶ 35. Paragraph 38 references Plaintiff's Article 78 proceeding against Boll

2015 WL 268933

for failing to stop the unspecified reckless retaliation, despite knowledge of the facts; refusal to address the destruction of Plaintiff's legal papers and confiscation of his kosher food in retaliation for his parent's contacting Boll; and destruction of the microwave by Potter. *Id.* at ¶ 38. Paragraphs 42 and 43 allege Haywood's refusal to comment on the findings of her investigation of Dobbs, Maher, and Goppert regarding Plaintiff's missed court deadline, and refusal to do anything after learning of the retaliation by Maher, Dobbs, Goppert, and Donovan. *Id.* at ¶¶ 42–43.

16  District courts in the Second Circuit have held that supervisory liability for failure to remedy constitutional violations after learning of them applies only to ongoing violations, not those which can no longer be remedied. *See, e.g., Bridgewater,* 832 F.Supp.2d at 348 (citing *Odom v. Calero,* No. 06 Civ. 15527(LAK)(GWG), 2008 WL 2735868, at *7, 2008 U.S. Dist. LEXIS 52408, at *18 (S.D.N.Y. July 10, 2008)).

17  Plaintiff's parents' call to Boll occurred prior to Donovan's alleged taking of Plaintiff's legal papers and kosher food (May 10, 2013) and Potter's alleged breaking of the microwave (May 18, 2013). (Dkt. No. 24 at ¶¶ 29, 35.) Therefore, the call cannot be found to have placed Boll on notice of those incidents.

18  It is well-established that verbal harassment alone is insufficient to support a constitutional claim. *See Feldman v. Lyons,* 852 F.Supp.2d 274, 280 (N.D.N.Y.2012).

19  The Court's analysis of Plaintiff's supervisory liability claim against Haywood relating to the withholding of Plaintiff's amended complaint from the mail applies to the same claim against Boll.

---

**End of Document**                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2018 WL 3730175
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Javon HIGH, Plaintiff,
v.
PA SWITZ, et al., Defendants.

9:17-CV-1067 (LEK/DJS)
|
Signed 08/06/2018

**Attorneys and Law Firms**

Javon High, Long Island City, NY, pro se.

Erik Boule Pinsonnault, Katie E. Valder, New York State
Attorney General, Albany, NY, for Defendants.

### ORDER

Lawrence E. kahn, U.S. District Judge

### I. INTRODUCTION

**\*1** This matter comes before the Court following a
report-recommendation filed on July 6, 2018, by the
Honorable Daniel J. Stewart, U.S. Magistrate Judge,
pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3. Dkt.
No. 24 ("Report-Recommendation"). Defendant timely
objected to the Report-Recommendation. Dkt. No. 23
("Objection").

### II. LEGAL STANDARD

Within fourteen days after a party has been served with
a copy of a magistrate judge's report-recommendation,
the party "may serve and file specific, written objections
to the proposed findings and recommendations." Fed. R.
Civ. P. 72(b); L.R. 72.1(c). If no objections are made, or
if an objection is general, conclusory, perfunctory, or a
mere reiteration of an argument made to the magistrate
judge, a district court need review that aspect of a report-
recommendation only for clear error. Barnes v. Prack,
No. 11-CV-857, 2013 WL 1121353, at \*1 (N.D.N.Y. Mar.
18, 2013); Farid v. Bouey, 554 F. Supp. 2d 301, 306–07,
306 n.2 (N.D.N.Y. 2008), abrogated on other grounds
by Widomski v. State Univ. of N.Y. at Orange, 748
F.3d 471 (2d Cir. 2014); see also Machicote v. Ercole,
No. 06-CV-13320, 2011 WL 3809920, at \*2 (S.D.N.Y.

Aug. 25, 2011) ("[E]ven a *pro se* party's objections to a
Report and Recommendation must be specific and clearly
aimed at particular findings in the magistrate's proposal,
such that no party be allowed a second bite at the apple
by simply relitigating a prior argument."). "A [district]
judge ... may accept, reject, or modify, in whole or in part,
the findings or recommendations made by the magistrate
judge." § 636(b). Otherwise, a court "shall make a de novo
determination of those portions of the report or specified
proposed findings or recommendations to which objection
is made." Id.

### III. DISCUSSION

The Report-Recommendation analyzed whether Plaintiff
failed to exhaust his administrative remedies as required
under the Prisoner Litigation Reform Act ("PLRA"). R.
& R. at 6–12. Judge Hummel concluded that, although
Plaintiff failed to exhaust his administrative remedies, this
failure was excused because the Central Office Review
Committee ("CORC") of the New York Department of
Corrections and Supervision ("DOCCS") substantially
delayed in responding to Plaintiff's appeal of his prison
superintendent's denial of his grievance. Id.

Defendant objects to the Report-Recommendation,
asserting that CORC's delayed response to Plaintiff's
grievance did not excuse his failure to exhaust
administrative remedies. Obj. at 1. [1] However, Defendant
raised this argument in its memorandum in support of its
motion to dismiss, Dkt. No. 13-1 ("Memorandum") at 5,
and again in its reply brief, Dkt. No. 18 ("Reply") at 1. [2]
Defendant's Objection is, therefore, "a mere reiteration of
an argument made to the magistrate judge." Barnes, 2013
WL 1121353, at \*1. Accordingly, the Court reviews the
Report-Recommendation for clear error, and finds none.

### IV. CONCLUSION

**\*2** Accordingly, it is hereby:

**ORDERED**, that Defendant's Motion to Dismiss (Dkt.
No. 13) is **DENIED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of
this Order on the parties in accordance with the Local
Rules.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2018 WL 3730175

Footnotes

1    The cited page numbers for this document refer to those generated by the Court's electronic filing system ("ECF").

2    The cited page numbers for this document refer to those generated by ECF.

---

**End of Document**                                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2018 WL 3736794
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Javon HIGH, Plaintiff,
v.
P.A. SWITZ, Defendant.

Civ. No. 9:17-CV-1067 (LEK/DJS)
|
Signed 07/09/2018

**Attorneys and Law Firms**

JAVON HIGH, 16-R-2525, Queensboro Correctional
Facility, 47-04 Van Dam Street, Long Island City, NY
11101, pro se.

HON. BARBARA D. UNDERWOOD, Attorney
General of the State of New York, OF COUNSEL: ERIK
BOULE PINSONNAULT, ESQ., The Capitol, Albany,
NY 12224, Attorney for Defendant.

**REPORT-RECOMMENDATION and ORDER**

DANIEL J. STEWART, United States Magistrate Judge

**\*1** On September 25, 2017, *pro se* Plaintiff Javon High
commenced this action pursuant to 42 U.S.C. § 1983,
asserting claims arising from his confinement at both
Wyoming Correctional Facility and Ulster Correctional
Facility, while in the custody of the Department of
Corrections and Community Supervision ("DOCCS").
Dkt. No. 1, Compl. In his Complaint, Plaintiff alleges that
he suffers from chronic, severe pain, for which he was
prescribed certain medications. Compl. at p. 3. [1] Plaintiff
alleges that while at Ulster, he was seen by P.A. Switz,
who told Plaintiff that he would not be getting the physical
therapy or prescribed medications at Ulster, and that he
could attempt to when he got to his designated facility,
which would not be for a month or two. *Id.* at pp. 4-5.
Plaintiff then went thirty-five days with severe pain. *Id.* at
p. 6. Plaintiff alleges continuing issues related to his pain
and treatment after he was transferred to Wyoming. [2] *Id.*
at pp. 6-19. Remaining in this District are Plaintiff's claims
arising out of his confinement at Ulster, which are only
those against Defendant Genevieve Switz.

Presently before the Court is Defendant's Motion to
Dismiss Plaintiff's Complaint on the basis that Plaintiff
failed to exhaust his administrative remedies before
filing this action. Dkt. No. 13, Def.'s Mot. to Dismiss.
Plaintiff has opposed the Motion. Dkt. No. 17, Pl.'s Opp.
Defendant has filed a reply. Dkt. No. 18, Def.'s Reply.
Plaintiff has filed an additional submission in opposition.
Dkt. No. 19, Pl.'s Supp. Opp. [3]

The Court finds that Plaintiff failed to exhaust
his administrative remedies, but that Plaintiff has
demonstrated that the lack of exhaustion should
be excused. The Court therefore recommends that
Defendant's Motion be **denied**.

**I. LEGAL STANDARD**

**\*2** On a motion to dismiss, the allegations of the
complaint must be accepted as true. *See Cruz v. Beto,*
405 U.S. 319, 322 (1972). The trial court's function "is
merely to assess the legal feasibility of the complaint, not
to assay the weight of the evidence which might be offered
in support thereof." *Geisler v. Petrocelli,* 616 F.2d 636, 639
(2d Cir. 1980). "The issue is not whether a plaintiff will
ultimately prevail but whether the claimant is entitled to
offer evidence to support the claims." *Scheuer v. Rhodes,*
416 U.S. 232, 236 (1974) (*overruled on other grounds by
Davis v. Scherer,* 468 U.S. 183 (1984) ).

The court is bound to give the plaintiff the benefit of
every reasonable inference to be drawn from the "well-
pleaded" allegations of the complaint. *See Retail Clerks
Int'l Ass'n, Local 1625, AFL-CIO v. Schermerhorn,* 373
U.S. 746, n.6 (1963). Nevertheless, "the tenet that a court
must accept as true all of the allegations contained in a
complaint is inapplicable to legal conclusions." *Ashcroft v.
Iqbal,* 556 U.S. 662, 678 (2009). Therefore, "[t]hreadbare
recitals of the elements of a cause of action, supported by
mere conclusory statements, do not suffice." *Id.* (citation
omitted).

A motion to dismiss pursuant to Rule 12(b)(6) may not
be granted so long as the plaintiff's complaint includes
"enough facts to state a claim to relief that is plausible on
its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570
(2007); *Ashcroft v. Iqbal,* 556 U.S. at 697. "A claim has
facial plausibility when the plaintiff pleads factual content
that allows the court to draw the reasonable inference

2018 WL 3736794

that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. at 678. This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal citation omitted). In this respect, to survive dismissal, a plaintiff "must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.' " *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 440 U.S. at 555). Thus, in spite of the deference the court is bound to give to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts that [he or she] has not alleged, or that the defendants have violated ... laws in ways that have not been alleged." *Assoc. Gen. Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983). The process of determining whether a plaintiff has "nudged [his] claims ... across the line from conceivable to plausible," entails a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. at 679-80.

Where, as here, the complaint was filed *pro se*, it must be construed liberally with "special solicitude" and interpreted "to raise the strongest claims that it suggests." *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (internal quotation marks omitted) (citation omitted). Nonetheless, a *pro se* complaint must state a "plausible claim for relief." *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009).

"Generally, in determining a 12(b)(6) motion, the court may only consider those matters alleged in the complaint, documents attached to the complaint, and matters to which the court may take judicial notice[,]" as well as documents incorporated by reference in the complaint. *Spence v. Senkowski*, 1997 WL 394667, at *2 (N.D.N.Y. July 3, 1997) (citing *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991) ); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) (citing FED. R. CIV. P. 10(c) ).

## II. EXHAUSTION

### A. Exhaustion Procedure

*3  The Prison Litigation Reform Act ("PLRA") provides, in pertinent part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citation omitted). Exhaustion in prisoner cases covered by § 1997e(a) is mandatory. *Id.* at 524; *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016) (stating that the mandatory language of § 1997e(a) forecloses judicial discretion to craft exceptions to the requirement). Furthermore, § 1997e(a) requires "proper exhaustion," which means using all steps of the administrative process and complying with "deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). The defendant bears the burden of proving that the administrative remedies available to the plaintiff were not exhausted prior to the initiation of a civil action. *Howard v. Goord*, 1999 WL 1288679, at *3 (E.D.N.Y. Dec. 28, 1999).

In New York, the administrative remedies consist of a three-step Inmate Grievance Program ("IGP"). First, a grievance is submitted to the Inmate Grievance Resolution Committee ("IGRC"), a committee comprised of both inmates and facility employees. N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5(b). An inmate must submit a grievance "within 21 calendar days of the alleged occurrence." *Id.* at § 701.5(a). An inmate may request an extension of the time limit within forty-five days of the date of the alleged occurrence. *Id.* at § 701.6(g). The IGRC reviews and investigates the formal complaint and then issues a written determination. *Id.* at § 701.5(b). Second, upon appeal of the IGRC decision, the superintendent of the facility reviews the IGRC's determination and issues a decision. *Id.* at § 701.5(c). Finally, upon appeal of the superintendent's decision, the Central Office Review Committee ("CORC") makes the final administrative determination. *Id.* at § 701.5(d). Only upon exhaustion of all three levels of review may a prisoner seek relief in federal court. *Bridgeforth v. Bartlett*, 686 F. Supp. 2d 238, 239 (W.D.N.Y. 2010) (citing, *inter alia*, *Porter v. Nussle*, 534 U.S. at 524); *see also Neal v. Goord*, 267 F.3d 116,

121 (2d Cir. 2001), *overruled on other grounds by* Porter v. Nussle, 534 U.S. 516.


## B. Plaintiff's Failure to Exhaust Administrative Remedies

In this case, Plaintiff admits that the grievance procedure was not complete when he filed the Complaint because he had not received a response from CORC. Compl. at pp. 20-21. Plaintiff filed his initial grievance on January 20, 2017. Id. at p. 20. He received a response from IGRC on January 24, 2017, and forwarded his appeal to the Superintendent. *Id.* The Superintendent then issued a response on January 31, 2017. *Id.* On February 6, 2017, Plaintiff filed his appeal to CORC. *Id.* Per the regulations, CORC had thirty days to respond to the appeal. *Id.* On August 25, 2017, after not hearing from CORC, Plaintiff sent CORC a letter asserting that CORC had exceeded the timeline and that he had therefore exhausted his administrative remedies, and would be filing a claim in Court. *Id.* at pp. 20-21. When Plaintiff prepared his Complaint, on September 12, 2017, he had still not received any response from CORC. *Id.* Only after filing the Complaint did Plaintiff receive a final response from CORC. Pl.'s Supp. Opp. at p. 3 & Def.'s Reply at pp. 1-2 (indicating response from CORC was received in February 2018).

It is clear from the face of Plaintiff's Complaint that he did not exhaust his administrative remedies. The fact that his CORC appeal was decided after the filing of his Complaint is insufficient to cure Plaintiff's failure to exhaust; filing an Amended Complaint at this time would also not correct this fundamental deficiency. Gizewski v. New York State Dep't of Corr. & Cmty. Supervision, 2016 WL 3661434, at *13 ("It is well established that [r]eceiving a decision from CORC after filing a federal lawsuit does not satisfy the PLRA's requirement that administrative remedies be exhausted before filing suit, and any claim not exhausted prior to commencement of the suit must be dismissed without prejudice.") (internal quotation marks omitted) (citations omitted).

**\*4** The Court will discuss below whether Plaintiff's contentions may state a valid excuse for his failure to exhaust his administrative remedies.

## C. Whether Plaintiff's Failure to Exhaust Administrative Remedies May be Excused

A prisoner's failure to exhaust administrative remedies may nonetheless be excused if remedies were unavailable to the inmate. Ross v. Blake, 136 S. Ct. at 1858. As the Supreme Court recently stated, "[a]n inmate ... must exhaust available remedies, but need not exhaust unavailable ones." *Id.* The Court provided three potential circumstances in which administrative remedies may be unavailable: (1) where the administrative procedure technically exists but operates as a "dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) where the administrative scheme is "so opaque that it becomes, practically speaking, incapable of use"; and (3) where prison administrators "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 1859-60.

In his Complaint and opposition papers, Plaintiff's main contention is that administrative remedies were unavailable to him because he did not receive a response from CORC for over seven months, and that there are no instructions on how to proceed with a grievance if no response is received from CORC. Pl.'s Opp. at p. 9 ("DOCCS policy has no re[c]ourse, does not inform nor direct what the next step would be if CORC does not render a decision. Leaving inmates to bel[ie]ve that if they receive no decision after the (30) thirty day period allowed in th[eir] own policy then they have exhausted remedies. Fac[t]ually and evident[i]ally, DOCCS simply does not state what we are to do after the thirty day timeline has expired. Certainly they cannot just leave the door open...."); *see also* Compl. at pp. 20-21; Pl.'s Supp. Opp. Defendant contends that an inmate must receive a response from CORC before filing a suit, and that a delay in receipt of a CORC decision beyond the thirty days proscribed by statute does not excuse an inmate's failure to exhaust his administrative remedies. Def.'s Reply.

Courts within the Second Circuit are split regarding whether a failure to respond by CORC constitutes unavailability excusing a plaintiff's failure to exhaust. *Compare* Ford v. Smith, 2014 WL 652933, at *3 (N.D.N.Y. Feb. 19, 2014) (finding plaintiff's failure to exhaust was not excused where CORC failed to issue a determination for six months) *and* Lewis v. Hanson, 2017 WL 4326084,

at *3 (N.D.N.Y. Sept. 28, 2017) *with Rossi v. Fishcer*, 2015 WL 769551 (S.D.N.Y. Feb. 24, 2015) (collecting cases deeming administrative remedies unavailable when officials failed to timely respond to a grievance), *Peoples v. Fisher*, 2012 WL 1575302, at *6 (S.D.N.Y. May 3, 2012) ("When a prisoner complies with all of the administrative requirements and makes a good-faith effort to exhaust, he should not be denied the opportunity to pursue his grievance in Federal Court simply because the final administrative decision maker has ... neglected ... to issue a final administrative determination."), *and Rodriguez v. Reppert*, 2016 WL 6993383 (W.D.N.Y. Nov. 30, 2016).

**\*5** Here, Plaintiff filed his grievance with the IGRC; upon receiving an unfavorable determination, he appealed it to the Superintendent, and then appealed the Superintendent's determination to CORC. Compl. at pp. 20-21. The final step of the grievance procedure provides that CORC shall review the appeal and render a determination within 30 days from the time the appeal was received. N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5(d)(2). At the preliminary stages of the procedure, the regulations provide an avenue for a grievant to further pursue a grievance that is not timely decided: "Absent [an] extension [on a time limit], matters not decided within the time limits may be appealed to the next step." *Id.* at § 701.6(g). However, the third and final step in the grievance procedure is "appeal to the central office review committee." *Id.* at § 701.5(d). At this level, there is no instruction on what a grievant is to do if he or she has appealed to the CORC, the final step, and has not received a response. *Id.* at § 701.6(g)(1)(b)(ii). As such, these regulations "do not describe a mechanism" for appealing or advancing a grievance when a grievant does not receive a response from CORC, as there is no next step to which a grievant may appeal. *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 124 (2d Cir. 2016).

In the case of *Williams v. Corr. Officer Priatno*, the plaintiff had submitted a grievance but never received a response; he then filed a lawsuit without taking any further formal action regarding his grievance, believing it had never actually been filed by the special housing unit correction officer. 829 F.3d at 120-21. The Second Circuit found the grievance procedure was unavailable under *Ross*, meaning that the "administrative remedy, although officially on the books, is not capable of use to obtain relief." *Id.* at 123. The Court found that, even though the plaintiff could have "technically" appealed his

grievance, "[t]he regulations simply do not contemplate the situation in which [the plaintiff] found himself, making it practically impossible for him to ascertain whether and how he could pursue his grievance." *Id.* at 124. As such, the Second Circuit found that, under *Ross*, "the grievance procedures that were technically available to [plaintiff] are so opaque and confusing that they were, 'practically speaking, incapable of use.'" *Id.* at 126 (quoting *Ross v. Blake*, 136 S. Ct. at 1859).

