**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

---

**RICHARD H. LIVINGSTON,**

                              **Plaintiff,**

   vs.                                                      **9:17-CV-1158
(MAD/DEP)**

**WILLIAM HOFFNAGLE, DUSTIN
HOLLENBECK, and CHRIS KING,**

                              **Defendants.**

---

**APPEARANCES:**                                 **OF COUNSEL:**

**RICHARD H. LIVINGSTON**
14-B-3634
Great Meadow Correctional Facility, Box 51
Comstock, New York 12821
Plaintiff *pro se*

**HON. BARBARA UNDERWOOD**        **ERIK BOULE PINSONNAULT, A.A.G.**
New York State Attorney General
The Capitol
Albany, New York 12224
Attorney for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

     Plaintiff, an inmate currently in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), commenced this civil rights action *pro se* on October 18, 2017. *See* Dkt. No. 1. Plaintiff's claims arose on August 1, 2017, shortly after he was transferred to Upstate Correctional Facility ("Upstate") in Malone, New York, where he was to be housed in disciplinary confinement for six months. *See* Dkt. No. 28 at 3. Plaintiff alleges that on that day, Defendants ignored his requests to be placed in protective custody and punished

him for those requests by "locking him in a holding cell, handcuffed and chained tight," depriving him of food, water, and the use of a bathroom from 1:00pm to 6:00pm, ignoring his pleas to loosen the handcuffs and chains, threatening to issue a false misbehavior report, and placing him in a cell with "a violent gang banger." *See id.* at 3-4. According to Plaintiff, this caused him "misery, anguish, psychological pain," and loss of sleep for several days. *See* Dkt. No. 1 at 20-21.

Plaintiff filed two grievances with Upstate about the events from August 1, 2017. *See* Dkt. No. 16 at 3. On September 26, 2017, the superintendent denied Plaintiff's grievances and Plaintiff appealed to the Central Office Review Committee ("CORC"). *See id.* Before the CORC had a chance to issue an opinion, on October 18, 2017, Plaintiff filed a Complaint with this Court. *See* Dkt. No. 1. In his Complaint, Plaintiff alleges Eighth Amendment claims of excessive force, failure-to-protect, and conditions-of-confinement, a First Amendment retaliation claim, a Section 1983 conspiracy claim, and pendent state law claims of gross negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress. *See* Dkt. No. 28 at 6.

On March 16, 2018, Defendants filed a Motion to Dismiss on the grounds that Plaintiff failed to exhaust the administrative remedies available to him before commencing this lawsuit. *See* Dkt. No. 14-1 at 4. Plaintiff filed his Opposition on April 2, 2018. *See* Dkt. No. 16. On November 2, 2018, Magistrate Judge David E. Peebles issued a Report and Recommendation recommending that the case be dismissed because Plaintiff did not exhaust all administrative remedies before filing the Complaint. *See* Dkt. No. 28 at 22-23. Additionally, Magistrate Judge Peebles found that the state law claims are barred by Section 24 of the New York Correction Law. *See id.*

Plaintiff filed three objection letters to the Report and Recommendation (together, the "Objections").[1] In the first Objection, filed on November 21, 2018, Plaintiff argues that special circumstances excuse his failure to wait for a CORC decision before commencing this action. *See* Dkt. No. 31 at 1-2. Plaintiff claims that although he repeatedly requested video evidence of the incident on August 1, 2017, he "was met by an outrageous charge of over three hundred dollars, which is contrary to the DOCC[S] directive," and he was "bound by time constraints" because the video evidence is preserved for only one year. *See id.* Plaintiff argues that he was "forced to immediately file suit in good faith in order to get the courts [sic] intervention in securing the evidence." *See id.* Additionally, Plaintiff states that the CORC has still not rendered a decision, and this "stalling" was "done to impede the prosecution of plaintiff's claims." *See id.* at 3.