Similarly, here, while the regulations at the preliminary stages contemplate a next step for a grievant to take in the event he does not receive a response, there is no direction on any action a grievant may take if he does not receive a response from CORC. Indeed, "the regulations give no guidance whatsoever" regarding what a grievant should do in this circumstance. *Id.*

Defendant cites to *Gizewski* for the proposition that even if a grievant does not receive a response to a grievance from CORC, the failure to exhaust is not excusable. In *Gizewski*, however, there was an administrative error in filing the grievant's appeal with CORC and Plaintiff never received a receipt from filing with CORC; the regulations explicitly provide a mechanism for confirming that an appeal has been properly filed if a grievant does not receive a receipt. As such, there was specific direction in the procedures for the grievant to follow. *Gizewski v. New York State Dep't of Corr. & Cmty. Supervision*, 2016 WL 3661434, (N.D.N.Y July 5, 2016). As the Court there summarized:

> Although the Court is sympathetic to the fact that it was the inmate grievance office that failed to transmit Plaintiff's appeal to CORC until five months after he had filed it, Plaintiff is also at fault for not taking any further action during this time period. More specifically, 7 N.Y.C.R.R. § 701.5(d)(3)(i) states that "[i]f a grievant does not receive a copy of the written notice of receipt [by CORC] within 45 days of filing an appeal, the grievant should contact the IGP supervisor in writing to confirm that the appeal was filed and transmitted to CORC."

*Id.* at *13.

The Second Circuit Court of Appeals affirmed Chief Judge Suddaby's dismissal of Gizewski's Complaint. *Gizewski v. New York State Dep't of Corr. & Cmty. Supervision*, 692 Fed. Appx. 668 (2d Cir. 2017). In doing

so, however, the Circuit noted that, "even if we assume arguendo that the long delay occasioned in part by clerical error constituted constructive denial," there was no genuine issue of material fact because the issues raised on that final administrative appeal to CORC pertained to requests for items that had already been provided to the plaintiff as part of a reasonable accommodation. *Id.* at 670. Therefore, the Second Circuit did not and has not decided the precise issue raised on this Motion—a claim of failure to exhaust where the plaintiff had taken all steps he could to fulfill the last step of the appeal process; where CORC had neglected to respond, not just during the thirty day time limit, but for a period of numerous months thereafter; where CORC had further neglected to respond when Plaintiff wrote to CORC regarding the status of his appeal; and where CORC had only ultimately decided the appeal a year later, after the present Motion to Dismiss had been filed. In the Court's view, and under the hopefully unique facts of this case, Plaintiff's failure to exhaust aligns more with *Williams* than with *Gizewski*. "[A]fter the CORC neglected to decide [the appeal], administrative remedies were no longer available" to Plaintiff. *Rodriguez v. Reppert*, 2016 WL 6993383, at *1.

**\*6** Accordingly, for the foregoing reasons, the Court recommends that Defendant's Motion be **denied** based upon a finding that Plaintiff's failure to exhaust is excused.

### III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendant's Motion to Dismiss (Dkt. No. 13) be **denied**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14)[4] days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)* ); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

### All Citations

Slip Copy, 2018 WL 3736794

---

Footnotes

1    When referring to Plaintiff's submissions, the Court will cite to the page numbers automatically assigned by the Court's Case Management Electronic Case Files ("CM/ECF") System because they are often unnumbered or not numbered sequentially.

2    The claims regarding Plaintiff's treatment at Wyoming were severed and transferred to the Western District of New York upon initial review of the Complaint. Dkt. No. 8.

3    In his opposition filings, Plaintiff has included allegations that were not included in his Complaint. *See* Pl.'s Opp. at pp. 5-6. Federal Rule of Civil Procedure 12(d) provides that if "matters outside the pleadings are presented to and not excluded by the court" on a motion to dismiss, "the motion must be treated as one for summary judgment under Rule 56." FED. R.CIV. P. 12(d). The Court agrees with Defendant that Plaintiff's allegations that he was prevented from filing grievances should not be considered on a motion to dismiss as they are outside the pleadings. *See* Def.'s Reply at p. 2. Because a determination as to exhaustion can be made based on the face of the Complaint, the Court declines to convert the Motion to one for summary judgment, and will exclude and not consider the extrinsic evidence submitted by the parties.

4    If you are proceeding *pro se* and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R.CIV. P. 6(a)(1)(C).

---

**End of Document**                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2016 WL 6993383
Only the Westlaw citation is currently available.
United States District Court,
W.D. New York.

Juan Rodriguez, Plaintiff,
v.
C.O. Reppert, C.O. Osbourne,
and C.O. Testani, Defendants.

14-CV-671-RJA-MJR
|
Signed 11/30/2016

**Attorneys and Law Firms**

Juan Rodriguez, Dannemora, NY, pro se.

Kathleen M. Kaczor, Attorney General's Office, Buffalo, NY, for Defendants.

## DECISION AND ORDER

HONORABLE RICHARD J. ARCARA, UNITED STATES DISTRICT JUDGE

*1 Magistrate Judge Roemer, to whom the Court referred this case for all pre-trial proceedings, filed a Report and Recommendation (Docket No. 19) recommending that the Court deny the Defendants' motion for summary judgment. See Docket No. 10. The Defendants have filed objections to that recommendation. Docket No. 20. Pursuant to 28 U.S.C. § 636(b)(1), the Court must review the Report and Recommendation de novo. Upon de novo review, and for the reasons stated below, the Court overrules the Defendants' objections and adopts the Report and Recommendation in its entirety.

## BACKGROUND

The Defendants argue that they are entitled to summary judgment because, they claim, the Plaintiff failed to exhaust his administrative remedies before bringing this case. It is undisputed that the New York State Department of Corrections and Community Supervision's (DOCCS') Central Office Review Committee (CORC)—the final level of review in DOCCS' internal grievance program—

did not decide the Plaintiff's appeals of his administrative grievances within the thirty-day period required by DOCCS' regulations. See 7 N.Y.C.R.R. § 701.5(d)(2)(ii). It is also undisputed that the Plaintiff filed his complaint in this case before the CORC decided his appeals. The CORC ultimately decided the Plaintiff's appeals two weeks after the Plaintiff filed his complaint in this case, but nearly two months after DOCCS' own regulations required the CORC to do so.

Relying primarily on the Supreme Court's decision in Ross v. Blake, 136 S. Ct. 1850 (2016), as well as the Second Circuit's decision in Williams v. Priatno, 829 F.3d 118, Judge Roemer concluded that the CORC's failure to timely decide the Plaintiff's appeals, combined with the absence of any "mechanism to request the CORC to issue a decision after thirty days have elapsed," Docket No. 19 at 7, meant that the Plaintiff's administrative remedies were not "available" within the meaning of the Prison Litigation Reform Act (PLRA). See 42 U.S.C. § 1997e(a). Thus, Judge Roemer concluded, the Plaintiff did exhaust his administrative remedies.

## DISCUSSION

The PLRA's exhaustion "edict contains one significant qualifier: the [administrative] remedies" a prisoner is required to exhaust "must ... be 'available' to the prisoner." Ross v. Blake, 136 S. Ct. 1850, 1856 (2016). The Supreme Court has identified several scenarios in which an administrative remedy might be "[un]available" within the meaning of the PLRA. See id. at 1859-60. Judge Roemer concluded that one of those scenarios applies in this case: the Plaintiff here encountered "an administrative scheme" that is "so opaque that it becomes, practically speaking, incapable of use." Ross, 136 S. Ct. at 1859.

The Second Circuit recently explained that this "opaqueness" exception to the PLRA's exhaustion requirement applies when "[t]he regulations simply do not contemplate the situation in which [the prisoner] found himself, making it practically impossible for him to ascertain whether and how he could pursue his grievance." Williams v. Priatno, 829 F.3d 118, 124 (2d Cir. 2016). That is the case here: As Judge Roemer noted, "after the CORC neglected to decide Rodriguez's appeals within thirty days, administrative remedies were no longer available to him, and his only option was to file this action." Docket No. 19

at 7. In other words, there was simply nothing the Plaintiff could do to force the CORC to follow its own deadline for deciding the Plaintiff's appeals.

**\*2** The Defendants now argue that the Plaintiff "could have contacted the IGP Supervisor in writing if he did not receive a written notice of receipt from CORC within 45 days of his appeal." Docket No. 27 at 2. Specifically, the Defendants point to DOCCS Directive 4040(d)(3)(i) (codified at 7 N.Y.C.R.R. § 701.5(d)(2)(i)), which provides that, "[i]f a grievant does not receive a copy of the written notice of receipt within 45 days of filing an appeal, the grievant should contact the IGP supervisor in writing to confirm that the appeal was filed and transmitted to the CORC." *Id.* (citations omitted).

This argument, however, was made for the first time in the Defendants' reply brief before this Court; the Defendants did not raise the argument before Judge Roemer, nor did they raise it in their objections. [1] The Defendants have therefore waived the argument that § 701.5(d)(2)(i) provides a mechanism by which the Plaintiff could have prompted the CORC to decide his appeals. "The Court does not and will not make a practice of addressing the merits of issues first raised in a reply, as the opposing party is not afforded any opportunity to respond to new issues raised in a reply, which is ordinarily the last document submitted prior to the Court's ruling on a motion. Such sapience appears all the more prudent" where, as here, "the opposing party is proceeding *pro se*. *Peca v. Delta Air Lines, Inc.*, No. 97-CV-0882E(M), 2000 WL 914112, at *2 (W.D.N.Y. July 7, 2000)* (citations and quotation marks omitted). The Court will therefore not consider the Defendants' argument that § 701.5(d)(2)(i) makes Plaintiff's administrative remedies "available" within the meaning of the PLRA.

The Defendants also identify several other reasons why they believe Judge Roemer's Report and Recommendation was incorrect. The Court addresses each argument each in turn.

First, the Defendants argue that the Plaintiff's conduct in a case in the New York Court of Claims shows that he "could not ... argue that the grievance process was unavailable to him, unknowable, incapable of use, inaccessible, or practically impossible to navigate." Docket No. 20 at 5. But this argument misinterprets the PLRA's opaqueness exception as interpreted by the

Second Circuit in *Williams*: the question, according to the Second Circuit, is whether "[t]he regulations ... contemplate the situation in which [the prisoner] f[inds] himself." *Williams*, 829 F.3d at 124. This is an objective question: the regulations either provide an inmate with a procedural route to obtain administrative relief, or they do not. To be sure, an inmate's subjective understanding of the grievance procedure is one aspect of the opaqueness question; a procedural scheme that *does* provide a route to administrative relief is little better than *no* route if the administrative path the prisoner must follow is "so confusing that no reasonable prisoner can use them." *Ross*, 136 S. Ct. at 1869 (quotations and ellipsis omitted). *See also Williams*, 829 F.3d at 126 ("[T]he purported options for relief provided by defendants, to the extent they are even available to an inmate in [the plaintiff's] situation, only increase confusion regarding the avenues available to pursue an appeal.") Nothing in *Williams*, however, suggests that the opaqueness exception is categorically unavailable simply because, as here, the prisoner was familiar with his prison's grievance process.

**\*3** Second, the Defendants point to the Supreme Court's statement in *Ross* that, "[w]hen an administrative process is susceptible of multiple reasonable interpretations, Congress has determined that the inmate should err on the side of exhaustion." *Ross*, 139 S. Ct. at 1859. Again, however, after *Williams*, the question in this case is whether an administrative option was even available to the Plaintiff in the first place—not whether the Plaintiff misunderstood a DOCCS regulation.

Third, the Defendants argue that Judge Roemer "chose ... to apply the minority [ ]view" on the question whether an untimely administrative decision renders the administrative process unavailable. But as Judge Roemer noted, the Defendants do not identify "any cases from the Second Circuit or the Western District of New York" supporting their position. Docket No. 19 at 8. To the contrary, the most recent Second Circuit case on point—*Williams*—states that administrative remedies are opaque—and, therefore, unavailable—when those remedies do not address the situation in which a prisoner finds himself. That is the case here.

Fourth, the Defendants rely heavily on the Supreme Court's statement in *Ross* that the unavailability of administrative remedies "will not often arise." But in context, the Supreme Court's statement says something

less forceful than the Defendants suggest: *Ross* states that, "[g]iven prisons' own incentives to maintain functioning remedial processes, we expect that these circumstances will not often arise." *Ross*, 136 S. Ct. at 1859. This suggests that remedies will typically not be unavailable under the PLRA because prisons have an obvious interest in resolving administrative grievances internally. This interest is best served by maintaining a grievance scheme that actually provides a route to administrative relief. *Ross*, in other words, assumes that administrative remedies will "not often" be unavailable because *Ross* also assumes that prisons will maintain remedial processes that provide prisoners with a path for obtaining administrative relief.

Finally, the Defendants argue that, "if Magistrate Judge Roemer's decision is adopted, inmates can file suit anytime the IGP, a Superintendent, or the CORC is late in rendering a decision. In fact, if adopted, inmates could wait until one day after the time periods stated in the NYCRR and file suit." Docket No. 20 at 15. This overstates Judge Roemer's conclusion. Nothing in Judge Roemer's Report and Recommendation suggests that a failure to timely decide an inmate grievance at a *lower level* of the grievance review process would permit a prisoner to immediately file a federal lawsuit. This is because DOCCS' regulations expressly contemplate such a situation: they provide that, absent an extension of time, "matters not decided within the time limits may be appealed to the next step." 7 N.Y.C.R.R. § 701.6(g)(2). In other words, a failure to render a timely decision at a lower level in the grievance process gives a prisoner the option of appealing that inaction to the next level. A prisoner who does not avail himself of that option will almost certainly find his lawsuit dismissed for failure to exhaust. *See, e.g.*, *Morrison v. Stroman*, 12-CV-542(A)(M), 2014 WL 6685510, at *4 (W.D.N.Y. Nov. 26, 2014). But the CORC's failure to timely decide an appeal is fundamentally different than,

for instance, a superintendent's failure to timely decide an appeal, because the CORC is the final step in DOCCS' internal grievance program. A prisoner whose CORC appeal was not timely decided has no other administrative body to which he can appeal. Thus, the "regulations simply do not contemplate" what the prisoner should do to ensure his appeal is timely decided, "making it practically impossible for him to ascertain whether and how he could pursue his grievance." *Williams*, 829 F.3d at 124. [2]

**\*4** Thus, upon *de novo* review, the Court overrules the Defendants' objections to Judge Roemer's Report and Recommendation.

Lastly, the Plaintiff objects to Judge Roemer's decision to "stay defendants' time to answer the complaint until the District Judge renders a decision" on the Defendants' motion for summary judgment. Docket No. 19 at 9. This non-dispositive order is neither clearly erroneous nor contrary to law. *See* 28 U.S.C. § 636(b)(1)(A). The Court therefore overrules the Plaintiff's objections.

## CONCLUSION

For the reasons stated above, the Court overrules both the Plaintiff's and the Defendants' objections to Judge Roemer's Report and Recommendation. As directed by Judge Roemer, the Defendants shall answer the complaint within 21 days of this Decision and Order. This case is remanded to Judge Roemer for further proceedings.

**SO ORDERED.**

**All Citations**

Not Reported in F.Supp.3d, 2016 WL 6993383

Footnotes

1    The Defendants state that they made this argument for the first time in their reply brief because "[i]n response to defendants' objections to the R&R, plaintiff—for the first time—argues that the grievance process was 'opaque' and 'incapable of use.' " Docket No. 27 at 2. The Defendants overlook that *Judge Roemer* concluded that the grievance process was opaque and incapable of use. Thus, the Defendants could—and should—have made this argument in their objections to Judge Roemer's Report and Recommendation.

2    Because the Defendants have waived the argument, the Court does not address whether § 701.5(d)(2)(i) provides a mechanism for a prisoner to continue pursuing his grievance, thereby making his administrative remedies "available" under the PLRA. The Court notes, however, that this provision does not appear to address the situation in which the Plaintiff found himself. The Plaintiff does not suggest that he failed to exhaust because he was unsure whether the CORC

2016 WL 6993383

received his appeal. Rather, he failed to exhaust because the CORC did not timely decide the Plaintiffs' appeals. Nothing in the record suggests that the CORC failed to comply with the receipt-and-notice provisions of § 701.5(d)(2)(i).

---

**End of Document**                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2012 WL 7160117
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Jesus RODRIGUEZ, Plaintiff,
v.
David ROSNER, Medical Doctor,
Watertown Correctional Facility, Defendant.

No. 9:12–CV–958 (TJM/ATB).
|
Dec. 5, 2012.

**Attorneys and Law Firms**

Jesus Rodriguez, pro se.

Christopher W. Hall, AAG, for the Defendants.

**ORDER and REPORT–RECOMMENDATION**

ANDREW T. BAXTER, United States Magistrate Judge.

 **\*1** This matter has been referred to me for Report and Recommendation, pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c), by the Honorable Thomas J. McAvoy, Senior United States District Judge.

In this civil rights complaint, plaintiff alleges that defendant Rosner denied plaintiff constitutionally adequate medical care when he refused to prescribe orthopedic boots for plaintiff. (Compl. ¶ 6; Dkt. No. 1). Plaintiff subsequently filed a substantial number of documents in support of his complaint. (Dkt. No. 13). Plaintiff seeks injunctive as well as substantial monetary relief. (Compl.¶ 8).

Presently before the court is defendant's motion to dismiss this action pursuant to Fed.R.Civ.P. 12(b)(6). (Dkt. No. 16). Plaintiff has responded in opposition to the motion to dismiss and has filed a separate motion for appointment of counsel. (Dkt.Nos.19, 20). For the following reasons this court will recommend granting defendant's motion and dismissing this action without prejudice to plaintiff re-filing the action. The court will also order the denial of plaintiff's motion for appointment of counsel without prejudice.

**DISCUSSION**

**I. *Facts***
In his complaint, plaintiff alleges that he is a Type II diabetic, who has had skin grafts taken from the soles of his feet, leaving him with abnormally thin skin on the bottom of his feet. (Compl. Facts ¶¶ 2–3). Plaintiff states that he is in constant discomfort due to his condition, and in May of 2011, while he was incarcerated at Oneida Correctional Facility, he was referred to Dr. Baldauf, a podiatrist, who determined that plaintiff suffered from plantar fasciitis. (*Id.* ¶¶ 8–9). Plaintiff states that Dr. Baldauf recommended that plaintiff be fitted for orthopedic boots. (*Id.* ¶ 11). Impressions of plaintiff's feet were taken while he was still at Oneida, and the boots were ordered in July of 2011. (*Id.* ¶ 12).

Prior to receiving his boots, plaintiff was transferred to Watertown Correctional Facility, where he was examined by defendant Dr. Rosner. (*Id.* ¶¶ 13–15). Plaintiff states that he made several requests, but was never given the boots. (*Id.* ¶ 14). Dr. Rosner, who is not a podiatrist, conducted his own examination of plaintiff's feet and determined that plaintiff did not require orthopedic boots. (*Id.* ¶ 16). Plaintiff claims that the medical records supporting Dr. Baldauf's diagnosis and prescription of orthopedic boots was missing from plaintiff's file. (*Id.* ¶ 20). Plaintiff believes that defendant Rosner has intentionally destroyed or hidden these records. (*Id.* ¶ 21).

Plaintiff states that defendant Rosner refused to locate these records, even though plaintiff filed a grievance. (*Id.* ¶ 22). Plaintiff also claims that defendant Rosner "deflects" all investigations by stating that plaintiff refused new state-issued boots, but never mentions that these "new" boots were not the orthopedic boots that plaintiff had been prescribed at Oneida. (*Id.* ¶ 23).

**II. *Motion to Dismiss***

 **A. Legal Standards**
 **\*2** To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

"[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not suffice. *Id.* (citing *Bell Atl. Corp.,* 550 U.S. at 555). Plaintiff's factual allegations must also be sufficient to give the defendant " 'fair notice of what the ... claim is and the grounds upon which it rests.' " *Bell Atl. Corp.,* 550 U.S. at 555 (citation omitted).