In a Supplemental Objection, filed on December 7, 2018, Plaintiff alleges that Defendants obstructed justice by preventing him from obtaining the video evidence from the incident, thereby causing the electronic spoliation of evidence. *See* Dkt. No. 32 at 1-2. Now that the video evidence is lost, Plaintiff asks the Court to find that his administrative remedies have been exhausted since he "will not have a fair and impartial appeal determination." *See id.* Plaintiff also requests that the Court impose sanctions on Defendants. *See id.*

---

[1] Contrary to Plaintiff's assertion that he was "well within [his] rights to file" the supplemental objections, *see* Dkt. No. 33 at 1, in this District, a party must get the court's permission before filing supplemental papers. *See Pro Se/Self Representation: Before Submitting Papers to the Court*, https://www.nynd.uscourts.gov/submitting-papers-court ("Supplemental papers, even if they relate to your complaint, petition, or motion, may NOT be filed without prior Court approval"). Nevertheless, in light of Plaintiff's *pro se* status, this Court will exercise its discretion to consider the arguments raised in all three objections. *See Snyder v. Graham*, No. 09-CV-10307, 2012 WL 983536, *4 (S.D.N.Y. Mar. 22, 2012) (citing *Ruggiero v. WarnerLambert Co.*, 424 F.3d 249, 252 (2d Cir. 2005)) (other citation omitted) (finding that courts have discretion to consider documents filed in violation of procedural rules).

Finally, on December 13, 2018, Plaintiff filed a Second Supplemental Objection, which largely repeated his earlier objections. *See* Dkt. No. 33 at 1-2. Plaintiff again claims that he was "forced to file a complaint immediately" because he was charged a fee of $311.35 for the video, and that the CORC's "delay in rendering a decision was used as a ploy" to prevent him from obtaining the video before it was destroyed. *See id.* Additionally, Plaintiff calls the fee "arbitrary and capricious." *See id.*

After carefully reviewing Plaintiff's Objections, the Court finds that Magistrate Judge Peebles did not err in his determination that the Complaint should be dismissed. Accordingly, the Court adopts the Report and Recommendation in its entirety.

## II. DISCUSSION

**A.     Standard of Review**

When a party files specific objections to a magistrate judge's report and recommendation, the district court makes a "de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). However, when a party files "[g]eneral or conclusory objections or objections which merely recite the same arguments [that he presented] to the magistrate judge," the court reviews those recommendations for clear error. *O'Diah v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, *1 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted). After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

Plaintiff's Objections to the Report and Recommendation merely recite the same arguments that he presented to Magistrate Judge Peebles. First, Plaintiff claims that his failure to wait for a CORC decision was excused by the need to acquire video evidence of the incident

4

before it was erased. *See* Dkt. No. 31 at 1-2; Dkt. No. 32 at 1-2; Dkt. No. 33 at 1-2. Plaintiff made this same argument in his Opposition to the Motion to Dismiss, *see* Dkt. No. 16 at 4, which Magistrate Judge Peebles addressed in the Report and Recommendation, *see* Dkt. No. 28 at 5 n.3. Similarly, Plaintiff's argument that the fee charged for the video was arbitrary and capricious is a mere recitation of his earlier argument that a FOIL officer overcharged him for the video, which he believes should have been free. *See* Dkt. No. 16 at 5. Finally, Plaintiff's argument that Defendants have obstructed justice by allowing for the electronic spoliation of evidence is an argument that he has raised numerous times, and Magistrate Judge Peebles addressed each time. *See* Dkt. No. 20 (denying Plaintiff's request for an order to preserve the video since the footage was no longer available, but specifically noting that the decision did not prejudice "plaintiff's right to argue entitlement to a spoliation jury instruction at the time of trial"); Dkt. No. 23 (denying Plaintiff's request for sanctions for spoliation of evidence).[2] Although these Objections "merely recite the same arguments" that Plaintiff presented to Magistrate Judge Peebles, in light of Plaintiff's *pro se* status, the Court will review the Report and Recommendation de novo.