When ruling on a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor. *Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d 69, 71 (2d Cir.1995). The court must heed its particular obligation to treat pro se pleadings with liberality. *Phillips v. Girdich,* 408 F.3d 124, 128 (2d Cir.2005); *Tapia–Ortiz v. Doe,* 171 F.3d 150, 152 (2d Cir.1999) (*per curiam* ).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not suffice. *Id.* (citing *Bell Atl. Corp.,* 550 U.S. at 555). Plaintiff's factual allegations must also be sufficient to give the defendant " 'fair notice of what the ... claim is and the grounds upon which it rests.' " *Bell Atl. Corp.,* 550 U.S. at 555 (citation omitted).

When ruling on a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor. *Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d 69, 71 (2d Cir.1995). The court must heed its particular obligation to treat pro se pleadings with liberality. *Phillips v. Girdich,* 408 F.3d 124, 128 (2d Cir.2005); *Tapia–Ortiz v. Doe,* 171 F.3d 150, 152 (2d Cir.1999) (*per curiam* ).

In deciding a motion to dismiss, the court may review documents integral to the complaint upon which the plaintiff relied in drafting his pleadings, as well as any documents attached to the complaint as exhibits and any statements or documents incorporated into the complaint by reference. *Rothman v. Gregor,* 220 F.3d 81, 88 (2d Cir.2000); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d at 72 (the court may take into consideration documents referenced in or attached to the complaint in deciding a motion to dismiss, without converting the proceeding to one for summary judgment).

**B. Application**

**\*3** Subsequent to the filing of his complaint, plaintiff submitted documents in support of the complaint, including a substantial number of medical records, many of which address the issue of his request for special boots. (Dkt. No. 13). Among the records submitted by plaintiff are his grievance documents. (Dkt. No. 13 at 34–43). Plaintiff also included a complaint that he made to the New York State Department of Health, Office of Professional Misconduct, [1] regarding defendant's denial of orthopedic boots and a complaint to the New York State Office of the Inspector General. (Dkt. No. 13 at 44–47, 48). On October 25, 2012, plaintiff filed a letter, attaching a copy of the final response to his grievance by the Central Office Review Committee. (Dkt. No. 15). This court may consider all of the documents attached to the complaint, or submitted in conjunction with the complaint in its decision, although it need not consider all of them in order to decide this motion.

**III.** *Exhaustion of Administrative Remedies*

**A. Legal Standards**

The Prison Litigation Reform Act, (PLRA), 42 U.S.C. § 1997e(a), requires an inmate to exhaust all available administrative remedies prior to bringing a federal civil rights action. This requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and regardless of the subject matter of the claim. *See Giano v. Goord,* 380 F.3d 670, 675–76 (2d Cir.2004) (citing *Porter v. Nussle,* 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002) (exhaustion requirement applies, *inter alia,* to excessive force claims)). Inmates must exhaust their administrative remedies even if they are seeking only money damages that are not available in prison administrative proceedings. *Id.* at 675.

The failure to exhaust is an affirmative defense that must be raised by the defendants. *Jones v. Bock,* 549 U.S. 199, 216, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007); *Johnson v. Testman,* 380 F.3d 691, 695 (2d Cir.2004). As an affirmative defense, it is the defendants' burden to establish that plaintiff failed to meet the exhaustion requirements. *See, e.g, Key v. Toussaint,* 660 F.Supp.2d 518, 523 (S.D.N.Y.2009) (citations omitted).

The Supreme Court has held that in order to properly exhaust an inmate's administrative remedies, the inmate must complete the administrative review process in accordance with the applicable state rules. *Jones v. Bock,* 549 U.S. at 218–19 (citing *Woodford v. Ngo,* 548 U.S. 81, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006)). In *Woodford,* the Court held that "proper" exhaustion means that the inmate must *complete* the administrative review process in accordance with the applicable procedural rules, including deadlines, as a prerequisite to bringing suit in federal court. 548 U.S. at 90–103. In *Neal v. Goord,* 267 F.3d 116, 122 (2d Cir.2001), *overruled on other grounds by Porter v. Nussle,* 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002), the Second Circuit specifically held that completion of the administrative review process includes receiving the decision on the final appeal of a grievance prior to filing the federal action.

**\*4** The grievance procedure in New York is a three-tiered process. The inmate must first file a grievance with the Inmate Grievance Resolution Committee (IGRC). N.Y. Comp.Codes R. & Regs., tit. 7 §§ 701.5(a)(1) and (b). An adverse decision of the IGRC may be appealed to the Superintendent of the Facility. *Id.* § 701.5(c). Adverse decisions at the Superintendent's level may be appealed to the Central Office Review Committee (CORC). *Id.* § 701.5(d). The court also notes that the regulations governing the Inmate Grievance Program encourage the inmate to "resolve his/her complaints through the guidance and counseling unit, the program area directly affected, or other existing channels (informal or formal) prior to submitting a grievance." *Id.* § 701.3(a) (Inmate's Responsibility).

At the same time that the Second Circuit decided *Giano,* it also decided four other related cases, clarifying the law in the Second Circuit regarding the PLRA's exhaustion requirement, and specifying various instances in which the requirement could be waived or excused.[2] Based on these cases, the Second Circuit developed a "three part

inquiry" to determine whether an inmate has fulfilled the PLRA exhaustion requirement. *See Brownell v. Krom,* 446 F.3d 305, 311–12 (2d Cir.2006) (citing *Hemphill,* 380 F.3d at 686). The inquiry asks (1) whether the administrative remedies are available to the inmate; (2) whether defendants' own actions inhibiting exhaustion estops them from raising the defense; and (3) whether "special circumstances" justify the inmate's failure to comply with the exhaustion requirement. *Id.*

Although the Second Circuit has not explicitly held that *Hemphill* remains good law after *Woodford,* it has applied the three-part inquiry in recent cases. *See, e.g., Macias v. Zenk,* 495 F.3d 37 (2d Cir.2007); *Davis v. State of New York,* 311 F. App'x 397, 399 (2d Cir.2009); *Snyder v. Whittier,* 428 F. App'x 89, 91 (2d Cir.2011).[3]

### 2. Application

Defendant argues that plaintiff has admittedly failed to exhaust his administrative remedies. In his complaint, signed on June 10, 2012, and filed on June 13, 2012, plaintiff states that he filed his grievance on April 2, 2012, received an adverse decision and appealed to the Superintendent on April 26, 2012. (Compl.

¶ 4(b)(i)). Plaintiff states that he appealed the Superintendent's decision to the CORC on May 4, 2012, but that "[n]o decision [was] rendered to date." (*Id.* ¶ 4(b) (ii)). Plaintiff specifically states that the "appeal [is] still pending at CORC in Albany." (*Id.*) Thus, at the time plaintiff filed his complaint, he had not exhausted his administrative remedies.

In the complaint, plaintiff cited no reason for failing to wait for the CORC's decision. The first two *Brownell* factors do not apply to this case. Plaintiff does not claim that the grievance procedure was not "available," nor does he claim that defendant's actions prevented plaintiff from utilizing the available procedures. Thus, the court must consider whether there are "special circumstances" justifying plaintiff's failure to exhaust. Based on the facts in this case, the inquiry will be whether there are special circumstances justifying plaintiff's failure to await the CORC decision.

**\*5** Plaintiff ultimately received a decision by the CORC, dated September 26, 2012, accepting his grievance to the extent that "a referral was submitted for a consult for

special boots for the grievant on 9/18/12." (Dkt. No. 15). Plaintiff filed the CORC decision with the court on October 25, 2012. (*Id.*) While it is true that this decision means that plaintiff has now exhausted his administrative remedies, the Second Circuit has held that a plaintiff must exhaust his remedies *before* filing his federal action, and that the court must dismiss plaintiff's complaint notwithstanding his subsequent exhaustion. 267 F.3d at 122–23.

In plaintiff's response to the motion to dismiss, he argues that he did everything he could to exhaust his remedies, and that he should be excused from obtaining the final decision of the CORC because he had already filed the appeal to the CORC when he filed his federal action, and there were "extenuating medical circumstances." (Dkt. No. 19 at 1–2). The court understands that plaintiff claims he was in pain, however, he received the CORC decision before the court even had an opportunity to rule on any of the merits of his claims. Thus, plaintiff's premature filing of this federal action did not benefit plaintiff or solve his medical problem. The CORC noted that plaintiff was referred for his medical boots in September of 2012. In fact, if plaintiff had waited, he would not have had to request injunctive relief because it appears that he will be afforded his special boots if medically appropriate.

Because plaintiff failed to exhaust his administrative remedies by failing to wait for the CORC's decision, this court is constrained to recommend dismissing this complaint without prejudice. Plaintiff may immediately re-file his action for damages because he has now exhausted his remedies. As in *Neal,* plaintiff may find that requiring him to initiate a new law suit is "judicially inefficient." 267 F.3d at 123. However, the Second Circuit specifically rejected such an argument, finding that "if during the pendency of a suit, the administrative process were to produce results benefitting plaintiff, the federal court will have wasted its resources adjudicating claims that could have been resolved within the prison grievance

system at the outset." *Id.* The scenario envisioned by the court in *Neal* occurred in this case, even before the CORC accepted the grievance because plaintiff received the referral to the specialist in September of 2012. This is true, notwithstanding that plaintiff may still file a complaint for damages alone if he chooses to do so.

### IV. *Appointment of Counsel*

Because this court is recommending dismissal without prejudice at this time, plaintiff's motion for appointment of counsel (Dkt. No. 20) is denied as moot. If plaintiff re-files his action, he may request appointment of counsel at the appropriate time.

**WHEREFORE,** based on the findings above, it is

**\*6 RECOMMENDED,** that defendant's motion to dismiss (Dkt. No. 16) be **GRANTED,** and the complaint **DISMISSED WITHOUT PREJUDICE TO REFILING,** and it is further

**ORDERED,** that plaintiff's motion for appointment of counsel (Dkt. No. 20) is **DENIED AS MOOT AT THIS TIME.**

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(e), 72.

### All Citations

Not Reported in F.Supp.2d, 2012 WL 7160117

Footnotes

1    This set of documents includes plaintiff's complaint, the Department's response, plaintiff's letter objecting to the Department's conclusion, and the Department's review of its action. (Dkt. No. 13 at 44–47).

2    *See Hemphill v. State of New York,* 380 F.3d 680 (2d Cir.2004) (remanding case to determine if defendant's alleged threats constituted "special circumstances" justifying plaintiff's failure to exhaust); *Abney v. McGinnis,* 380 F.3d 663 (2d Cir.2004) (whether failure to exhaust may be justified because plaintiff obtained favorable rulings on his grievances, but the relief that he was supposed to obtain was never forthcoming); *Johnson v. Testman,* 380 F.3d 691 (2d Cir.2004) (whether including claims in a disciplinary appeal may suffice for the exhaustion requirement); *Ortiz v. McBride,* 380

F.3d 649 (2d Cir.2004) (complete dismissal is not required when plaintiff brings both exhausted and unexhausted civil rights claims).

3    This court also notes that, based upon the concurring opinion in *Woodford,* it appears that the Second Circuit decisions have *not* been overruled in that respect. In his concurring opinion in *Woodford,* Justice Breyer specifically noted that two circuits, the *Second* Circuit and the Third Circuit that have interpreted the PLRA "in a manner similar to that which the [Supreme] Court today adopts [in *Woodford* ] have concluded that the PLRA's proper exhaustion requirement is not absolute." *Woodford,* 548 U.S. at 104 (citing *Spruill v. Gillis,* 372 F.3d 218, 232 (3d Cir.2004); *Giano v. Goord,* 380 F.3d 670, 677 (2d Cir.2004)) (Breyer, J. concurring). Justice Breyer then stated that on remand, the lower court should "similarly" consider any claims that the inmate might have concerning whether his case "falls into a *traditional exception that the statute implicitly incorporates.*" *Id.* (emphasis added). This statement implies that there are still exceptions that a court may consider.

---

**End of Document**                                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2002 WL 31040370
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Maurice SAMUELS, Plaintiff,

v.

Donald SELSKY, Glenn Goord, Paul Cecilia, Javier
Iurrue, G. Schwartzman, Dennis Bliden, Jeffery
McCoy, and Christopher P. Artuz, Defendants.

No. 01CIV.8235(AGS).
|
Sept. 12, 2002.

OPINION & ORDER

SCHWARTZ, District J.

I. Introduction

 **\*1**  Maurice Samuels alleges that while incarcerated at
the Green Haven Correctional Facility, [1] prison officials
searched his cell and confiscated a number of documents
which were deemed to be "subversive" and contraband.
Samuels claims that the materials, including theological
textbook excerpts, were of a Christian nature and were
used in a course he taught in the prison through the New
York Theological Seminary. Samuels' alleged possession
of these documents led to a misbehavior report and a
subsequent disciplinary hearing, for which Samuels was
sentenced to 180 days in keeplock and 180 days' loss
of packages, commissary privileges, and telephone use.
Samuels also alleges that instead of being punished as
per his disciplinary hearing, he was sentenced to a more
severe punishment, 180 days in a special housing unit
which entailed Samuels' being locked in his cell for twenty-
three hours per day. On the basis of the allegedly unlawful
sanctions to which he was subjected, Samuels has filed
the instant action pursuant to 42 U.S.C. § 1983 alleging
violations of, *inter alia*, his First Amendment and due
process rights, and seeks equitable relief and damages.
Defendants have filed a motion to dismiss the action
pursuant to FED. R. CIV. P. 12(b)(1) and (6), and argue
that they enjoy qualified immunity barring this suit. For
the reasons set forth below, defendants' motion is granted
in part and denied in part.

II. Factual Background [2]

Maurice Samuels is currently an inmate at the Sullivan
Correctional Facility. Since being incarcerated, Samuels
has taken a keen interest in religion. He identifies himself
as a member of the Five Percent Nation of Gods
and Earths. [3]  While confined at Sing Sing, he received
a degree of Master of Professional Studies in Prison
Ministry through the New York Theological Seminary
("NYTS"). *See* Complaint Pursuant to U.S.C.A. Section
1983 ("Complaint"), at 4; Exhibit ("Ex.") A. Upon
completion of his studies with the NYTS, Samuels was
transferred to the Green Haven Correctional Facility. [4] At
Green Haven, Samuels was assigned a clerk's position in
therapeutic "Reality and Pain Program." He subsequently
redesigned the program, creating the "Reality and Pain
Therapeutic Counseling Program." *See* Complaint, at 4.
During this period he also served as a volunteer inmate
instructor in the Black Studies program, and was later
assigned as a clerk in Green Haven's Senior Counselor's
Office, where he helped create a program for sex offenders.
*See id.* at 4.

The NYTS later began a certificate program in Christian
Ministry in conjunction with Marist College at Green
Haven. Samuels was invited to teach several courses
for the program, including a course entitled "World
Views and Values" and another entitled "Introduction to
Theology and Methods." *See* Complaint, at 4; Ex. E, at
12. Samuels is listed on the "Faculty and Administration"
page of the Certificate in Ministry Program brochure. *See*
Ex. E, at 10. In designing his theology course, Samuels,
in conjunction with Professor Mar Peter-Raoul (currently
the Chair of the Department of Philosophy and Religious
Studies at Marist College), prepared a syllabus which
included the following:

 **\*2**  a. This is an introductory approach to contemporary
Christian Theology, there will be a broad range of material
provided for the student so that they [sic] may see
the evolution of Christian Theology and Contemporary
Theologies, active in the world today.

b. The course is divided into different sessions (1) What is
Theology; (2) Philosophy & Theology; (3) Contemporary
Theology; (4) Political and Liberation Theology; (5)
Feminist/Womanist Theology; and (6) Black & Third
World Theology.

2002 WL 31040370

c. This is done so that the student can examine the evolution of Christian Theology and Contemporary Theologies, and arrive at the next step in the process, i.e. explore the [sic] how to do theology.

d. This introduction to theology course will be taught from a [sic] interdisciplinary and non-traditional approach.

Complaint, at 5. This syllabus was approved by the appropriate authorities from NYTS, Marist College, and the Department of Corrections ("DOCS"). *See id.* at 5.

The central issue in this case involves a search of Samuels' cell. On September 15, 1999, another member of the Five Percent Nation of Gods and Earths who was involved in the NYTS program was disciplined for allegedly possessing a pamphlet entitled "Awake" or "Awaken" which addressed topics such as racism in the criminal justice system and abuses of the Rockefeller drug laws. *See* Complaint, at 6. On October 19, 1999, the assistant inmate director for the NYTS certificate program was interrogated about the program and why some of its members were also members of the Five Percent Nation of Gods and Earths. At the time, Samuels was housed in the inmate honor block housing Unit and taught a pre-G.E.D. and adult basic education class in the morning and afternoon and taught his theology class in the evening. *See* Complaint, at 6. According to defendants, Sergeant Schwartzman, a member of the prison staff, received a report from a confidential informant that Samuels was a leader of a protest planned to occur around January 1, 2000 ("Y2K protest"). [5] On October 20, 1999, Schwartzman ordered correction officers Williams and Kelly to search Samuels' cell. Samuels states that the confiscated materials included Marist College and NYTS course handouts for the certificate program, previously published material from the NYTS and Marist College, notes from newspaper articles, a manuscript Samuels had been working on since first attending the NYTS, and Kairos statements. [6] *See* Complaint, at 7. According to the Cell Search Report, contraband was found which consisted of a "folder of papers containing subversive material." Ex. G. On the same day, an Inmate Misbehavior Report was completed. *See* Ex. H. The rule violations are listed as 104.12 (action detrimental to the order of the facility) and 113.23 (contraband). *See id.* The narrative section of the Inmate Behavior Report states:

On the above date [10/20/99] and time while conducting a cell search on cell D-1-21 which houses inmate Samuels, Maurice 85A0184 the following contraband was found and recovered;

 **\*3** (1) Folder of papers containing subversive material These papers speak about inmate [sic] uniting together to fight against opositions [sic] such as the N.Y. parole system and other dept. of correction [sic] programs.

This material is consistant [sic] with information recieved [sic] that inmate Samuels has been active in urging others to participate in a demonstration on or about Jan. 1, 2000, which led to his cell being searched.

Ex. H. The form is signed by G. Williams, a correction officer, and G. Schwartzman. The documents are not identified, nor is there an explanation of why they were considered "subversive." Samuels repeatedly asked prison authorities to identify the "subversive" documents without success. *See, e.g.,* Exhibits ("Exs.") J, K, M, N, V, 7, 9. Defendants have not furnished the confiscated papers for the Court, and make no representation as to what documents were found in Samuels' cell or why they are considered "subversive." Samuels states that the materials seized by the prison officials is not literature pertaining to the Five Percent Nation of Gods and Earths but Christian ministry materials he used in teaching his class and which had previously been approved by the NYTS and prison authorities. *See* Complaint, at 5. Samuels also states that newspaper clippings and a manuscript he had been working on since 1986 were taken. *See* Affidavit [of Maurice Samuels] in Support of Opposition Motion ("Samuels Aff."), at ¶¶ 7-9.