**B.     Analysis of Report and Recommendation**

---

[2] Plaintiff cites to *Treppel v. Biovail Corp.*, 249 F.R.D. 111, 121 (S.D.N.Y. 2008) to support his request for sanctions against Defendants. *See* Dkt. No. 32 at 2. However, as the court held in *Treppel*, sanctions require that the party be at least negligently culpable in the destruction of the evidence. *See id.* Nothing in the record suggests the Defendants destroyed the videotapes. *See* Dkt. No. 28 at 5 n.3 (discussing how the company that operates the video cameras at Upstate lost this video "due to equipment failure and loss of data in the hard drive"). As such, the Court will not issue sanctions against Defendants due to spoliation of evidence. *See Livingston v. Kelly*, 423 Fed. Appx. 37, 42 n.5 (2d Cir. 2011) (finding no error in a district court's failure to factor a spoliation sanction into its consideration of a summary judgment motion, particularly because "there is no evidence that he is the party responsible for the destruction").

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (citation omitted). In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief[,]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *see id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [his] claims across the line from conceivable to plausible," the complaint must be dismissed, *id.* at 570.

"[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.'" *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)) (other citations

omitted). The Second Circuit has opined that the court is obligated to "'make reasonable allowances to protect *pro se* litigants'" from inadvertently forfeiting legal rights merely because they lack a legal education. *Id.* (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

### 1. *Exhaustion of Administrative Remedies*

The Prison Litigation Reform Act ("PLRA") states that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This exhaustion requirement applies to all suits brought by inmates about prison life. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002). Inmates must exhaust all available administrative remedies even if they are seeking only money damages that are not available in prison administrative proceedings. *Giano v. Goord*, 380 F.3d 670, 675 (2d Cir. 2004), *abrogated on other grounds by Ross v. Blake*, 136 S. Ct. 1850 (2016). The failure to exhaust is an affirmative defense and, as such, it is the defendants' burden to establish that the plaintiff failed to meet the exhaustion requirements. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004); *Key v. Toussaint*, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009) (citations omitted).

The Supreme Court has held that in order to properly exhaust an inmate's administrative remedies, the inmate must complete the administrative review process in accordance with the applicable state rules. *See Jones*, 549 U.S. at 218-19 (citing *Woodford v. Ngo*, 548 U.S. 81, 88-94 (2006)). New York State has a three-step administrative review process. First, a grievance is submitted to the Inmate Grievance Resolution Committee ("IGRC") which reviews and investigates the formal complaint before issuing a written determination. *See* N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5(b). Second, if the IGRC decision is appealed, the superintendent of the

facility issues a decision after reviewing the IGRC's determination. *See id.* at § 701.5(c). Third, if the superintendent's decision is appealed, the final administrative decision is made by the CORC. *See id.* at § 701.5(d). After all three of these levels of review are exhausted, the prisoner may seek relief in federal court pursuant to Section 1983. *See Bridgeforth v. Bartlett*, 686 F. Supp. 2d 238, 239 (W.D.N.Y. 2010) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)) (other citation omitted).

To the extent a civil rights claim must be exhausted by the grievance process, completion of the three-tiered process, through and including a final decision by CORC, must be completed before a civil action asserting that claim may be filed. *See, e.g., Casey v. Brockley*, No. 9:13-CV-1271, 2015 WL 8008728, *5 (N.D.N.Y. Nov. 9, 2015) ("Receiving a decision from CORC *after* commencing litigation does not satisfy PLRA's requirement that administrative remedies be exhausted *before* filing suit, and any claim not exhausted prior to commencement of the suit must be dismissed") (citing *Neal v. Goord*, 267 F.3d 116, 122-23 (2d Cir. 2001), *overruled on other grounds*, *Porter v. Nussle*, 534 U.S. 516 (2002)). "[A] post-exhaustion amendment of the complaint cannot cure an exhaustion defect existing at the time the action was commenced." *Guillory v. Haywood*, No. 9:13-CV-1564, 2015 WL 268933, *11 (N.D.N.Y. Jan. 21, 2015) (citing *Neal*, 267 F.3d at 122) (other citation omitted).