Samuels was immediately placed in keeplock status pending a hearing on the misbehavior report. *See* Defendants' Memorandum of Law in Support of their Motion to Dismiss the Complaint ("Motion Brief"), at 3. Under DOCS rules, Samuels was entitled to an employee assistant to assist in his defense of the charges set forth in the misbehavior report. [7] An Assistant Selection Form was provided to Samuels, which instructed Samuels to select three people, one of whom would be assigned to him based on availability. *See* Ex. I. Samuels selected Hanna, Lawrence, and Schwartzman as his three choices. *See id.* Instead, Paul Cecilia was assigned to Samuels. *See* Motion Brief, at 3. Samuels alleges that instead of assisting him in the preparation of his case, Cecilia proceeded to

2002 WL 31040370

interrogate Samuels, asking him if he was in contact with Green Party candidate (formerly "Grandpa Munster") Al Lewis, whether he had any letters from him, whether he had any letters from outside organizations involved in prison reform, whether he was involved in any planned Y2K protest, and what the "Kairos" document was. *See* Complaint, at 8. Samuels further alleges that Cecilia did not explain the charges contained in the misbehavior report and failed adequately to conduct an investigation on Samuels' behalf. [8] Cecilia signed an Assistant Form on October 25, 1999, at 12:53 pm, indicating that he had interviewed witnesses, assisted as requested, and reported back to Samuels. *See* Ex. J. However, on October 26, Green Haven officials requested a one-day extension to hold a disciplinary hearing on the basis that the "assistant is trying to speek [sic] to with witiness [sic]." Ex. L. The extension was granted by "Alternate User 999SHURXR for 999SHU." *See id.* The name of the grantor is not listed on the computer printout.

**\*4** The "Tier III" disciplinary hearing was held on October 27, 1999. [9] At the hearing, two inmates and Dr. George W. Webber testified on Samuels' behalf (Webber testified by telephone). Webber is the director of the Certificate Program and president emeritus of the NYTS. Sgt. Schwartzman testified against Samuels. *See* Ex. O. Samuels also submitted a written brief for the hearing. *See* Ex. M. Samuels was found guilty of "demonstration" and "contraband" on November 9, 1999. The hearing officer, Javier Irurre, [10] summarized his findings as follows:

Statement of Evidence Relied Upon: Papers & hand written papers retrieved from your cell show statements inciting revolt and prison unrest. Confidential tape shows similarity between statements made in papers you have written and others in your possession with statements found in written material belonging other [sic] inmates inciting the so called Y2K revolt.
Confidential tape and testimony at the hearing establish a link between the statements in papers found in your cell and phamphlets [sic] circulating among prison population urging to strike in Y2K.

Reason for Disposition: Inciting revolt can not be tolerated in a correctional setting.

Ex. P. Samuels was punished with 180 days of keeplock, 180 days of loss of packages, 180 days of loss of commissary privileges, and 180 days of loss of phone privileges. *See* Ex. P; Complaint, at 11. The hearing officer did not impose special housing unit placement. *See* Ex. P; Complaint, at 11. The Court has not been furnished with a transcript of the hearing or of the "confidential tape" referred to by Irurre.

Samuels alleges that his due process rights were violated at the misbehavior hearing. He alleges that he failed to receive a timely hearing, that he received inadequate assistance from the employee assistant assigned to him (Cecilia), and that Dr. Mar Peter-Raoul was not permitted to testify on Samuels' behalf. *See* Complaint, at 9, 11. Samuels also protests the fact that the misbehavior report never specifies exactly what Samuels did to constitute "demonstration." *See id.* at 11. No written record was apparently made stating the reasons Dr. Peter-Raoul was not permitted to testify. Dr. Peter-Raoul later wrote a lengthy letter addressed to defendants Bliden, McCoy, and Irurre in which she explained the nature of the Kairos documents and stated her desire to serve as a witness for Samuels. *See* Complaint, at 10.

On November 8, 1999 (one day before Irurre found Samuels guilty of demonstration and contraband), Samuels submitted a detailed written brief to First Deputy Superintendent Dennis Bliden and "Jeff Macoy" [sic] on November 8, 1999, requesting that his misbehavior report be dismissed. *See* Ex. N. While waiting for a response to his letter, Samuels was transferred to the Upstate Correctional Facility, a special housing unit facility, where he was housed for 180 days. [11] *See* Complaint, at 11; Motion Brief, at 4; Plaintiffs' [sic] Memorandum of Law in Opposition to Defendants' Motion ("Opposition Brief"), at 27. Neither Samuels nor defendants provides an explanation as to why Samuels was transferred to the special housing unit facility. Jeff McKoy (listed in the caption as Jeffery McCoy) wrote to Samuels on November 12, 1999, advising him that he lacked the authority to overturn a Tier III disposition. *See* Ex. R. Bliden wrote to Samuels on November 18, 1999, stating that any appeal Samuels wished to file had to be directed to the Commissioner in Albany. He stated that "[u]ntil such time as we receive a decision from [Albany], I will not modify the disposition." Ex. U.

**\*5** As per Deputy Superintendent Bliden's instructions, Samuels submitted a seventeen-page letter to Donald Selsky, the Director of the Inmate Disciplinary Program,

in Albany. *See* Ex. V. In the course of his letter to Selsky, Samuels voices his procedurally and substantively-based arguments for dismissing his misbehavior adjudication. Selsky affirmed the November 9, 1999 hearing on January 6, 2000 on behalf of Glenn Goord, the Commissioner. [12] *See* Ex. 6. Samuels filed a request for a "time-cut" from the determination of the Superintendent on February 28, 2000. *See* Ex. 6. Prisoners' Legal Services of New York ("PLS") sent a letter to Selsky on March 2, 2000, asking him to reconsider his decision. On April 27, 2000, PLS sent a supplemental request for reconsideration, this time outlining in detail the legal bases for which Samuels' disciplinary charges should be withdrawn (by this point, Samuels had already served the imposed penalty; the letter asks Selsky to reverse the disciplinary hearing and expunge the disciplinary charges). *See* Ex. 9. Selsky did not alter his January 2000 decision. Samuels then appealed to the New York State Supreme Court, apparently by means of an Article 78 proceeding. The court, Canfield J., concluded that Samuels' appeal raised a substantial evidence question that could not be resolved by "reference to the objections in point of law." Decision and Order dated October 13, 2000. The court then transferred the matter to the Appellate Division, Third Judicial Department pursuant to N.Y. C.P.L.R. 7804(g). [13] *See id.*

Samuels then filed the instant action pursuant to 42 U.S.C. § 1983 based on defendants' alleged violations of his due process, First Amendment, and other constitutional rights, seeking equitable relief as well as compensatory and punitive damages. [14] The defendants move to dismiss the complaint pursuant to FED. R. CIV. P. 12(b)(1) (lack of subject matter jurisdiction) and (6) (failure to state a claim upon which relief can be granted). For the reasons set forth below, defendants' motion is granted in part and denied in part.

## III. Legal Standard

### A. *Pro Se* Complaints

The Second Circuit has repeatedly held that *pro se* complaints must be read more leniently than those prepared by lawyers. Recently, for example, the Second Circuit noted that a "*pro se* complaint should not be dismissed unless 'it appears beyond doubt that the plaintiff[ ] can prove no set of facts in support of [his] claim[s] which would entitle [him] to relief.' " *Weixel v. Board of Educ. of the City of New York,* 287 F.3d 138,

145 (2d Cir.2002) (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)). Moreover, when considering a motion to dismiss a *pro se* complaint, "courts must construe [the complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggest[s]." *Weixel,* 287 F.3d at 146 (quoting *Cruz v. Gomez,* 202 F.3d 593, 597 (2d Cir.2000) (internal quotation marks omitted)). The Second Circuit has also emphasized that a liberal reading of a *pro se* complaint is especially important when the complaint alleges civil rights violations. *See Weixel,* 287 F.3d at 146; *Weinstein v. Albright,* 261 F.3d 127, 132 (2d Cir.2001). Consequently, Samuels' allegations must be read so as to "raise the strongest arguments that they suggest." *Weixel,* 287 F.3d at 146 (quoting *McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir.1999) (internal quotation marks omitted)).

### B. Motions to Dismiss Pursuant to FED. R. CIV. P. 12(b)(1) & (6)

**\*6** Defendants move to dismiss the complaint pursuant to FED. R. CIV. P.12(b)(1) and (6). The standard of review for dismissal on either basis is identical. *See, e.g., Moore v. PaineWebber, Inc.,* 189 F .3d 165, 169 n. 3 (2d Cir.1999); *Jaghory v. New York State Dep't of Educ.,* 131 F.3d 326, 329 (2d Cir.1997). In either case, a court must assume as true factual allegations in the complaint and construe the complaint in the light most favorable to the plaintiff. *See, e.g., York v. Association of Bar of City of New York,* 286 F .3d 122, 125 (2d Cir.2002); *Shipping Fin. Servs. Corp. v. Drakos,* 140 F.3d 129, 131 (2d Cir.1998). While the question of subject matter jurisdiction goes to the power of the court to hear a case, the issue on a motion to dismiss is "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *York,* 286 F.3d at 125 (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974)).

## IV. Legal Analysis

### A. Exhaustion of Administrative Remedies

### 1. Legal Standards Governing Exhaustion of Administrative Remedies

Lawsuits by prisoners are governed by 42 U.S.C. § 1997e, which holds in part:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal

law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Under this section, where a prisoner brings an action in a district court before exhausting all available administrative remedies, the action must be dismissed. A unanimous Supreme Court has recently interpreted the term "prison conditions" expansively, requiring an exhaustion of all available administrative remedies whether the inmate suit concerns a general prison condition (i.e., quality of food) or a discrete incident specific to one prisoner (i.e., excessive force). *See Porter v. Nussle,* 122 S.Ct. 983 (2002). The Court also held that the exhaustion requirement applies regardless of whether the administrative remedies are "plain," "speedy," or "effective," and also applies when the prisoner "seeks relief not available in grievance proceedings" such as monetary damages. *Id.* at 988.

As a preliminary matter, defendants concede that Samuels has exhausted all administrative remedies concerning his due process violations. *See* Defendants' Supplemental Memorandum of Law and Reply Memorandum of Law in Further Support of Their Motion to Dismiss ("Reply Brief"), at 9. Defendants' concession is apparently based on DOCS Directive No. 4040, which holds that:

> [T]he individual decisions or dispositions of the following are not grievable: [...] Media Review, disciplinary proceedings, inmate property claims (of any amount) and records review (Freedom of Information Requests, expunction). However, the policies, rules, and procedures of any of these programs or procedures may be the subject of a grievance.

**\*7** As noted above, Samuels unsuccessfully appealed his case within the prison facility and later to defendant Selsky in Albany, who denied it and denied reconsideration thereof.

Defendants argue, however, that "if a claim is incidental to a disciplinary determination [...] the fact that the disciplinary charge itself has been appealed does not excuse the failure to file a grievance." Reply Brief, at 9. Defendants thus seek to sever the alleged due process violations (for which Samuels has exhausted all administrative remedies) from several closely related claims-Samuels' claims protesting the confiscation of his papers, his transfer to the special housing unit, and DOCS policy regarding the Five Percent Nation of Gods and Earths (for which defendants argue Samuels has failed to exhaust all administrative remedies). *See* Reply Brief, at 9.

### 2. Confiscation of Documents

Defendants allege that the confiscation of the religious material is a matter separate from the underlying disciplinary hearing. While Samuels directly appealed his disciplinary adjudication, he concedes that he did not bring any complaint to the inmate grievance program. *See* Complaint, at 1. Defendants argue that Samuels' claim alleging the confiscation of religious material must therefore be dismissed because he failed to exhaust administrative remedies. *See* Reply Brief, at 9-10. Defendants represent that confiscation of religious documents from a cell is a grievable matter. The Court notes, however, that in similar cases inmates have been told that such confiscations are not grievable. *See, e.g., Allah v. Annucci,* 97 Civ. 607, 1999 U.S. Dist. LEXIS 7171, at *2-*3 (W.D.N.Y. Mar. 25, 1999) (plaintiff filed an inmate grievance protesting confiscation of religious material and was told such a seizure was not grievable).

As a preliminary matter, there is considerable confusion regarding exactly which documents were confiscated. Samuels has sought these documents numerous times; defendants have not made the documents available to him or to the Court. Initially, defendants stated that "Plaintiff specifically alleges in his compliant that the defendants confiscated a pamphlet called 'Awake'." Motion Brief, at 8. Later, defendants state that it is "unclear from plaintiff's complaint and response whether the pamphlet 'Awake' was confiscated from him or another." Yet since defendants conducted the search and confiscation of the materials from Samuels' cell, they should know whether "Awake" was confiscated from Samuels' cell. Nonetheless, they claim ignorance. Samuels himself makes his position clear: "material taken from Plaintiff [sic] cell [...] was not [...] Awake." Complaint, at 2. In a later brief, he writes "Complainant NEVER POSSESSED a pamphlet entitled 'Awake.'" Opposition Brief, at 3 (emphasis in original).

In any event, it is clear that certain religiously-oriented documents were confiscated from Samuels' cell. Samuels seeks, *inter alia,* punitive and compensatory damages he claims to have suffered through defendants' alleged violation of his rights, including his First Amendment rights. *See* Complaint, at 13. Defendants argue that Samuels "never appealed any grievance relating to the confiscation of religious material" to the Inmate Grievance Program, citing an affidavit of Thomas G. Eagen ("Eagen Aff."), the Director of DOCS's Inmate Grievance Program, dated March 13, 2002. While this may be true, Samuels did protest the confiscation of documents in his direct appeal to Bliden and McKoy and later to Selsky. *See* Exs. N, V, 9. These appeals were denied.

**\*8** As noted, it is factually unclear whether seizures of religious materials may be grieved through the Inmate Grievance Program. However, even if such seizures are grievable, Samuels' alleged failure to exhaust all administrative remedies as required by 42 U.S .C. § 1997e(a) goes only to the narrow issue of the confiscation *qua* confiscation-the damage Samuels suffered from the loss of his property (such as the property value of the books). The main confiscation issue put forward by Samuels is not the confiscation in and of itself, but the confiscation insofar as it was the basis for the misbehavior adjudication. [15] This issue was already effectively grieved by Samuels through his direct appeal of his misbehavior determination, which *per se* implicated the confiscation of documents. Defendants argue nonetheless that any confiscation that took place is separate from the disciplinary hearing and thus must be separately grieved. The Court does not agree.

Disputes stemming from a disciplinary hearing are properly appealed directly and not through the Inmate Grievance Program. To the extent that the confiscation issue is a constituent element of the misbehavior adjudication, Samuels need not file an administrative grievance because he already sought review of the matter on his direct appeal. The recent case of *Flanagan v. Maly,* 99 Civ. 12336(GEL), 2002 WL 122921 (S.D.N.Y. Jan. 29, 2002),* is instructive. In *Flanagan,* the plaintiff brought two separate claims-one stemming from inadequate access to medical and legal resources, and one stemming from an alleged due process violation in a disciplinary hearing. The court found that the plaintiff had not exhausted all administrative remedies with regard to medical and

legal access because he failed to utilize the Inmate Grievance Program. With regard to the disciplinary hearing, however, the court held that utilization of the grievance procedures was unnecessary because the plaintiff had already appealed the issues directly:

> To require [plaintiff] to file an administrative grievance in these circumstances would be absurd, and Congress cannot have intended such a requirement. When an inmate challenges the procedure at a disciplinary hearing that resulted in punishment, he exhausts his administrative remedies by presenting his objections in the administrative appeals process, not by filing a separate grievance instead of or in addition to his ordinary appeal. Pursuit of the appellate process that the state provides fulfills all the purposes of the exhaustion requirement of [§ 1997e(a) ] [16], by giving the state an opportunity to correct any errors and avoiding premature federal litigation. Once the alleged deprivation of rights has been approved at the highest level of the state correctional department to which an appeal is authorized, resort to additional internal grievance mechanisms would be pointless.

*Flanagan,* 2002 WL 122921, at *2. While the issue referred to in *Flanagan* was a due process defect in the disciplinary hearing (not at issue here because defendants concede that Samuels exhausted all available administrative remedies), the underlying point, that issues directly tied to the disciplinary hearing which have been directly appealed need not be appealed again collaterally through the Inmate Grievance Program, is applicable to the confiscation issue. Moreover, the confiscation in the instant case is part and parcel of the misbehavior adjudication-unlike the medical claim made in *Flanagan* which was divorced from the due process claim.

**\*9** Defendants rely on a single case in support of their contention that the confiscation issue and the disciplinary hearing issue are wholly separate, *Cherry v. Selsky,* 99

2002 WL 31040370

Civ. 4636(HB), 2000 U.S. Dist. LEXIS 9451 (S.D.N.Y. July 7, 2000). It is not completely clear which section of the opinion defendants are citing, because no pinpoint citation is given. In *Cherry,* Judge Baer held that the filing of a false misbehavior report by a corrections officer is a grievable matter. *See id.* at *21. However, *Cherry* is readily distinguishable from the instant case because in *Cherry,* the plaintiff had "not brought a claim with respect to the due process afforded him at his disciplinary hearing [...]." *Id.* at *15. In contrast, Samuels makes this claim. As a consequence, the due process violations, including the allegedly wrongful confiscation (to the extent it led to the misbehavior adjudication) may be appealed directly.

Consequently, while Samuels has not exhausted his administrative remedies with regard to the injuries he suffered from the confiscation *alone,* he has exhausted his administrative remedies with regard to the injuries he suffered from the confiscation inasmuch as the confiscation of the religious materials serves as the basis for the disciplinary hearing. [17]

### 3. Special Housing Unit Confinement

Defendants similarly argue that Samuels' claim of retaliatory confinement in a special housing unit is barred because he failed to exhaust all available administrative remedies. [18] It is not entirely clear whether Samuels is making an argument based on retaliation. On one hand, he states that "Plaintiff [sic] claim is not on issue of retaliation." Samuels Aff., at ¶ 4. Elsewhere, he argues that "Plaintiff should not need to fear imposition of [special housing unit] confinement because they [sic] have engaged in prison litigation and/or prison reform activity [...]." Opposition Brief, at 25. As noted above, after being sentenced, Samuels was apparently transferred to a special housing unit for 180 days, which involves confinement for twenty-three hours per day.

Defendants represent to the Court that confinement to a special housing unit is ordinarily grievable. *See* Reply Brief, at 11. Samuels failed to bring this grievance to the Inmate Grievance Program. However, Samuels argues, and defendants do not contest, that Samuels was transferred to the special housing unit as punishment for his misbehavior adjudication, even though he was sentenced to 180 days of keeplock. Consequently, his appeal of his misbehavior adjudication necessarily implicates his sentence-not only his *de jure* punishment

of 180 days of keeplock, 180 days' loss of telephone, package, and commissary privileges, but also his *de facto* punishment of 180 days of special housing unit confinement. *See Flanagan,* 2002 WL 122921, at *2. The transfer to a special housing unit potentially implicates due process concerns. *See, e.g., Tookes v. Artuz,* 00 Civ. 4969, 2002 WL 1484391, at *3 (S.D.N.Y. July 11, 2002) (noting that in the Second Circuit, confinement in a special housing unit for more than 101 days generally implicates a liberty interest protected by the Due Process Clause).

### 4. DOCS Policy Regarding the Five Percent Nation of Gods & Earths

**\*10** Samuels makes an oblique reference to the fact that DOCS has treated members of the Five Percent Nation of Gods and Earths unfairly and partially. *See* Opposition Brief, at 3. To the extent that Samuels has a claim regarding DOCS's treatment of members of the Five Percent Nation, it is not directly tied to his disciplinary hearing and has not been grieved through the Inmate Grievance Program. Moreover, he has not taken issue with DOCS policies regarding the Five Percent Nation in his appeal. Consequently, this issue is dismissed with prejudice.

### 5. Dismissal of Action

Defendants argue that because Samuels seeks to assert certain unexhausted claims, "the entire action should be dismissed," irrespective of the fact that some claims are (as defendants concede) exhausted. Reply Brief, at 11. Defendants point to no binding precedent in support of this contention. The only New York case cited by defendants is *Radcliffe v. McGinns,* 00 Civ. 4966 (LMM), 2001 U.S. Dist. LEXIS 15528 (S.D.N.Y. Sept. 27, 2001). However, *Radcliffe* does not support defendants assertion that dismissal of some unexhausted claims mandates the dismissal of all claims, because in that case the claims were unexhausted as to *all* defendants. On that basis, the *Radcliffe* court dismissed all claims without prejudice. This Court thus does not find that dismissal of the exhausted claims is warranted.