Although administrative remedies generally must be exhausted, a prisoner need not exhaust remedies if they are not "available." *Ross*, 136 S. Ct. at 1854-55. As the Second Circuit held in *Williams v. Priatno*, there are several ways in which administrative remedies may be unavailable:

> First, an administrative remedy may be unavailable when "it operates as a simple dead end - with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Second, "an administrative scheme might be so opaque that it becomes,

8

>   practically speaking, incapable of use." In other words, "some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it. Third, an administrative remedy may be unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."

829 F.3d 118, 123-24 (2d Cir. 2016) (quoting *Ross*, 136 S. Ct. at 1859-60).

In *Ross*, the Supreme Court rejected the Second Circuit's "extra-textual" exception to the PLRA's exhaustion requirement which allowed the taking into account of "special circumstances" to justify a prisoner's failure to comply with administrative procedural requirements. 136 S. Ct. at 1856-57. Rather, it held that the only limit to the PLRA's exhaustion requirement "is the one baked into its text: [a]n inmate need exhaust only such administrative remedies as are 'available.'" *Id.* at 1862; *see also Williams*, 829 F.3d at 123 (recognizing that *Giano* and *Hemphill v. New York*, 380 F.3d 680 (2d Cir. 2004), which provided a "special circumstances" exception to the PLRA's exhaustion requirement, were abrogated in part by *Ross*). As such, the Supreme Court found that an inmate's mistaken belief that he has exhausted his administrative remedies, even where that belief seems reasonable, does not make the administrative remedies unavailable. *Ross*, 136 S. Ct. at 1858.

In the present matter, the Court finds that Magistrate Judge Peebles correctly determined that Plaintiff did not exhaust the administrative remedies before filing his Complaint. As Magistrate Judge Peebles properly noted, the Court may consider the exhaustion issue on a Rule 12(b)(6) motion when it is clear from the face of the complaint that the plaintiff has failed to exhaust. *See* Dkt. No. 28 at 15; *see also Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74-75 (2d Cir. 1998); *Lewis v. Havernack*, No. 12-CV-0031, 2013 WL 1294606, *4 (N.D.N.Y. Mar. 28, 2013). Plaintiff mailed the Complaint in this action only five days after his appeal was acknowledged by the CORC. *See* Dkt. No. 28 at 9-10. Plaintiff "seemingly acknowledges that he

9

rushed to file this action, apparently in an attempt to ensure that the relevant audio and video recordings were preserved by the DOCCS." *See id.* at 16. However, as Magistrate Judge Peebles concluded, by prematurely filing the Complaint, Plaintiff "effectively truncated the [Inmate Grievance Program] and deprived the CORC of its opportunity to review the matter." *See id.* The Court agrees with Magistrate Judge Peebles and finds that the Complaint must be dismissed for failure to exhaust.

Plaintiff argues that special circumstances excuse his failure to exhaust because he needed to acquire the video evidence before it was erased. *See* Dkt. No. 16 at 5; Dkt. No. 31 at 1-2; Dkt. No. 32 at 1-2; Dkt. No. 33 at 1-2. Plaintiff made this argument in his Opposition to the Motion to Dismiss, and Magistrate Judge Peebles considered it in the Report and Recommendation. *See* Dkt. No. 16 at 4-5 (claiming that he was forced to commence this litigation to preserve the video after he was "stonewalled" in his attempts to obtain the video footage); Dkt. No. 28 at 5 n.3 (acknowledging that Plaintiff "repeatedly" requested the video recording). The Supreme Court has rejected the notion that "special circumstances" may justify a prisoner's failure to comply with administrative procedural requirements. *See Ross*, 136 S. Ct. at 1856-57. Therefore, Magistrate Judge Peebles did not err in finding that no special circumstances excused the exhaustion requirement here. *See* Dkt. No. 28 at 10-18.