### B. Due Process

### 1. Samuels Pleads a Valid Due Process Claim

Defendants argue that Samuels does not plead a valid due process claim, claiming that Samuels does not identify

a liberty interest, protected by the Due Process Clause, of which he was deprived. *See* Motion Brief, at 9. Defendants state that "[other] then [sic] allege that he was sentenced to keeplock and transferred to Upstate, plaintiff does not allege any facts that distinguishes [sic] the disciplinary sentence from general prison population conditions." [19] *Id.* at 9. Defendants cite *Walker v. Goord,* 98 Civ. 5217(DC), 2000 U.S. Dist. LEXIS 3501, at *22 (S.D.N.Y. Mar. 22, 2000) for the proposition that a complaint that merely alleges that a plaintiff was housed in a special housing unit does not state a due process claim. *See* Motion Brief, at 10. In fact, *Walker* 's ruling is not so sweeping. In *Walker,* the court held that to establish a liberty interest, a prisoner "must establish that the restraint imposed creates an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." ' *Walker,* at *21 (quoting *Sandin v. Conner,* 515 U.S. 472, 484 (1995)). The court also reiterated the Second Circuit's holding that there is no "bright-line rule regarding the length or type of sanction" necessary. *Walker,* at *21 (citation omitted). The prisoner must also establish that the state has granted its inmates a protected liberty interest in remaining free from that confinement or restraint. *Id.* at *21.

**\*11** Samuels is able to meet this burden. The deprivation of liberty Samuels suffered was onerous. He was moved from the inmate honor block housing unit to keeplock and then to a special housing unit. *See supra* note 11. Moreover, unlike the plaintiff in *Walker,* Samuels identifies the length of time he was punished (180 days). *See Walker,* at *22. In light of these facts, and given the length of his confinement, Samuels has met the *Sandin* test cited above. *See Tookes v. Artuz,* 00 Civ. 4969, 2002 WL 1484391, at *3 (S.D.N.Y. July 11, 2002). Additionally, the requirement of an appealable hearing, with certain procedural safeguards, *see infra,* indicates that the state has granted inmates a protected liberty interest in remaining free from keeplock and special housing unit placement.

Due process requirements for a prison disciplinary hearing are "in many respects less demanding than those for criminal prosecutions." *Espinal v. Goord,* 180 F.Supp.2d 532, 537 (S.D.N.Y.2002) (quoting *Edwards v. Balisok,* 520 U.S. 641, 647 (1997)). At the same time, "[p]rison walls do not form a barrier separating prison inmates from the protections of the Constitution." *Duamutef v. Hollins,* 297 F.3d 108, 112 (2d Cir.2002) (citation omitted). With

respect to Tier III hearings such as the one at issue here, the Fourteenth Amendment requires that:

(1) the inmate receive at least twenty-four hours written notice of the disciplinary charges against him;

(2) the inmate be permitted to call witnesses and present evidence "when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals";

(3) the inmate be judged by a fair and impartial hearing officer;

(4) the disciplinary conviction be supported by some evidence; and

(5) the inmate be provided with a written statement of fact findings that support the disposition as well as the reasons for the disciplinary action taken.

*Espinal,* 180 F.Supp.2d at 538 (citing *Wolff v. McDonnell,* 418 U.S. 539, 563-69 (1974)) (internal citations omitted)).

2. Whether Samuels Received the Process Due Him
Defendants concede that Samuels was entitled to the aforementioned rights under *Wolff. See* Reply Brief, at 13. They argue, however, that Samuels received all the procedural safeguards due him. Before analyzing defendants points in detail, the Court notes the paucity of the record before it. While Samuels has provided nearly fifty exhibits, defendants have provided only a two-page affidavit by Inmate Grievance Program Director Thomas G. Eagen dated March 13, 2002, attached to which is a nine-line computer printout of what purports to be Samuels' grievance file. Defendants have failed to submit, *inter alia,* a transcript of the disciplinary hearing, a transcript or audio recording of the confidential witness statements, a written basis for the rejection of Samuels' witnesses, or a copy of the documents that were supposedly seized from Samuels' cell. While the Court is cognizant of the fact that the instant motion is not one for summary judgment, without these and other documents, it is difficult for this Court fully to evaluate the merits of the parties' arguments. More troubling is the fact that this is apparently not the first time an inmate has been sentenced to a special housing unit on the basis of evidence which has not been preserved for judicial review. Indeed, in *Cherry v. Selsky,* 99 Civ. 4636, 2000 U.S. Dist. LEXIS 9451, at *9-

2002 WL 31040370

*12 (S.D.N.Y. July 7, 2000), a case cited by defendants, the court noted that on more than one occasion, Selsky was forced to reverse his previous decision denying an inmate's appeal because the "record of [the disciplinary] hearing was incomplete and the 'confidential tape' was 'unavailable for judicial review.' " *Id.* at *9 (citation omitted). On the occasion cited by the *Cherry* court, the inmate's record was expunged, but only after the plaintiff had served 125 days in a special housing unit. *See id.* at *9.

### a. Witnesses

**\*12** Samuels argues that his due process rights were violated because he was not permitted to call Dr. Peter-Raoul as a witness at his disciplinary hearing. *See* Complaint, at 9; Ex. V, at 2. Defendants state, without explanation, that "it is clear that the proffered testimony would have been irrelevant and redundant." Motion Brief, at 13. The Court agrees with defendants that the right of an inmate to call witnesses in his defense is not limitless. Nevertheless, prison authorities' failure to allow an inmate to call a witness may be grounds for reversal, where the authorities fail to justify their actions. *See Ayers v. Ryan,* 152 F.3d 77, 81 (2d Cir.1998). In this case, Dr. Peter-Raoul was apparently the author of some or all of the "subversive" materials and had close ties to the theological seminary program at the prison. According to Samuels, she also "assisted plaintiff with his course syllabus and provided much of the material utilized" therein. Complaint, at 9. She was therefore in a unique position to explain the appropriateness and relevance of the materials allegedly possessed by Samuels, who had in fact argued that the materials in question were issued to him through the NYTS program with the authorization of prison officials. *See, e.g.,* Complaint, at 5, Ex. V, at 2. The misbehavior hearing record sheet states that, "if any witness is denied [the opportunity to testify,] form 2176 explaining the reason for that determination must be given to the inmate and included as part of the record." Ex. O. No such form was filled out, and nowhere in the record do defendants explain or justify their exclusion of Dr. Peter-Raoul. *See* Ex. Q. Due process rights may be violated where prison authorities fail "without rational explanation" to obtain a witness requested by an inmate during a disciplinary hearing. *Ayers v. Ryan,* 152 F.3d 77, 81 (2d Cir.1998). Defendants' failure to justify their exclusion of Dr. Peter-Raoul potentially gives rise to a due process violation. [20] Dismissal is therefore inappropriate.

### b. Confidential Informant

Samuels also protests the fact that he was not furnished with statements of the confidential informant, and argues that the record is insufficient to permit an assessment of the reliability of the informant's testimony. The Second Circuit has noted that "even if due process does require a hearing officer to conduct an independent assessment of the informant's credibility, that 'would not entail more than some examination of indicia relevant to credibility rather than wholesale reliance upon a third party's evaluation of that credibility.' " *Espinal v. Goord,* 180 F.Supp.2d 532, 540 (S.D.N.Y.2002) (quoting *Russell v. Scully,* 15 F.3d 219, 223 (2d Cir.1993)). In the instant case, the lack of a full record does not permit the Court to determine whether Irurre, the presiding officer at the Tier III hearing, made the required "examination of indicia relevant to the credibility of the confidential informant[ ], whether by an independent assessment or otherwise." *Espinal,* 180 F.Supp.2d at 540. Consequently, dismissal is inappropriate, because it is uncertain whether Samuels' punishment was supported by constitutionally sufficient evidence.

### c. Assistance Provided by the Employee Assistant

**\*13** Samuels claims that his employee assistant, Cecilia, violated his due process rights by, *inter alia,* failing to explain the charges against Samuels, failing to provide Samuels with documentary evidence relating to the charges in the misbehavior report, failing to make a written record of the questions he asked the interviewees, failing to record the testimony of the witnesses he allegedly interviewed for Samuels, failing to interview the confidential informant on Samuels' behalf, and failing to interview one of the three witnesses requested by Samuels. *See* Complaint, at 9; Opposition Brief, at 22. Samuels also complains that his employee assistant did not assist in his defense but instead interrogated him about his alleged links to prison reform activists. *See* Ex. V, at 5-6.

Defendants concede that inmates have a limited right to assistance in misbehavior proceedings. *See Silva v. Casey,* 992 F .2d 20, 22 (2d Cir.1993) (per curiam). While defendants are correct in asserting that inmates do not have the right to appointed or retained counsel at a misbehavior hearing, *see Wolff v. McDonnell,* 418 U.S. 539, 570 (1974), they do have a right to assistance in "certain circumstances [in which they] will be unable to 'marshal evidence and present a defense' [...]." *Silva,*

992 F.2d at 22. Such situations include where the inmate is confined pending a superintendent's hearing. *See* N.Y. Comp.Codes R. & Regs. tit. 7, § 251-4.1(a)(4). The Green Haven Notice of Assistance form given to Samuels specifically states that an "inmate shall have the opportunity to pick an employee from established lists of persons who shall assist the inmate when a Misbehavior Report has been issued against the inmate if [...] [t]he inmate is keeplocked or confined to a special housing unit and is unable to prepare his defense." Ex. J. In the instant case, Samuels was entitled to an employee assistant because he was keeplocked immediately after the search of his cell and was unable to prepare his defense.

As noted, Samuels makes broad assertions as to the deficiency of his employee assistant. *See* Ex. V, at 3-8. Based on Samuels' factual assertions, it is possible that employee assistant Cecilia failed to provide even the "limited" assistance to which Samuels is entitled. [21] Such a failure potentially implicates Samuels' due process rights. *See* Ayers v. Ryan, 152 F.3d 77, 80-81 (2d Cir.1998). Because the instant motion requires that the Court accept Samuels' allegations as true, dismissal is inappropriate.

### d. Actions of the Hearing Officer

With respect to the hearing officer, Irurre, Samuels makes a variety of claims, including the fact that Irurre prohibited Samuels from calling various witnesses and that he was partial. The Court has not been furnished with a copy of the hearing transcript. Because Samuels' claims potentially implicate constitutional rights, and because any holding on this issue requires that the Court make factual determinations, dismissal is inappropriate.

### e. Timeliness of the Hearing

**\*14** Samuels claims that his due process rights were violated because his misbehavior hearing was held eight days after Samuels was confined following the search of his cell. Where an inmate is confined pending a disciplinary hearing (as was the case here), the hearing must be held within seven days of the confinement unless a later date is authorized by the commissioner or his designee. *See* N.Y. Comp.Codes R. & Regs. tit. 7, § 251-5.1(a). In this case, Samuels' rights were not violated. The search took place on October 20, 1999, and the hearing occurred on October 27, 1999. Under § 251-5.1, the date of the incident is generally excluded. *See, e.g.,* Harris v. Goord, 702 N.Y.S.2d 676 (N.Y.App. Div.3d

Dep't 2000) (holding that the fourteen-day period in § 251-5.1(b), which runs from the date of the writing of a misbehavior report, is calculated by excluding the day the report is written). Thus, Samuels' hearing was held within seven days of his detention. Moreover, as Samuels admits, prison officials sought and received permission to begin the hearing on October 27, 1999, as per the requirements of § 251-5.1(a). *See* Ex. L. For these reasons, Samuels' claim with regard to the timeliness of his hearing is dismissed.

### f. Notice

Defendants reject Samuels' argument that he received inadequate notice of the charges against him. It is unclear from the record what notice Samuels received, either before or during the disciplinary hearing. While the Court is cognizant of the fact that inmates are entitled to fewer due process rights than other citizens, it is possible to read Samuels' allegations as presenting a valid due process claim. The Court notes, for instance, that inmate rule 104.12 provides that "[i]nmates shall not lead, organize, participate, or urge other inmates to participate in work-stoppages, sit-ins, lock-ins, or other actions which may be detrimental to the order of the facility." N.Y. Comp.Codes R. & Regs. tit. 7, § 270.2(B)(5)(iii). The Appellate Division has held that possession of threatening materials alone does not violate the rule because the inmate must actually lead, organize, participate, or urge other inmates to participate, and not merely intend to do so. *See, e.g.,* Abdur-Raheem v. Goord, 665 N.Y.S.2d 152, 153 (N.Y.App. Div. 4th Dep't 1997). While Samuels may have possessed the documents, it is unclear whether he received any notice of how he allegedly led, organized, or participated in (or urged others to participate in) a prohibited activity. Because the determination hinges on a factual determination, dismissal is inappropriate.

### C. Retaliation

Samuels alleges that his misbehavior adjudication was based on the prison authorities' perception that members of the NYTS were behind the planned Y2K protest. *See* Complaint, at 3-6. Samuels alleges that the materials seized were not subversive and were of a Christian nature. Defendants move to dismiss the retaliation argument, arguing that the prison authorities' decision is entitled to deference. While this may be true, such deference is inappropriate on a motion to dismiss, particularly given the paucity of the record. Without, for example,

a transcript of the hearing, a transcript of the testimony of the confidential informant, or a copy of the allegedly subversive documents, the Court cannot blindly defer to the prison authorities. Consequently, dismissal is inappropriate. Defendants also argue that "even if it was improper to discipline plaintiff for possession of contraband, the evidence of plaintiff's involvement in the unauthorized demonstration provided a valid non-retaliatory basis for the disciplinary sanction and transfer." Reply Brief, at 19. This argument is incorrect for two reasons. First, the argument ignores the fact that the contraband documents and testimony of the confidential informant provide the basis for the prison authorities' finding that Samuels was involved in the demonstration. None of these documents is in the record before the Court; thus deference is inappropriate. Second, this argument ignores the fact that Samuels' punishment was ultimately based on the fact that he had violated two rules. His prison file reflects a guilty adjudication on two counts; also, had Samuels been disciplined for violating only one rule, his penalty would likely have been less.

    D. Personal Involvement
    **\*15** Defendants correctly note that liability of supervisory officials under 42 U.S.C. § 1983 may not be premised on the doctrine of *respondeat superior. See, e.g., Poe v. Leonard,* 282 F.3d 123, 140 (2d Cir.2002); *Emblen v. Port Auth. of New York/New Jersey,* 00 Civ. 8877(AGS), 2002 WL 498634, at \*10 (S.D.N.Y., Mar. 29, 2002). Consequently, a defendant's personal involvement in the alleged constitutional violation is required. *See, e.g., Monell v. New York City Dep't of Soc. Servs.,* 436 U.S. 658, 690-95 (1978). Such personal involvement may be proven in a number of ways:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates

by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995). The Court examines the alleged personal involvement of each defendant in turn.

    1. Donald Selsky
Defendants concede Donald Selsky, Director, Special Housing/Inmate Disciplinary Program, was personally involved in the alleged due process violations cited by Samuels. The Court notes that Selsky, acting "on behalf of the commissioner," reviewed and affirmed Samuels' superintendent's hearing and denied Samuels' appeal. Ex. 6, V.

    2. Glenn Goord
Defendants argue that Glenn Goord, DOCS Commissioner, has no personal involvement in this case, and that the only link to him in this action is a newspaper article. *See* Reply Brief, at 20-21. This is incorrect, however, since the denial of Samuels' appeal was written by Selsky on behalf of Goord. As noted, defendants concede Selsky's involvement. Goord had a duty to supervise his subordinate who purportedly acted in his name. [22] Without further evidence, the Court cannot say as a matter of law that Goord was not personally involved, since personal involvement can include gross negligence "in supervising subordinates who committed the wrongful acts." *Colon,* 58 F.3d at 873.

    3. Paul Cecilia
Defendants concede Paul Cecilia's personal involvement.

    4. Javier Irurre
Defendants concede Javier Irurre's personal involvement.

    5. Sergeant Schwartzman
Defendants concede Sergeant Schwartzman's personal involvement.

    6. Dennis Bliden

2002 WL 31040370

Defendants allege that Samuels never argues that Bliden had the ability to remedy the alleged constitutional violation. However, Bliden wrote to Samuels in response to his appeal of the misbehavior adjudication, stating, "You may appeal this hearing to the Commissioner in Albany. Until such time as we receive a decision from this office, *I will not modify the disposition.*" Ex. U (emphasis added). Significantly, Bliden did not state that he *could* not modify the disposition but stated that he *would* not. This provides at least *prima facie* evidence that Bliden had the authority to overturn the disposition. While further facts may reveal this to be untrue, at this stage dismissal is inappropriate.

### 7. Jeffery McKoy

**\*16** Samuels fails to provide any support for McKoy's personal involvement in this action. Indeed, in responding to one of Samuels' appeals, McKoy wrote that "I do not have the authority to overturn Tier 3 dispositions." Ex. R. McKoy does not appear to have been complicit in any alleged deprivation of Samuels' rights, and, in contrast to Bliden, he plainly lacked the authority to overturn the misbehavior adjudication. Consequently McKoy was not personally involved in the matter and all claims against him are dismissed.

### 8. Christopher P. Artuz

Christopher P. Artuz is Green Haven's Superintendent. Samuels states that his involvement stems from his failure to respond to a note sent to him. Although the note to Artuz does not appear to be in the record before the Court, it is referenced in a note from Bliden to Samuels. *See* Ex. T ("This is in response to your memo of November 12, 1999 to Superintendent Artuz"). Samuels also alleges that Artuz failed to respond when contacted by Dr. Peter-Raoul and Dr. Webber, who sought to intervene on Samuels' behalf. *See* Opposition Brief, at 27. While it is not clear that Artuz was personally involved, the question of Artuz's involvement in this matter is a factual question. In such cases, dismissal should be denied. As the Second Circuit noted in *Williams v. Smith,* 781 F.2d 319, 324 (2d Cir.1986), "even if [the prison superintendent] did not actively affirm the conviction on administrative appeal, we cannot say, on this record, that as Superintendent [of the prison] he was not directly responsible for the conduct of prison disciplinary hearings [...]."

### E. Qualified Immunity

Defendants move to dismiss this action based on the qualified immunity of defendants. As defendants correctly point out, government employees are generally immune from liability for civil damages "when their conduct does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Duamutef v. Hollins,* 297 F.3d 108, 111 (2d Cir.2002) (citation omitted). As a preliminary matter, it should be noted that qualified immunity is only a defense to claims for money damages and are not a defense for equitable relief or injunctions. *See, e.g., Charles W. v. Maul,* 214 F.3d 350, 360 (2d Cir.2000). To the extent that Samuels seeks equitable relief, defendants' potential claims of qualified immunity are no bar.

The Court is unable to determine at this time whether the remaining defendants are entitled to qualified immunity in this case. The reason is that without having basic documentary evidence, including a transcript of the disciplinary hearing, a transcript of the testimony of the confidential informant, and the documents allegedly seized from Samuels' cell, the Court cannot determine whether these defendants violated Samuels' clearly established constitutional or statutory rights. Because it is a fact-intensive question, it cannot be disposed of at this stage.

### V. Conclusion

**\*17** For the reasons set forth above, defendants' motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(1) and (6) is DENIED with respect to defendants Selsky, Goord, Cecilia, Irurre, Schwartzman, Bliden, and Artuz. Defendants' motion is GRANTED with respect to Jeffery McKoy, and with respect to the issue of DOCS policy regarding the Five Percent Nation of Gods and Earths and with regard to the timeliness of Samuels' misbehavior hearing.