Likewise, Magistrate Judge Peebles properly rejected Plaintiff's claim that his failure to exhaust was excused by the CORC's "stalling." *See id.* at 17 n.10 (stating that "Plaintiff's frustration with the CORC's failure to comply with its thirty-day obligation under the regulatory scheme, while understandable, does not compel a different result given the chronology of the relevant events"). This Court agrees that the CORC's delay does not excuse Plaintiff's failure to exhaust the administrative remedies. *See Cohen v. Welch*, No. 16-CV-593, 2017 WL 3311244,

*6 (N.D.N.Y. July 11, 2017), *report and recommendation adopted*, 2017 WL 3309713 (N.D.N.Y. Aug. 2, 2017) (holding that the fact that "grievances were never answered does not excuse [a plaintiff's] failure to exhaust").

Finally, Magistrate Judge Peebles concluded that since Plaintiff "did not allow the time period prescribed by the regulatory scheme to elapse prior to commencement, I am unable to conclude that administrative remedies were unavailable to him." *See* Dkt. No. 28 at 18. Although, as Magistrate Judge Peebles noted, "the outcome could very well have been different if plaintiff had, in fact, permitted the thirty-day period to elapse prior to commencing this suit," *see id.* at 18 n.1, we have routinely dismissed cases where the plaintiff prematurely files suit and attempts to correct that error later. *See Scott v. Miller*, No. 17-CV-520, 2018 WL 3951339, *4 (N.D.N.Y. Aug. 13, 2018) (dismissing a case where an inmate failed to complete the appeals review process prior to filing the complaint); *Neal*, 267 F.3d at 122 (finding that "[s]ubsequent exhaustion after suit is filed . . . is insufficient"). Thus, the Court agrees that Plaintiff has not shown that administrative remedies were unavailable to him. *See* Dkt. No. 28 at 18-19.

In light of the foregoing, the Court adopts Magistrate Judge Peebles's recommendation that Plaintiff's civil rights claims should be dismissed.

### 2. *State Law Claims*

In addition to the civil rights claims, Plaintiff brings state law claims of gross negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress. *See id.* at 6. Defendants argue that (1) the Court should not exercise supplemental jurisdiction over the state law claims and (2) those claims should be dismissed based upon New York Correction Law § 24. *See* Dkt. No. 14-1 at 9-12. Magistrate Judge Peebles found that Section 24 precludes

Plaintiff from bringing common law causes of action against Defendants and recommended that Plaintiff's state law claims be dismissed with prejudice. *See* Dkt. No. 28 at 19-20.

District courts have supplemental jurisdiction over all state-law claims that are so related to federal claims over which they exercise original jurisdiction that they form part of the same case or controversy under Article III of the Constitution. 28 U.S.C. § 1367(a). Application of supplemental jurisdiction is discretionary, and "it requires a balancing of the considerations of comity, fairness to the litigants, judicial economy, and the avoidance of needless decisions of state law." *Federman v. Empire Fire & Marine Ins. Co.*, 597 F.2d 798, 809 (2d Cir. 1979) (citation omitted). When a court lacks subject matter jurisdiction, dismissal is mandatory. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006). Therefore, although courts "construe a *pro se* plaintiff's complaint liberally, a plaintiff attempting to bring a case in federal court must still comply with the relevant rules of procedural and substantive law, including establishing that the court has subject matter jurisdiction over the action." *Ally v. Sukkar*, 128 Fed. Appx. 194, 195 (2d Cir. 2005) (internal citation omitted).