SO ORDERED.

### All Citations

Not Reported in F.Supp.2d, 2002 WL 31040370

Footnotes

1    Defendants repeatedly state that the events giving rise to this action arose while Samuels was incarcerated at the Great Meadow Correctional Facility. Samuels states that the events in question happened at the Green Haven Correctional Facility. Moreover, Samuels' evidence, including the Inmate Disciplinary Report (Exhibit H), the Disciplinary Hearing Record Sheet (Exhibit O), and the Superintendent Hearing Disposition Report (Exhibit P) all note the Green Haven Correctional Facility. In light of the above, the Court determines that defendants' position that the events occurred at Great Meadow is incorrect. The Green Haven Correctional Facility is located in Dutchess County in the Southern District, while Great Meadow is located in Washington County in the Northern District. Defendants make no argument regarding the Court's jurisdiction with respect to the location of the events in question.

2    Unless otherwise indicated, the facts set forth below are gleaned from Samuels' submissions, because on a FED. R. CIV. P. 12(b)(1) or (6) motion, the adjudicating court must assume as true factual allegations made in the complaint. Defendants concede this fact. *See* Defendants' Memorandum of Law in Support of their Motion to Dismiss the Complaint, at 4. It should also be noted that Samuels brings this action *pro se.* As such, it is sometimes difficult to understand fully his contentions. Accordingly, the Court reads the (sometimes confusing) factual allegations in the light most favorable to Samuels.

3    The website of the University of Chicago's Divinity School provides a good summary of the beliefs of the adherents of the Five Percent Nation of Gods and Earths, commonly known as the "Five Percenters." *See* Jonathan Moore, *The Five Percenters: Racist Prison Gang or Persecuted Religion?,* SIGHTINGS, May 21, 1999, *available at* http://divinity.uchicago.edu/sightings/archive_1999/sightings-052199.html. The name of the group stems from its belief that only five percent of people are aware of and teach the truth. The term "Gods" refers to black male members; "Earths" refer to black female members. The group was founded by Clarence 13X, who left the Nation of Islam in 1964. According to Moore, "[m]any of the theological accoutrements of Black Muslim belief remain: many read the Qur'an and Elijah Muhammad's writings (especially his "Message to the Black Man"), and they hold to the exclusive divinity of black men." *Id.* (The Moore article, not part of the record, is provided for background purposes only). Samuels has included two pages outlining the differences between the Nation of Gods and Earths and similar black Muslim groups-the Nation of Islam and the Temple of Islam. *See* Exhibit B.

4    *See supra* note 1.

5    While denying a link to the Y2K protest, Samuels provides some background on the matter. According to Samuels, DOCS created a program at Green Haven through the Corcraft Industry Division Program known as the Recreational Cell Building Project ("Project"). The Project initially used inmate volunteers to build Inmate Recreational Cells at recently constructed S-Facilities (special housing institutions). According to Samuels, because of poor working conditions, low wages, and other factors, inmates increasingly refused to volunteer for the Project and sought other work assignments. Samuels alleges that DOCS personnel then began using the disciplinary process to systematically force inmates to work in the Project. *See* Complaint, at 3. Samuels also alleges that prison officials specifically targeted members of the NYTS and the Five Percent Nation of Gods and Earths for compelled work participation in the Project. *See id.* at 4. The planned Y2K protest, in which Samuels claims to have played no role, was intended to protest the program as well as prison conditions generally.

6    The Kairos Statements (referred to by Samuels as "Karios Statements") are critiques of traditional church dogma. The most famous Kairos statement originated as a critique of alleged church complicity in the white *apartheid* regime in South Africa.

7    *See* N.Y. Comp.Codes R. & Regs. tit. 7, § 251-4.1 (2002):(a) An inmate shall have the opportunity to pick an employee from an established list of persons who shall assist the inmate when a misbehavior report has been issued against the inmate if [...] (4) the inmate is confined pending a superintendent's hearing [...].

8    Samuels cites a number of failures on Cecilia's behalf: he failed to turn over documentary evidence relating to the charges against Samuels, he failed to provide a written record of the questions he was supposed to ask Samuels' witnesses, he failed to record the testimony of the witnesses interviewed on Samuels' behalf, he failed to explain exactly what material that was confiscated constituted contraband, and he failed to interview the confidential informant to determine his existence or credibility. *See* Complaint, at 9.

9    Tier III hearings are held for "the most serious violations of institutional rules." *Walker v. Bates,* 23 F.3d 652, 654 (2d Cir.1994).

10   The name "Javier Irurre" appears on the Hearing Disposition form. *See* Ex. P. Samuels spells the name "Iurrue," *see* Complaint, at 9, while defendants in turn use two spellings for the name-"Iurre" and "Iurrue *See* Motion Brief, at 3. The

2002 WL 31040370

Court uses the "Irurre" spelling found on the Hearing Disposition form, apparently in Javier Irurre's own handwriting, and on the Tier III assignment form signed by Superintendent Artuz. *See* Appendix 7.

11    Placement in a special housing unit involves confinement for twenty-three hours per day. The inmates assigned to special housing units receive virtually no programming, no congregate activities, and very little natural light. Reading materials are severely restricted, as are visits. *See* Ex. 16, at 5-6 (THE NEW YORK STATE SENATE DEMOCRATIC TASK FORCE ON CRIMINAL JUSTICE REFORM, CRIMINAL JUSTICE REFORM: A TIME THAT'S COME (2001)).

12    Prisoners' Legal Services of New York cite the date as January 20, 2000. *See* Ex. 7; Samuels cites the date as January 20, 1999. *See* Ex. 6.

13    No Appellate Division decision on the matter is in the record. However, defendants' argument on the exhaustion of remedies focuses on administrative remedies and not on this potential deficiency.

14    In his complaint, Samuels also alleged an Eighth Amendment violation stemming from his treatment during a trip to and from his brother's funeral. This claim was dismissed by order of Judge Mukasey dated September 4, 2001.

15    The real damage suffered by Samuels was, *inter alia,* his 180 days in keeplock (and later a special housing unit).

16    The district court mistakenly cites the provision as " § 1997a(e)," a nonexistent section.

17    The confiscation of Samuels' documents is not an ancillary issue unrelated to the disciplinary hearing (as was Samuels' Eighth Amendment argument, *see supra* note 14). Instead, the allegedly improper confiscation of materials is part and parcel of the disciplinary proceeding. The primary harm suffered by Samuels of the confiscation was not the value of the documents seized (which is never mentioned by Samuels) but the fact that the confiscation of allegedly harmless materials led to his confinement in keeplock and later in a special housing unit for 180 days.

18    There are two separate retaliation issues at play in this action. The first, discussed here, is Samuels' claim of retaliatory confinement in a special housing unit. The second, discussed below, is Samuels' claim that the misbehavior adjudication itself was a form of retaliation for the NYTS's opposition to the Cell Building Project. *See supra* note 5.

19    As noted *supra,* Samuels was also sentenced to 180 days' loss of packages, telephone, and commissary privileges.

20    Samuels also appears to allege that Cecilia, his employee assistant, was not permitted to testify on Samuels' behalf, and that Schwartzman testified outside Samuels' presence. *See* Ex. V, at 4; Plaintiffs' Supplemental Memorandum of Law and Reply Memorandum of Law in Further Support of Plaintiffs' Motion to Stay Complaint, at 8.

21    By statute, the "assistant's role is to speak with the inmate charged, to explain the charges to the inmate, interview witnesses and to report the results of his efforts to the inmate. He may assist the inmate in obtaining documentary evidence or written statements which may be necessary. The assistant may be required by the hearing officer to be present at the disciplinary or superintendent's hearing." N.Y. Comp.Codes R. & Regs. tit. 7, § 251-4.2. While failure to adhere to regulations does not itself give rise to a claim under 42 U.S.C. § 1983, it may constitute evidence of a constitutional deprivation. *See, e.g., Duckett v. Ward,* 458 F.Supp. 624, 627 (S.D.N.Y.1978).

22    Whereas the doctrine of *respondeat superior* involves the legal assignment of liability to a supervisor for the acts of a subordinate, the instant case involves a subordinate who claims to be (and legally is) acting in the name of his supervisor.

---

**End of Document**                                                                              © 2018 Thomson Reuters. No claim to original U.S. Government Works.

Case 9:17-cv-01158-MAD-DEP    Document 28    Filed 11/02/18    Page 87 of 101
Shepherd v. Lempke, Not Reported in Fed. Supp. (2017)
2017 WL 1187859

2017 WL 1187859
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Eon SHEPHERD, Plaintiff,
v.
Superintendent LEMPKE, et al., Defendants.

9:10-CV-1524
|
Signed 03/30/2017

**Attorneys and Law Firms**

George H. Lowe, Upnit Kaur Bhatti, Bond, Schoeneck
Law Firm, Syracuse, NY, for Plaintiff.

Eon Shepherd, Romulus, NY, pro se.

Cathy Y. Sheehan, New York State Dept. of Corrections,
Auburn, NY, Oriana L. Carravetta, New York State
Attorney General, Albany, NY, for Defendants.

### DECISION & ORDER

THOMAS J. McAVOY, Senior United States District
Judge

## I. INTRODUCTION

**\*1** This *pro se* action brought pursuant to 42 U.S.C.
§ 1983 was referred to the Hon. David E. Peebles,
Chief United States Magistrate Judge, for the purpose of
holding an evidentiary hearing and issuing a report and
recommendation addressing exhaustion of administrative
remedies. In his October 28, 2016 Report and Re
commendation, Dkt. No. 252, Magistrate Judge Peebles
provides a thorough review of the numerous claims in
this matter that are based on events occurring between
April 2008 and November 2010 at five separate prison
facilities operated by the New York State Department of
Corrections and Community Supervision ("DOCCS"), [1]
and of the procedural history of this case. [2] Magistrate
Judge Peebles also placed the claims potentially implicated
by defendants' exhaustion defense, together with the
circumstances surrounding plaintiff's efforts to exhaust
available administrative remedies, into four groupings,
"each of which includes common circumstances insofar as
exhaustion is concerned." Rep. Rec. p. 13.

Based upon the evidence adduced at the hearing,
Magistrate Judge Peebles recommends:

(1) The following claims should be deemed exhausted and
remain pending for trial:

| Claim No. | Defendant | Nature of Claim | Facility | Amended Complaint ¶ |
|---|---|---|---|---|
| 3 | Artus | Medical Indifference | Clinton | 31, 104-05, 108-09 |
| 4 | Artus | Religious Interference | Clinton | 31, 104-05, 108-09 |
| 13 | Carlee | Retaliation | Five Points | 18 |
| 15 | Cioffa | Excessive Force | Five Points | 19, 20 |
| 16 | Colvin | Excessive Force | Upstate | 86, 105, 108 |
| 17 | Colvin | Religious | Upstate | 86, 105, 108 |
| 18 | Colvin | Retaliation | Upstate | 86, 105, 108 |
| 19 | Cunningham | Due Process | Green | 107 |
| 20 | Evans | Excessive Force | Five Points | 20 |
| 23 | Jones | Failure to Protect | Five Points | 21 |
| 26 | Lempke | Excessive Force | Upstate | 86, 105, 108 |

Case 9:17-cv-01158-MAD-DEP    Document 28    Filed 11/02/18    Page 88 of 101

Shepherd v. Lempke, Not Reported in Fed. Supp. (2017)
2017 WL 1187859

| 27 | Lempke | Religious | Upstate | 86, 105, 108 |
| 28 | Lempke | Retaliation | Upstate | 86, 105, 108-09 |
| 32 | Prebalick | Retaliation | Five Points | 19-22 |
| 34 | Prebalick | Excessive Force | Five Points | 35 |
| 35 | Ramus | Due Process | Five Points | 107 |

**\*2** (2) The following claims proceed to trial based on the parties' failure to address them in connection with defendants' exhaustion defense:

| Defendant | Cause of Action | Prison Facility |
| --- | --- | --- |
| Amatucci | Medical Indifference | Downstate |
| Barber | Failure to Protect | Five Points |
| N. Bezio | Due Process | DOCCS Hq. |
| Cambria | Excessive Force | Unknown |
| Chesbrough | Retaliation | Upstate |
| Holmes | Retaliation | Upstate |
| Rock | Religious Interference | Upstate |
| Lashway (formerly sued asHawthorne) | Medical Indifference | Clinton |

(3) The following claims should be dismissed based upon plaintiff's representation that they are not being asserted in this action:

| Claim No. | Defendant | Nature of Claim | Facility | Amended Complaint ¶ |
| --- | --- | --- | --- | --- |
| 10 | Bower | Failure to Protect | Five Points | 15 |
| 11 | Bower | Retaliation | Five Points | 15 |
| 1 | Evans | ReligiousInterfer. | Five Points | |

(4) The following claims should be dismissed based upon the fact that complete exhaustion occurred only after this action was filed:

| Claim No. | Name | Nature of Claim | Facility | Amende Complaint ¶ |
| --- | --- | --- | --- | --- |
| 6 | Belsio | Religious Interference | Upstate | 41, 42 |
| 8 | Atkinson | Retaliation | Upstate | 90, 91 |

Case 9:17-cv-01158-MAD-DEP    Document 28    Filed 11/02/18    Page 89 of 101

Shepherd v. Lempke, Not Reported in Fed. Supp. (2017)
2017 WL 1187859

| 25 | Lashway | Medical Indifference | Clinton | 75, 76 |
| 31 | Prebalick | Religious Interference | Five Points | 35 |
| 36 | Rowe | Failure to Protect | Upstate | 43 |
| 37 | Rozwell | Excessive Force | Upstate | 43 |
| 38 | Rozwell | Religious Interference | Upstate | 43 |

(5) The following claims should be dismissed based upon plaintiff's failure to fully exhaust them:

| Claim No. | Name | Nature of Claim | Facility | Amended Complaint ¶ |
| --- | --- | --- | --- | --- |
| 5 | Belsio | Excessive Force | Upstate | 41, 42 |
| 7 | Belsio | Religious Interference | Upstate | 41, 42 |
| 9 | Bower | Excessive Force | Five Points | 15 |
| 12 | Carlee | Religious Interference | Five Points | 34 |
| 14 | Carlee | Excessive Force | Five Points | 34 |
| 22 | Fairchild | Retaliation | Upstate | 92 |
| 24 | Jones | Medical Indifference | Five Points | 87 |
| 29 | Menard | Excessive Force | Clinton | 28 |
| 30 | Menard | Religious Interference | Clinton | 28 |
| 33 | Prebalick | Excessive Force | Five Points | 16 |

and,

(6) The matter should be set down for trial involving the remaining claims.

Plaintiff filed objections through appointed counsel, Dkt. No. 253, and on a *pro se* basis, Dkt. No. 255; and defendants filed objections. Dkt. No. 254.

## II. STANDARD OF REVIEW

When objections to a magistrate judge's report and recommendation are lodged, the district court makes a "*de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *See* 28 U.S.C. § 636(b)(1); *see also United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997) (The Court must make a *de novo* determination

to the extent that a party makes specific objections to a magistrate's findings.). General or conclusory objections, or objections which merely recite the same arguments presented to the magistrate judge, are reviewed for clear error. *Farid v. Bouey*, 554 F. Supp. 2d 301, 306 n. 2 (N.D.N.Y. 2008); *see Frankel v. N.Y.C.*, 2009 WL 465645 at *2 (S.D.N.Y. Feb. 25, 2009). After reviewing the report and recommendation, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b).

## III. DISCUSSION

### a. Plaintiff's Objections

Shepherd v. Lempke, Not Reported in Fed. Supp. (2017)

2017 WL 1187859

Case 9:17-cv-01158-MAD-DEP    Document 28    Filed 11/02/18    Page 90 of 101

### 1. Post-Commencement Exhaustion

**\*3** Plaintiff objects through counsel and on a *pro se* basis to Magistrate Judge Peebles's conclusion that plaintiff's claims that were exhausted after the action was commenced but before an amended complaint was filed ("Group Two", Claim Nos. 6, 36, 37 and 38) are nonetheless unexhausted under the holding of *Neal v. Goord*, 267 F.3d 116, 121-22 (2d Cir. 2001), *abrogated in part on other grounds by Porter v. Nussle*, 534 U.S. 516 (2002). Plaintiff argues that although the Second Circuit stated in *Neal* that "exhausting administrative remedies after a complaint is filed will not save a case from dismissal," the Circuit's decision did not specifically address situations where, as here, a claim is exhausted after commencement but prior to the filing of an amended complaint. Pl. Obj., p. 2. The Court finds no basis to reject Magistrate Judge Peebles's conclusion in this regard.

As Magistrate Judge Peebles explained:

> It is not clear from the court's decision in *Neal* that the plaintiff had included new claims in his amended complaint that were not asserted in his original complaint. In his *amicus curiae* brief to the Second Circuit, however, the New York State Attorney General explained that the plaintiff's amended complaint included newly asserted deliberate medical indifference causes of action that were not originally pleaded. Amicus Brief, *Neal v. Goord*, 267 F.3d 116 (2d Cir. 2001) (No. 99-0253), 2001 WL 34121400, at \*2-4. The Second Circuit affirmed the district court's dismissal of all of the plaintiff's claims, including the deliberate medical indifference causes of action, because none of them had been fully exhausted by the time the plaintiff filed his original complaint. *Neal*, 267 F.3d at 121-23.

Rep. Rec. p. 21, n. 16.

Thus, Magistrate Judge Peebles concluded that "[w]hile some circuits analyzing this fact pattern have permitted plaintiffs to litigate the causes of action that were newly included in an amended complaint and fully exhausted by the time the plaintiffs filed the amended complaint, the Second Circuit squarely addressed those facts in *Neal* and concluded otherwise." *Id.* p. 22 (citing *Rhodes v. Robinson*, 621 F.3d 1002 (9th Cir. 2010); *Barnes v. Briley*, 420 F.3d 673 (7th Cir. 2005)). The Court agrees with Magistrate Judge Peebles's conclusion. Moreover, the courts in this District have almost uniformly held that "a post-exhaustion amendment of the complaint cannot cure an exhaustion defect existing at the time the action was commenced." *Guillory v. Haywood*, 2015 WL 268933, \*11 (N.D.N.Y. Jan. 21, 2015) (citing *Neal*, 267 F.3d at 122) (other citation omitted); *see Thousand v. Corrigan*, 2017 WL 1093275, at \*3 (N.D.N.Y. Mar. 23, 2017)(quoting *Guillory*); *Reid v. Marzano*, 2017 WL 1040420, at \*2 (N.D.N.Y. Mar. 17, 2017)(quoting *Guillory*); *Kearney v. Gebo*, 2017 WL 61951, at \*2 (N.D.N.Y. Jan. 4, 2017)(quoting *Guillory*); *Toliver v. Fischer*, 2016 WL 3351974, at \*4 (N.D.N.Y. Mar. 22, 2016)(quoting *Guillory*), report and recommendation adopted *sub nom. Toliver v. Stefinik*, 2016 WL 3349316 (N.D.N.Y. June 15, 2016); *Klein v. Fischer*, 2015 WL 5174031, at \*19 (N.D.N.Y. Sept. 2, 2015) ("Furthermore, a post-exhaustion amendment of the complaint cannot cure an exhaustion defect existing at the time the action was commenced.")(citing *Kasiem v. Switz*, 756 F. Supp.2d 570, 575 (S.D.N.Y. 2010) in turn citing *Neal*, 267 F.3d at 122); *see also Stimpson v. Comm'r Correction Off.*, 2017 WL 326314, at \*2 (D. Conn. Jan. 23, 2017).[3] The Court finds that under *Neal*, post-exhaustion amendment of the complaint does not cure an exhaustion defect existing at the time the action was commenced. Thus, plaintiff's objection on this ground is overruled.