It is well settled that when this Court exercises pendent jurisdiction over a state cause of action, it must apply the substantive state law. *See Baker v. Coughlin*, 77 F.3d 12, 15 (2d Cir. 1996) (citations omitted) (explaining that the plaintiff's state law claims must be dismissed because "a federal court acts essentially as a state court in addressing pendent state law claims"); *Parris v. New York State Dep't of Corr. Servs.*, 947 F. Supp. 2d 354, 365 (S.D.N.Y. 2013); *Joy v. New York*, No. 5:09-CV-841, 2010 WL 3909694, *4 (N.D.N.Y. Sept. 30, 2010). In pertinent part, Section 24 of New York Correction Law provides that:

> 1. No civil action shall be brought in any court of the state . . . against any officer or employee of the department . . . in his or her personal capacity, for damages arising out of any act done or the

> failure to perform any act within the scope of the employment and
> in the discharge of the duties by such officer or employee.
>
> 2. Any claim for damages arising out of any act done or the failure
> to perform any act within the scope of the employment and in the
> discharge of the duties of any officer or employee of the department
> shall be brought and maintained in the court of claims as a claim
> against the state.

N.Y. Correction Law § 24. Section 24 governs substantive rights; it is not procedural. *See Baker*, 77 F.3d at 15 (holding that "by its plain terms, § 24 governs the substantive rights of corrections officers by conferring upon them an immunity from liability for activities that fall within the scope of the statute").

Magistrate Judge Peebles correctly found that Section 24 applies because Defendants are employed by DOCCS and the alleged conduct fell within the scope of their employment. *See* Dkt. No. 28 at 20. For purposes of Section 24, courts have looked to the following factors to determine whether actions fall within the actor's scope of employment:

> the connection between the time, place and occasion for the act; the
> history of the relationship between employer and employee as
> spelled out in actual practice; whether the act is one commonly
> done by any employee; the extent of departure from normal
> methods of performance; and whether the specific act was one that
> the employer could reasonably have anticipated.

*Ierardi v. Sisco*, 119 F.3d 183, 187 (2d Cir. 1997) (quoting *Riviello v. Waldron*, 47 N.Y.2d 297, 303 (1979). Here, the alleged conduct occurred while Defendants were at work performing their job duties. *See* Dkt. No. 1 at 10-13; Dkt. No. 16 at 6. Since Defendants were clearly acting within the scope of their employment, Magistrate Judge Peebles was correct to conclude that Section 24 applies. Therefore, the Court adopts Magistrate Judge Peebles's recommendation that the state law claims are barred by New York Correction Law § 24.

### 3. *No Opportunity to Amend*

13

When a *pro se* complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation and citations omitted). Of course, an opportunity to amend is not required where "[t]he problem with [the plaintiff's] cause of action is substantive" such that "better pleading will not cure it." *Id.* (citation omitted). Thus, "[w]here granting leave to amend is unlikely to be productive . . . it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) (collecting cases).

Here, Magistrate Judge Peebles found that the exhaustion error would not be cured by permitting Plaintiff leave to amend. *See* Dkt. No. 28 at 21-22. The Court agrees that amendment will not cure this deficiency. *See e.g.*, *Gayot v. Perez*, No. 16-CV-8871, 2018 WL 6725331, *7 (S.D.N.Y. Dec. 21, 2018) (finding that filing an amended complaint four months after an appeal to the CORC did not cure the fact that the initial complaint was filed before the plaintiff had exhausted all administrative remedies). Therefore, the Court agrees with Magistrate Judge Peebles's recommendation to deny leave to amend.

### III. CONCLUSION

Having carefully reviewed the Report and Recommendation, Plaintiff's Objections and the applicable law, the Court finds that Magistrate Judge Peebles employed the proper legal standards, accurately recited the facts, and correctly applied the law to those facts. As such, the Court hereby

**ORDERS** that the November 2, 2018 Report and Recommendation (Dkt. No. 28) is **ADOPTED in its entirety**; and the Court further

**ORDERS** that Plaintiff's Complaint is **DISMISSED WITHOUT LEAVE TO AMEND**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: February 1, 2019
       Albany, New York

Mae A. D'Agostino
U.S. District Judge