### 2. Challenge to Credibility Assessment

**\*4** With respect to Groups 3 and 4, Magistrate Judge Peebles recommended dismissal of claim nos. 5, 7, 9, 12, 14, 24, 29, 30 and 33, because he did not find plaintiff's testimony relative to exhaustion of those claims to be credible. Rep. Rec. at 26, *see id.*, pp. 24-26.[4] Plaintiff argues through counsel that because the Court must conduct a *de novo* determination when objections are filed, the Court has discretion to conduct its own hearing in order to make its own assessment of credibility.

Shepherd v. Lempke, Not Reported in Fed. Supp. (2017)

2017 WL 1187859

Plaintiff himself, in his *pro se* submission, also challenges Magistrate Judge Peebles's credibility determinations, arguing that all of his testimony should have been deemed credible.

**\*5** Neither plaintiff's counsel nor plaintiff himself has presented sufficient reasons for the Court to exercise its discretion and conduct its own hearing. Because Magistrate Judge Peebles was in a position to view plaintiff's testimony and assess his credibility based on his demeanor and in light of the other evidence presented in the case, *see* Rep. Rec. 24-26, and because plaintiff has not presented sufficient reasons to conclude that Magistrate Judge Peebles erred in his credibility determination, the Court adopts those determinations and overrules plaintiff's objection on this ground.

### 3. Burden of Proof

Plaintiff argues in his *pro se* submission that Magistrate Judge Peebles improperly placed the burden upon him to prove that he exhausted his administrative remedies. There is no merit to this contention. As Magistrate Judge Peebles explained, the Prison Litigation Reform Act imposes several restrictions on the ability of prisoners to maintain federal civil rights actions, including a mandatory requirement that the inmate exhaust his administered of remedies. While exhaustion is a condition precedent to bringing suit by an inmate, Magistrate Judge Peebles indicated that "[i]n the event *a defendant establishes* that the inmate plaintiff failed fully comply with the administrative process prior to commencing an action in federal court, the plaintiff's complaint is subject to dismissal." Rep. Rec., p. 8 (emphasis added). In light of this statement clearly placing the burden on the defendants to establish plaintiff's failure to comply with administrative exhaustion procedures, plaintiff's objection on the ground that he was required to prove exhaustion in the first instance is disingenuous. The objection is overruled.

### b. Defendants' Objections

#### 1. Claim 4 against Artus

Claim 4 is a religious freedom claim in Group One against defendant Artus stemming from incidents spanning from

October-December 2009 at Clinton Correctional Facility. Defendants argue that because plaintiff's grievance list from 2009 at Clinton Correctional Facility reveals only two grievances, neither of which asserted denial of religious freedom, he could not have exhausted his administrative remedies on this claim. Def. Mem. Law, p. 2. For the reasons that follow, the objection is overruled.

Magistrate Judge Peebles addressed defendants' contention that plaintiff failed to exhaust the available administrative remedies against defendant Artus (as well as against defendants Colvin and Lempke) on the Group One claims because plaintiff did not file any grievances that specifically identified Artus or complained of his conduct. In denying the argument, Magistrate Judge Peebles correctly recognized that "the weight of authority ... suggests that inmate-plaintiffs need not file grievances identifying particular individuals or articulating a particular theory of liability (much less specifically grieve a supervisor theory of liability)." Rep. Rec. p. 19 (citing, *inter alia*, *Brownell v. Krom*, 446 F.3d 305, 310 (2d Cir. 2006)("In determining whether exhaustion has been achieved, we have drawn an analogy between the contents of an administrative grievance and notice pleading, explaining that as in a notice pleading system, the grievant need not lay out the facts, articulate legal theories, or demand particular relief. All the grievance need do is object intelligibly to some asserted shortcoming.")(interior quotation marks and alteration omitted)). However, Magistrate Judge Peebles also indicated in a footnote: "In attacking the claims falling into group one, defendants have not argued that plaintiff failed to file grievances regarding the underlying constitutional deprivations. Accordingly, I have not scoured the available record to determine whether plaintiff did, in fact, file grievances addressing those violations." Rep. Rec. p. 19, n. 15. Thus, defendants appear to be raising an issue that was not presented to Magistrate Judge Peebles.

**\*6** While the question of "[w]hether a party may raise a new legal argument ... for the first time in objections to [a magistrate judge's report and recommendation] has not yet been decided in this Circuit, ... [s]ome courts in this circuit have stated, as a general matter, that a 'party waives any arguments not presented to the magistrate judge.' *Levy v. Young Adult Institute, Inc.*, 2015 WL 1958889, at \*4 (S.D.N.Y. Apr. 30, 2015). Other courts have held that district courts should not consider belatedly

2017 WL 1187859

made arguments because doing so negates "efficiencies gained through the Magistrates Act and would permit litigants to change tactics after the issuance of [a report and recommendation]." *Amadasu v. Ngati*, 2012 WL 3930386, at *5 (E.D.N.Y. Sept. 9, 2012). District Judge D'Agostino has held that "[l]egal arguments may not be raised for the first time in an objection." *Lewyckyj v. Colvin*, 2014 WL 3534551, at *2 (N.D.N.Y. July 17, 2014)(citing *Abu–Nassar v. Elders Futures. Inc.*, 1994 WL 445638, *5 n. 2 (S.D.N.Y. Aug. 17, 1994))("If the Court were to consider ... untimely contentions, it would unduly undermine the authority of the Magistrate Judge by allowing litigants the option of waiting until a Report is issued to advance additional arguments.").

The Court finds that the defendants have waived the argument that plaintiff's grievances from 2009 at Clinton Correctional Facility failed to assert the basis of a denial of religious freedom claim against Artus. Defendants could have raised the argument before Magistrate Judge Peebles who conducted an extensive review of the claims in this matter and a thorough fact-finding hearing. To allow defendants to raise the matter now would undermine the authority of Magistrate Judge Peebles, negate the judicial efficiencies gained through the report and recommendation procedure, and seemingly allow defendant to raise a new argument in a forum that does not ordinarily invite adversarial responses. Moreover, defendants failed to attach to their objections the two grievances to which they refer, nor do they point the Court to where in the record the grievances could be found. Thus, efficiency and fairness does not militate in favor of considering the matter now. Still further, the defendants fail to provide any reason why the issue was not raised before Magistrate Judge Peebles, and the Court does not find that manifest injustice will result if the new argument is not considered. Accordingly, defendants' objection in this regard is overruled.

### 2. Claims against Colvin & Lempke

Claims 16, 17, and 18 against defendant Colvin, and claims 26, 27, 28 against defendant Lempke, are for excessive use of force, denial of religious freedom, and retaliation allegedly occurring at Upstate Correctional Facility. *See* Am. Comp. ¶¶ 86, 105 and 108. Defendants argue that because (1) the Amended Complaint "generally reads in chronological order; (2) paragraph 86 is

embedded in the section entitled "Denial of Medical Care;" and, (3) paragraph 86 encompasses paragraphs 62-109, "it is clear from reading this section of the amended complaint as a whole that plaintiff is referring to a time period prior to, or at most, to June 22, 2010. This is such because the subsequent paragraph, 87, clearly begins with allegations stemming from June 22, 2010." Def. Mem. L. p. 2. Defendants further assert that "Plaintiff's movement history shows that between August 7, 2009 and June 22, 2010, he was not housed at Upstate." *Id.* From this, defendants argue that because "supervisors cannot be liable for the conduct, policies or procedures of staff at a different facility," *id.,* Colvin and Lempke cannot be held responsible for claims 16, 17, 18, 26, 27, and 28. *See id.* ("[I]rrespective of whether [plaintiff] filed grievances regarding the underlying claims contained in paragraph 86, plaintiff's claims against Colvin and Lempke are misplaced in their capacity as supervisors because these defendants could not have had any control over the conditions in another facility, and therefore they were not personally involved."). Thus, defendants contend that the Court should "dism iss these claims against Colvin and Lempke." *Id.*

**\*7** Defendants' argument is not addressed to Magistrate Judge Peebles's recommendation that dealt with whether plaintiff exhausted his administrative remedies, but rather to whether claims 16, 17, 18, 26, 27, and 28 are legally viable. Because this objection is not addressed to an alleged error by Magistrate Judge Peebles in recommending whether plaintiff exhausted administrative remedies, but rather appears to be an attempt to convert a 28 U.S.C. § 636(b)(1) objection into a Rule 56 summary judgment motion, the objection is overruled. Defendants can challenge the sufficiency of these claims at the time of trial.

### 3. Claims against Artus, Colvin, and Lempke

Defendants make similar arguments addressed to the legal sufficiency of claims brought against Artus, Colvin, and Lempke in paragraphs 105 and 108. For the reasons discussed above, defendants' objections in this regard are overruled. Again, defendants can challenge the sufficiency of these claims at the time of trial.

Case 9:17-cv-01158-MAD-DEP   Document 28   Filed 11/02/18   Page 93 of 101

Shepherd v. Lempke, Not Reported in Fed. Supp. (2017)

2017 WL 1187859

#### 4. Claims 15, 20, 23, and 32

Claims 15, 20, 23, and 32 against Defendant Prebalick, Cioffa, Evans and Jones allege excessive use of force and the failure to protect on May 6, 2010. With regard to administrative exhaustion of these claims, Magistrate Judge Peebles found:

> All of these claims relate to the same incident that allegedly occurred on May 6, 2010, and involved the use of force by defendants Prebalick, Cioffa, and Evans. Dkt. No. 45 at 5. Plaintiff also alleges that defendant Jones was present for, and failed to protect him from, the use of force. *Id.* In support of plaintiff's contention that he filed a grievance, dated May 7, 2010, regarding the excessive force and failure to protect claims asserted against defendants Prebalick, Cioffa, Evans, and Jones, plaintiff adduced, *inter alia*, a letter he addressed to Karen Bellamy, the DOCCS Director of Inmate Grievance, dated August 13, 2010, inquiring about the status of "several grievances [he had filed] in May 2010[.]" Exhs. P-E-6, P-G-6. Bellamy responded to plaintiff in a letter dated September 22, 2010, pointing out that her review of prison records demonstrated that plaintiff had filed six grievances at Five Points in May 2010. Exhs. P-E-7, P-G-7. By the time plaintiff sent his letter to Bellamy on August 17, 2010, he had received a response to five other grievances he had filed in May 2010. Exhs. D-7, D-8, D-9, D-10, D-11. It remains a mystery why some of the grievances filed by plaintiff at Five Points in May 2010 were processed but not the grievance allegedly relating to the incident involving defendants Prebalick, Cioffa, Evans, and Jones on May 6, 2010. One possible explanation is that plaintiff did not actually file a grievance. Another possibility is that, assuming plaintiff filed the grievance, prison officials interfered, intentionally or not, in a manner that resulted in plaintiff's grievance never being processed. Unlike plaintiff's testimony regarding other claims in groups three and four, his testimony regarding claims 15, 20, 23, and 32 is accompanied by his letter to Bellamy, which is stamped as having been received by Bellamy's office, and Bellamy's response to his letter. Exhs. P-E-6, P-E-7, P-G-6, P-G-7. Because the contents of those letters plausibly suggest that plaintiff's grievance related to the incident on May 6, 2010, involving defendants Prebalick, Cioffa, Evans, and Jones was submitted but never processed,

I have credited plaintiff's testimony regarding the claims arising from that incident only. Accordingly, I recommend defendants' motion to dismiss be denied with respect to claims 15, 20, 23, and 32.

**\*8** Rep. Rec. pp. 28-29.

Defendants argue, *inter alia*, that "[a]lthough the last line of plaintiff's letter to Bellamy indicates 'please find the enclosed unanswered grievances,' and even affording plaintiff the benefit that the letters contained in [the various exhibits] are the enclosure he is referring to, plaintiff still falls short of proper exhaustion. Respectfully, [Magistrate Judge Peebles] did not address the next inquiry which is whether plaintiff appealed the non-response to the Superintendent." Def. Mem. L., p. 3.

In *Johnson v. Tedford*, 616 F. Supp. 2d 321 (N.D.N.Y 2007), the court indicated that "in light of the Second Circuit's [*Hemphill v New York*, 380 F.3d 680 (2d Cir. 2004) ] decision, several Southern District cases have recognized that when a prisoner asserts a grievance to which there is no response, and it is not recorded or assigned a grievance number, administrative remedies may be completely exhausted, as there is nothing on record for the next administrative level to review." *Id.* at 326. However, and despite that the exceptional circumstance exception of *Hemphill* has recently been abrogated, [5] *Johnson* has been repeatedly distinguished by the Northern District. As Chief Judge Suddaby wrote in *Smith v. Kelly*, 985 F. Supp. 2d 275 (N.D.N.Y. 2013):

> There appears to be a conflict in case law regarding whether the IGRC's nonresponse must be appealed to the superintendent where the plaintiff's grievance was never assigned a grievance number. After carefully reviewing this case law, the Court finds that the weight of authority (and better-reasoned authority) answers this question in the affirmative. The Court notes that, if the plaintiff adequately describes, in his appeal to the superintendent, the substance of his grievance (or if the plaintiff attaches, to his appeal, a copy of his grievance), and the plaintiff adequately describes the failure

2017 WL 1187859

to process the grievance, there is something for the superintendent to review.

*Id.* at 281–82 (N.D.N.Y. 2013)(collecting cases).

**\*9** Based on the weight of authority, the Court agrees with defendants that the failure by the IGRC or the Superintendent to timely respond to a grievance or first level appeal must itself be appealed to the next level, including the CORC, in order to properly complete the grievance process. *See Simmon v. Uhler*, 2015 WL 5655561, at \*4 (N.D.N.Y. Sept. 24, 2015) ("[T]he failure by the IGRC or the Superintendent to timely respond to a grievance or first level appeal must be appealed to the next level, including the CORC, in order to properly complete the grievance process.")(citing *Pacheco v. Drown*, 2010 WL 144400, at \*19 & n. 21 (N.D.N.Y. Jan. 11, 2010); *Smith v. Kelly*, 985 F. Supp.2d at 281–82 & n. 8 (N.D.N.Y. 2013)); *Goodson v Silver*, 2012 U.S. Dist. LEXIS 137177, at \*11, 2012 WL 4449937 (N.D.N.Y. Sept. 25, 2012) (stating that "any failure by the IGRC or the superintendent to timely respond to a grievance or first-level appeal, respectively, can—and must—be appealed to the next level, including CORC, to complete the grievance process"); *Veloz v New York*, 339 F. Supp.2d 505, 516 (S.D.N.Y. 2004) (holding that an inmate in the New York State system was required to appeal even if he did not get a response to allegedly misplaced or destroyed grievances).

The law is clear that simply writing letters to supervisory officials is insufficient to exhaust administrative remedies, *Simmon*, 2015 WL 5655561, at \*4 n. 5 (citing *Perez v. Blot*, 195 F. Supp.2d 539, 544-45 (S.D.N.Y. 2002) (citing cases)); *Masas v. Conte*, 2015 U.S. Dist. LEXIS 50527 (N.D.N.Y. Mar. 25, 2015), so plaintiff's letter to Bellamy does not satisfy his exhaustion obligation. Moreover, there is no evidence that plaintiff, "an experienced *pro se* litigant who has filed multiple actions in this and other courts as a New York State prison inmate," Rep. Rec. 2, who undoubtedly was familiar with the grievance and appeal process, *see* Hear Tr. pp. 113:15 – 116:6, [6] 128:21-129:4, [7] Def. Post-Hearing Mem. L. p. 10, [8] appealed the non-response to his grievance addressed to the facts underlying claims 15, 20, 23, and 32 against Prebalick, Cioffa, Evans and Jones. Accordingly, these claims are dismissed for failure to exhaust administrative remedies.

### IV. CONCLUSION

For the reasons discussed above, Magistrate Judge Peebles's October 28, 2016 Report and Recommendation, Dkt. No. 252, is accepted in part and rejected in part, as follows:

(1) The following claims are deemed exhausted and remain pending for trial:

| Claim No. | Defendant | Nature of Claim | Facility | Amended Complaint ¶ |
|---|---|---|---|---|
| 3 | Artus | Medical Indifference | Clinton | 31, 104-05,108-09 |
| 4 | Artus | Religious Interference | Clinton | 31, 104-05,108-09 |
| 13 | Carlee | Retaliation | Five Points | 18 |
| 16 | Colvin | Excessive Force | Upstate | 86, 105, 108 |
| 17 | Colvin | Religious | Upstate | 86, 105, 108 |
| 18 | Colvin | Retaliation | Upstate | 86, 105, 108 |
| 19 | Cunningham | Due Process | Green | 107 |
| 26 | Lempke | Excessive Force | Upstate | 86, 105, 108 |
| 27 | Lempke | Religious | Upstate | 86, 105, 108 |
| 28 | Lempke | Retaliation | Upstate | 86, 105, 108-09 |

2017 WL 1187859

| 34 | Prebalick | Excessive Force | Five Points | 35 |
|---|---|---|---|---|
| 35 | Ramus | Due Process | Five Points | 107 |

**\*10** (2) The following claims will also proceed to trial based on the parties' failure to address them in connection with defendants' exhaustion defense:

| Defendant | Cause of Action | Prison Facility |
|---|---|---|
| Amatucci | Medical Indifference | Downstate |
| Barber | Failure to Protect | Five Points |
| N. Bezio | Due Process | DOCCS Hq. |
| Cambria | Excessive Force | Unknown |
| Chesbrough | Retaliation | Upstate |
| Holmes | Retaliation | Upstate |
| Rock | Religious Interference | Upstate |
| Lashway (formerly sued as Hawthorne) | Medical Indifference | Clinton |

(3) The following claims are dismissed based upon plaintiff's representation that they are not being asserted in this action:

| Claim No. | Defendant | Nature of Claim | Facility | Amended Complaint ¶ |
|---|---|---|---|---|
| 10 | Bower | Failure to Protect | Five Points | 15 |
| 11 | Bower | Retaliation | Five Points | 15 |
| 21 | Evans | ReligiousInterfer. | Five Points | 32 |

(4) The following claims are dismissed based upon the fact that complete exhaustion occurred only after this action was filed:

| Claim No. | Name | Nature of Claim | Facility | Amended Complaint ¶ |
|---|---|---|---|---|
| 6 | Belsio | Religious Interference | Upstate | 41, 42 |
| 8 | Atkinson | Retaliation | Upstate | 90, 91 |
| 25 | Lashway | Medical Indifference | Clinton | 75, 76 |
| 31 | Prebalick | Religious Interference | Five Points | 35 |
| 36 | Rowe | Failure to Protect | Upstate | 43 |
| 37 | Rozwell | Excessive Force | Upstate | 43 |

Shepherd v. Lempke, Not Reported in Fed. Supp. (2017)
2017 WL 1187859

| | | | | |
|---|---|---|---|---|
| 38 | Rozwell | Religious Interference | Upstate | 43 |

(5) The following claims are dismissed based upon plaintiff's failure to fully exhaust them:

| Claim No. | Name | Nature of Claim | Facility | Amended Complaint ¶ |
|---|---|---|---|---|
| 5 | Belsio | Excessive Force | Upstate | 41, 42 |
| 7 | Belsio | Religious | Upstate | 41, 42 |
| 9 | Bower | Excessive Force | Five Points | 15 |
| 12 | Carlee | Religious | Five Points | 34 |
| 14 | Carlee | Excessive Force | Five Points | 34 |
| 22 | Fairchild | Retaliation | Upstate | 92 |
| 24 | Jones | Medical Indifference | Five Points | 87 |
| 29 | Menard | Excessive Force | Clinton | 28 |
| 30 | Menard | Religious | Clinton | 28 |
| 33 | Prebalick | Excessive Force | Five Points | 16 |
| 15 | Cioffa | Excessive Force | Five Points | 19, 20 |
| 20 | Evans | Excessive Force | Five Points | 20 |
| 23 | Jones | Failure to Protect | Five Points | 21 |
| 32 | Prebalick | Retaliation | Five Points | 19-22 |

The Court Clerk's Office shall now schedule three trials for the remaining claims in accordance with the Court's September 22, 2015 Decision and Order, Dkt. No. 202, taking into account claims and defendants that are dismissed from the action by this Decision and Order. To aid the Court Clerk's Office in scheduling these trials, each part shall submit, within thirty (30) days, a status letter indicating the claims and defendants that remain pending and that they contend should be tried in each of the trials ordered by the Court on September 22, 2015, Dkt. No. 202.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2017 WL 1187859

Footnotes

1   "Generally speaking, Shepherd alleges that he was sexually and physically assaulted, and deprived of his freedom of religion, procedural due process, access to the courts, and adequate medical care." Rep. Rec. p. 3.

2   Part of this procedural history is that the Court adopted Magistrate Judge Peebles's previous recommendation to grant defendants' motion that plaintiff's claims be divided into three categories with each group being tried separately. *See*

Case 9:17-cv-01158-MAD-DEP    Document 28    Filed 11/02/18    Page 97 of 101
Shepherd v. Lempke, Not Reported in Fed. Supp. (2017)

2017 WL 1187859

Rep. Rec. p. 6; *see also* Dkt. No. 202. At the time this decision was entered, the three groups anticipated for purposes of trial were:

(1) All claims involving events at the Clinton Correctional Facility, plus a medical indifference claim against Dr. Amatucci arising from events at the Downstate Correctional Facility, and related claims against defendants Artus, Amatucci, Lashway, and Menard.

(2) All claims involving events at the Five Points Correctional Facility against defendants Barber, Bower, Carlee, Cioffa, Jones, Evans, Prebalick, and Ramus, plus plaintiff's due process claim against defendants Cunningham and Bezio arising from the events at the Green Haven Correctional Facility.

(3) All remaining claims, including those relating to events at the Upstate Correctional Facility, plus an excessive force cause of action against defendant Cambria based upon the events at an undetermined location. This third trial will include the following defendants: Belsio, Cambria, Colvin, Holmes, Fairchild, Atkinson, Chesbrough, Lempke, Rock, Rowe, and Rozwell.

*See* Rep. Rec. p. 6; *see also* Dkt. No. 202.

3    ("[P]risoners must comply with all procedural rules regarding the grievance process prior to commencing an action in federal court. *See* Woodford v. Ngo, 548 U.S. 81, 83–85 (2006). Thus, completion of the exhaustion process after a federal action has been filed does not satisfy the exhaustion requirement. *See* Neal v. Goord, 267 F.3d 116, 122 (2d Cir. 2001). Accordingly, I instructed Stimpson that any amended complaint must include allegations regarding any attempts by him to exhaust administrative remedies with regard to his claims prior to filing this lawsuit.")

4    In this regard, Magistrate Judge Peebles wrote:

Having reviewed the evidence and observed his demeanor, I conclude that, with limited exception, which will be discussed more below, plaintiff was not credible insofar as he testified that he submitted grievances concerning the incidents that are the basis for his claims in groups three and four. It is worth noting that, while plaintiff was able to produce alleged copies of the grievances and follow-up letters that relate to the claims in group three at the exhaustion hearing, those documents were not provided to defendants during the course of discovery. Dkt. No. 249-2 at 79. Plaintiff explained that he failed to produce those documents earlier in the litigation because he had sent copies of the grievances and letters to his family members for safekeeping but was only recently able to retrieve them. *Id.* at 83-85. Plaintiff did not offer any explanation as to why copies of some but not all of his grievances and letters were available from his family members. Moreover, his explanation concerning which of his family members possessed those grievances has been inconsistent. At the hearing, plaintiff testified that the copies were retrieved from his son, *id.* at 84, but plaintiff testified under oath during his deposition that his wife was in possession of any document that had not previously been produced during discovery. *Id.* at 85-86.

Plaintiff's credibility must be measured with his prior grievance history as a backdrop. Plaintiff is no stranger to the grievance process, and there is no evidence that, aside from the grievances related to the claims in groups three and four, plaintiff has experienced any difficulty in filing and pursuing grievances over the course of his incarceration. Indeed, according to Jeffrey Hale, the Assistant Director of the DOCCS Inmate Grievance System, as of one day prior to the start of the hearing, plaintiff had appealed 445 grievances to the CORC, with an additional nine appeals then-pending. Dkt. No. 249-2 at 128-29. The sheer number of grievances that plaintiff has pursued during his incarceration leaves no doubt that he is well-versed in the grievance process.

In my view, the evidence adduced by the parties with regard to the claims in group three and four support a recommended finding that, except with respect to claims 15, 20, 23, and 32, all of the claims are unexhausted and subject to dismissal on that basis. Although plaintiff adduced purported copies of grievances and/or letters regarding his exhaustion attempts in connection with claims 9, 12, 14, 29, 30, and 33, all of which are part of group three, there is no independent evidence to corroborate plaintiff's testimony in this regard. In addition, there is no record evidence at all to support plaintiff's hearing testimony that he filed grievances regarding claims 5, 7, and 24 in group four. Because I did not find plaintiff's testimony credible for the reasons already discussed above, I recommend the court dismiss claims 5, 7, 9, 12, 14, 24, 29, 30, and 33 as unexhausted.

5    In Ross v. Blake, —— U.S. —— 136 S. Ct. 1850 (2016), the Supreme Court rejected the Second Circuit's "extra-textual" exception to the PLRA's exhaustion requirement which allowed the taking into account of "special circumstances" to justify a prisoner's failure to comply with administrative procedural requirements. *See* Ross, 136 S. Ct. at 1856-57. *Ross* has been interpreted as abrogating the special-circumstances exception set forth in *Hemphill. See* Riles v. Buchanan, 656 Fed. Appx. 577, 581 (2d Cir. 2016)("Finally, to the extent Riles relies on our decision in *Hemphill* ... to argue that special circumstances excuse his failure to exhaust available remedies, that avenue has been foreclosed.")(citing Williams v. Priatno, 829 F.3d 118, 123, 2016 WL 3729383, at *4 (2d Cir. July 12, 2016))(explaining that *Ross* abrogated the special-

2017 WL 1187859

circumstances exception and "supplant[ed] our *Hemphill* inquiry by framing the exception issue entirely within the context of whether administrative remedies were actually available").

6   Jeffrey Hale, Assistant Director of the Central Office Review Committee, testified at plaintiff's evidentiary hearing that there are safeguards in place in DOCCS' grievance process for inmates specifically for this type of situation, as plaintiff purports to be. Hear Tr. pp. 113:15 – 116:6. That is, if an inmate does not receive a response to a grievance, "[t]hey just write a simple note to the IGRC clerk or they can address it to the inmate grievance program supervisor requesting to appeal that grievance to the next level of review." Hear Tr. p. 113:15-23. Mr. Hale testified that inmates have a two week timeframe within which to file an appeal of a non-response to the Superintendent, and, in addition, inmates also have the same recourse for filing a late appeal as they would a timely appeal. *Id.* 114:9-115:25.

7   Mr. Hale testified that, at the time of plaintiff's hearing, plaintiff had successfully exhausted 445 grievances and had 6 appeals pending. Hear. Tr. pp.128:21-129:4.

8   Defendants contend that Plaintiff successfully exhausted an estimated 300 grievances at the time he filed this law suit. Def. Post-Hearing Mem. L., p. 10 (citing Hearing Ex. D-3).

---

**End of Document**

© 2018 Thomson Reuters. No claim to original U.S. Government Works.

2014 WL 1056416
Only the Westlaw citation is currently available.
United States District Court,
W.D. New York.

Kody WEIDMAN, Plaintiff,
v.
Larry WILCOX, Defendant.

No. 6:12–CV–6524 (MAT).
|
Signed March 17, 2014.

**Attorneys and Law Firms**

Kody Weidman, New Berlin, NY, pro se.

**DECISION AND ORDER**

MICHAEL A. TELESCA, District Judge.

**I. Introduction**

 *1  *Pro se* plaintiff Kody Weidman ("Weidman" or "Plaintiff"), an inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), instituted this action pursuant to 42 U.S.C. § 1983, alleging that he was denied adequate medical treatment in violation of his rights under the Eighth Amendment. Defendant has moved to dismiss the complaint on the basis that Weidman has failed to exhaust his administrative remedies.

**II. Background**

Plaintiff has alleged the following facts, which the Court accepts as true for purposes of this motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b) (6)"). *E. g., Jaghory v. New York State Dep't of Educ.,* 131 F.3d 326, 329 (2d Cir.1997) (citations omitted). On September 3, 2012, Plaintiff was bitten on his left cheek by a spider. He reported it and was sent to sick call. However, the head nurse refused to treat him, and as a result, his left cheek "swell[ed] up and start[ed] to pus", and became painful. Dkt # 1, p. 3 of 4. Plaintiff contacted "D.I. Delmani", who in turn contacted "the sgt", who took him to the hospital at Lakeview on September 6, 2012. *Id.* There, Plaintiff was seen by a doctor who gave him "sulfamethox" and applied a heat

pack to his face. The "pus and swelling then went down." *Id.*

Plaintiff did not file a grievance but instead proceeded directly to this Court, filing his complaint on September 14, 2012. Defendants filed a motion to dismiss on March 18, 2013. The complaint was dismissed for failure to prosecute on June 19, 2013, but was reinstated on June 25, 2013. The matter was transferred to the undersigned on February 20, 2014. For the reasons set forth below, the motion to dismiss is granted, and the complaint is dismissed in its entirety with prejudice.

**III. Defendant's Motion to Dismiss**

Defendant asserts that it is clear from the face of Plaintiff's complaint that he has failed to exhaust his administrative remedies by filing a prison grievance, and therefore his complaint warrants dismissal pursuant to Rule 12(b)(6). In response to Defendant's non-exhaustion argument, Plaintiff simply restates the basis for his grievance as his reason for not exhausting his administrative remedies.

**A. Administrative Exhaustion**

The Prison Litigation Reform Act of 1995 (the "PLRA"), Pub.L. No. 104–134, 110 Stat. 1321 (1996), requires an inmate to exhaust all available administrative remedies before filing suit in federal court. Specifically, Section 1997e(a) of Title 42 U.S.C. provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has ruled that the exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong[,]" *Porter v. Nussle,* 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002).

 *2  It is well established that exhaustion requires that "a prisoner must grieve his complaint about prison conditions up through the highest level of administrative review" before filing suit. *Porter v. Goord,* No. 01 Civ. 8996(NRB), 2002 **WL** 1402000, at *1 (S.D.N.Y. June 28, 2002) (citing *Neal v. Goord,* 267 F.3d 116, 122 (2d Cir.2001) ("[G]rievances must now be fully pursued prior to filing a complaint in federal court."); other citation

omitted)); *see also Booth v. Churner,* 532 U.S. 731, 735, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001) (noting that inmate, who conceded nonexhuastion below, "did not, however, go beyond the first step, and never sought intermediate or final administrative review after the prison authority denied relief"); *Gibson v. Goord,* 280 F.3d 221, 223 (2d Cir.2002) (noting plaintiff "had not pursued the available remedy of filing a 'level two grievance' "). "Complete exhaustion" is therefore required. *Graham v. Cochran,* No. 96 Civ. 6166(LTS)(RLE), 2002 WL 31132874, at *1, 6 (S.D.N.Y.2002) (noting "action must be dismissed because [plaintiff] unreasonably failed to appeal"); *see also McCoy v. Goord,* 255 F.Supp.2d 233, 251 (S.D.N.Y.2003) ("The standard is not one of fair notice to the defendants, or of substantial compliance.").

Prisoners in DOCCS custody must complete a three-step inmate grievance procedure, including two levels of appeals, to exhaust their administrative remedies. *See, e.g., Baskerville v. Blot,* 224 F.Supp.2d 723, 729 (S.D.N.Y.2002); N.Y. CORR. LAWW § 139; N .Y. COMP.CODES R. & REGS. tit. 7, § 701.7. The DOCCS grievance procedure is available for any number of complaints, as New York State law "permits inmates to file internal grievances as to virtually any issue affecting their confinement." *Flanagan v. Maly,* No. 99 Civ. 12336(GEL), 2002 WL 122921, at *1 (S.D.N.Y. Jan.29, 2002) (citations omitted).

Although the Second Circuit has not explicitly ruled on the issue of whether exhaustion is jurisdictional, it has held indirectly that it is not. *See Jenkins v. Haubert,* 179 F.3d 19, 28–29 (2d Cir.1999) (failure to exhaust is an affirmative defense); *Snider v. Melindez,* 199 F.3d 108, 112 (2d Cir.1999) (exhaustion need not be pled in the complaint); *Davis v. New York,* 316 F.3d 93, 101 (2d Cir.2002) (non-exhaustion may be waived)). Thus, most courts in this Circuit have found that Rule 12(b)(6), rather than Rule 12(b) (1), is the proper vehicle for a defendant to use to seek dismissal of a § 1983 complaint, provided that nonexhaustion is apparent on the face of the complaint. *McCoy,* 255 F.Supp.2d at 249 (citing *Pani v. Empire Blue Cross Blue Shield,* 152 F.3d 67, 74–75 (2d Cir.1998) ("An affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of the complaint."); other citation omitted). If, on the other hand, "nonexhaustion is not clear from the face of the complaint, a defendant's motion

to dismiss should be converted, pursuant to Rule 12(b), to one for summary judgment limited to the narrow issue of exhaustion and the relatively straightforward questions about the plaintiff's efforts to exhaust, whether remedies were available, or whether exhaustion might be, in very limited circumstances, excused." *McCoy,* 255 F.Supp.2d at 251 (citation omitted).

### B. Analysis

**\*3** Plaintiff's complaint, broadly construed, asserts entitlement to damages under 42 U.S.C. § 1983 for negligent medical care and deliberate indifference to a serious medical need. Because Plaintiff has not alleged that he was singled out for such treatment, his action is one brought with respect to prison conditions, and he must exhaust his administrative remedies. *Polanco v. City of N.Y. Dep't of Corr.,* No. 01 Civ. 759(AGS), 2002 WL 272401, at *2 (S.D.N.Y. Feb.26, 2002) (citing *Neal v. Goord,* 267 F.3d at 119–21 (claims of inadequate medical treatment generally relate to prison conditions)). Here, Plaintiff admitted in his complaint that there was a prison grievance procedure available to him, but he did not use it. Dkt # 1, p. 2 of 4. When asked on the form complaint why he did not file a grievance, his response reads in full as follows: "I Kody Weidman when [sic] to sick call about the spider bite on my face and they refuse to attend me." *Id.*

In certain situations, an inmate may be exempted from the exhaustion requirement. If the inmate argues that he is exempt, the court must undertake a three-part inquiry, which entails asking (1) whether administrative remedies were not in fact available; (2) whether the defendants' actions inhibited exhaustion so as to estop them from asserting non-exhaustion as an affirmative defense; or (3) whether "special circumstances" exist (e.g., an inmate reasonably misunderstood the requirements of the grievance procedures). *Hemphill v. City of New York,* 380 F.3d 680, 686 (2d Cir.2004).

Plaintiff has not specifically argued that he is exempt from grieving for any of the reasons recognized in *Hemphill.* He does not claim that the grievance process was "unavailable" to him. Plaintiff does not identify any "special circumstances" that might justify his failure to exhaust his administrative remedies. He does not specifically claim that Defendants took any steps to inhibit him from taking advantage of the grievance process. He simply restates the gravamen of his complaint (i.e., he went to sick call and did not receive treatment for his spider bite)

as his reason for not pursuing a prison grievance through the proper channels. This is plainly insufficient.

In short, because Plaintiff has failed to identify any legally cognizable reason why he could not exhaust his administrative remedies, and because he affirmatively admits that he did not exhaust them, the Court must grant Defendants' motion to dismiss his complaint. *See, e.g., Lewis v. City of N.Y.,* No. 12 CV 5850(CM), 2013 WL 3833001, at *4 (S.D.N.Y. July 23, 2013) (granting defendant's motion to dismiss where plaintiff-inmate failed to offer any excuse for failure to follow through on the grievance he filed; did not claim that grievance process was "unavailable" to him; did not identify any "special circumstances" to justify his failure to exhaust his administrative remedies; and did not specifically claim that prison officials interfered with his ability to use the grievance process).

### C. Whether Dismissal Is With or Without Prejudice
**\*4** When a prisoner fails to exhaust available administrative remedies, and the time permitted for pursuing such remedies has not expired, the complaint is ordinarily dismissed without prejudice, thereby allowing the prisoner to submit a grievance to the particular institution at which the incident in question occurred. *Snider v. Melindez,* 199 F.3d at 111–12; *see also Morales v. Mackalm,* 278 F.3d 126, 128, 131 (2d Cir.2002) (*per curiam*) (broadly stating in *dictum* that any dismissal for failure to exhaust administrative remedies should be without prejudice), *abrogated* on *other grounds, Porter v. Nussle,* 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). In *Berry v. Kerik,* 366 F.3d 85 (2d Cir.2004), however, the Second Circuit explained that this "broad [ ] *dictum*" in *Morales* "would extend too far if applied to cases where exhaustion was required but administrative remedies have become unavailable after the prisoner had ample opportunity to use them and no special circumstances justified failure to exhaust." 366 F.3d at 88.

Here, because Plaintiff was released from prison during the pendency of this action, administrative remedies are no longer available to him. *Finger v. Superintendent McFinnis,* 99CIV.9870(LTS)(THK), 2004 WL 1367506, \*5 (S.D.N.Y. June 16, 2004) (citing *Morris v. Eversley,*

205 F.Supp.2d 234, 241 n. 4 (S.D.N.Y.2002) (citing *Liner v. Goord,* 115 F.Supp.2d 432, 434 (S.D.N.Y.2000)) (concluding that administrative remedies were no longer available to plaintiff who had been released from prison because inmate grievance procedures, on their face, are available only to inmates and visitors, and not to former prisoners)). Since the incident of which Plaintiff complains occurred in early September 2012, and he was not released to parole supervision until March 2013, he had ample opportunity to exhaust his administrative remedies while they were still available to him as a DOCCS prisoner. *See Berry,* 366 F.3d at 88 (former inmate who had been in DOCCS custody had "ample opportunity" to use administrative remedies where he had been incarcerated for several months after the onset of the conditions that gave rise to his complaints and before his release, and then had been incarcerated for periods of nine months and three months on unrelated offenses). As discussed above, Plaintiff has offered no legally cognizable reason for his failure to exhaust, simply stating, in effect, that he failed to file a grievance because he suffered a grievable injury. Hence, the Court finds that Plaintiff's complaint should be dismissed with prejudice. *See id.* (dismissing with prejudice inmate's action for failure to exhaust, where exhaustion was required but administrative remedies had become unavailable after prisoner had ample opportunity to use them, and no special circumstances justified failure to exhaust).

### IV. Conclusion
For the foregoing reasons, Defendants' motion to dismiss (Dkt # 10) is granted, and Plaintiff's complaint (Dkt # 1) is dismissed in its entirety with prejudice. The Court hereby certifies that any appeal of this order would not be taken in good faith, and therefore it denies leave to appeal in *forma pauperis.* Any further request for in *forma pauperis* status must be made on motion to the United States Court of Appeals for the Second Circuit. The Clerk of the Court is requested to close this case.

### \*5  IT IS SO ORDERED.

### All Citations

Not Reported in F.Supp.3d, 2014 WL 1056416

---

End of Document

© 2018 Thomson Reuters. No claim to original U.S. Government Works.